Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
sec@colevannote.com
lvn@colevannote.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 239-4778
aberry@justice4you.com
gharoutunian@justice4you.com

Attorneys for Representative Plaintiffs and the Proposed Classes

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE: BLACKHAWK NETWORK DATA BREACH LITIGATION*<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:22-cv-07084-CRB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        December 1, 2023<br>Time:       1:30 pm<br>Judge:      Hon. Charles R. Breyer |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION………………………………………………………………......1

II.   SUMMARY OF THE LITIGATION……………………………………………........2

    A.  Factual Allegations……………………………………………………….…...2

    B.  Litigation History………………………………………………………………2

        1.  Discovery…………………………………………………………….…...2

        2.  Negotiations and Mediation……………………………………………….3

III.  TERMS OF THE SETTLEMENT ……………………………………………………3

    A.  The Settlement Class……………………………………………………………3

    B.  The Settlement Benefits………………………………………………….…...4

    C.  Notice, Notice Plan and Claims Administration……………………………….....4

    D.  The Settlement Administrator…………………………………………………5

    E.  Attorney's Fees, Costs and Service Awards……………………………….…...6

    F.  Released Claims……………………………………………………………….…...6

IV.   LEGAL ARGUMENT…………………………………………………….…....7

    A.  The Settlement Falls Within the Range of Reasonableness……………………….…7

        1.  Plaintiff and Counsel Have Adequately Represented the Class……………………....8

        2.  The Settlement Resulted from Informed, Arm's-Length Negotiations……………….8

        3.  The Relief Provided for the Class Is Adequate……………………………….…...9

        4.  The Settlement Structure is Fair, Effective, and Reasonable……………………...…10

        5.  The Settlement Falls Within the Range of Possible Approval………………………12

        6.  Experienced Counsel Recommend Approval………………………………...…13

        7.  The District's Procedural Guidelines for Preliminary Approval Are Satisfied……....…13

B.  The Proposed Settlement Class Should be Certified…………………………………………...14

    1.  The Class Meets the Requirements of Rule 23(a)……………………………….........14

    2.  The Class Meets the Requirements of Rule 23(b)(3)………………………….....15

    3.  The Settlement Class Definition Comports with the Class Definition in the

       Complaint…………………………………………………………………………......17

C.  The Proposed Notice and Notice Program Meet All Applicable Requirements………..…....17

    1.  The Notice Plan Uses the Best Practicable Means to Reach Class Members……………17

    2.  The Proposed Notice Adequately Informs Class Members of Their Rights and

       Options…………………………………………………………………………......18

D.  Settlement Class Counsel Should be Appointed…………………………………………..18

E.  Schedule……………………………………………………………………………......19

V.  CONCLUSION……………………………………………………………………………19

1

<u>**TABLE OF AUTHORITIES**</u>

2

**CASES**

3

*Amchem Products, Inc. v. Windsor*,

4

    521 U.S. 591, 620 (1997)………………………………………………………………14

5

*Campbell v. Facebook Inc.*,

6

    2017 WL 3581179 (N.D. Cal. Aug. 18, 2017)……………………………………………11

7

*Carlotti v. ASUS Computer Internat'l*,

8

    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019)……………………………………………...9

9

*Cottle v. Plaid Inc.*,

10

    340 F.R.D. 356, 365, 378 (N.D. Cal. 2021)………………………………………………10,15

11

*Ebarle v. Lifelock, Inc.*,

12

    2016 WL 5076203(N.D. Cal. Sept. 20, 2016)……………………………………………11

13

*Hammond v. The Bank of N.Y. Mellon Corp.*

14

    2010 WL 2643307(S.D.N.Y. June 25, 2010)……………………………………………...18

15

*In re Anthem, Inc. Data Breach Litig.*,

16

    327 F.R.D. 299 (N.D. Cal. 2018)………………………………………………………9,10,14

17

*In re Cathode Ray Tube (Crt) Antitrust Litig.*,

18

    2016 WL 721680 (N.D. Cal. Jan. 28, 2016)……………………………………………..9

19

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,

20

    2020 WL 256132 (N.D. Ga. Mar. 17, 2020)……………………………………………8,10,15

21

*In re Google LLC St. View Elec. Commc'ns Litig.*,

22

    2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)……………………………………………11

23

*In re LinkeIin User Privacy Litig.*,

24

    309 F.R.D. 573 (N.D. Cal. 2015)………………………………………………………11

25

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,

26

    2020 WL 4212811 (N.D. Cal. July 22, 2020)……………………………………... 9,10,13,14,15

27

28

*Just Film, Inc. v. Buono*,

    847 F.3d 1108 (9th Cir. 2017))……………………………………………………………14

*Kent v. Hewlett-Packard Co.*,

    2011 WL 4403717 (N.D. Cal. Sept. 20, 2011)……………………………………………13

*Linney v. Cellular Alaska P'ship*,

    151 F.3d 1234 (9th Cir. 1998)……………………………………………………………7

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004)………………………………………………………..10

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,

    688 F.2d 615 (9th Cir. 1982)……………………………………………………………10

*Parsons v. Ryan*,

    754 F.3d 657(9th Cir. 2014)……………………………………………………………13

*Perkins v. LinkedIn Corp.*,

    2016 WL 613255 (N.D. Cal. Feb. 16, 2016)……………………………………………11

*Phillips Co. v. Shutts*,

    472 U.S. 797 (1985)……………………………………………………………………14

*Staton v. Boeing Co.*,

    327 F.3d 938 (9th Cir. 2003)……………………………………………………………14

*Tyson Foods, Inc. v. Bouaphakeo*,

    136 S. Ct. 1036 (2016)…………………………………………………………………13

*Vaquero v. Ashley Furniture Indus., Inc.*,

    824 F.3d 1150 (9th Cir. 2016)…………………………………………………………..14

*Wal-Mart Stores, Inc. v. Dukes*

    564 U.S. 338 (2011)……………………………………………………………………12

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

1

**STATUTES/RULES**

**Federal**

Class Action Fairness Act, 28 U.S.C. § 1715(b) ...................................................... 4

Fed. R. Civ. P. Rule 23 ...................................................................................*passim*

**SECONDARY SOURCES**

*Newberg on Class Actions § 13:1 (5th ed.)* ............................................................ 6

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION</u>

## <u>TO ALL PARTIES AND THEIR COUNSEL OF RECORD:</u>

PLEASE TAKE NOTICE that on December 1, 2023 at 1:30 pm, or as soon thereafter at the matter may be heard, before the Honorable Charles R. Breyer, United States District Court Judge, Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor, and Kelly Rogers ("Plaintiffs") will and do hereby move this Court for an order preliminarily approving the proposed Settlement entered into by Plaintiffs and Defendant Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions  ("Blackhawk") (collectively, the "Parties").

This Motion is made pursuant to Federal Rules of Civil Procedure Rule 23(e) on the grounds that the proposed Settlement is fair, reasonable and adequate when viewed against the continued risks of litigation, the proposed Settlement Class meets all criteria for certification for Settlement purposes and the proposed Notice and notice plan are designed to ensure the best practicable notice and compliance with due process.

This Motion is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Settlement Agreement and all exhibits thereto, the Declaration of Laura Van Note in Support of Plaintiffs' Motion for Preliminary Approval of Settlement and all exhibits thereto, the Declaration of Steven Weisbrot and all exhibits thereto, all other pleadings and papers on file, and such other arguments and materials as may be presented before the Motion is taken under submission.

Dated:  November 3, 2023

**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**

By:  _/s/M. Anderson Berry_
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 239-4778
aberry@justice4you.com
gharoutunian@justice4you.com

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

*Attorneys for Representative Plaintiff*
*and the Proposed Classes*

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to rule on the following issues:

1.  Whether the proposed Settlement is fair, adequate and reasonable;

2.  Whether the proposed Settlement Class should be certified for Settlement purposes;

3.  Whether the proposed Notice and notice program are adequately tailored to achieve effective notification to Class Members as to the terms of the Settlement and their rights thereunder;

4.  Whether Cole & Van Note, Clayeo C. Arnold, A Professional Corporation, Markovits, Stock & Demarco, LLC and Bradley/Grombacher LLP should be appointed as Interim Co-Lead Class Counsel and Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor and Kelly Rogers as Class Representatives; and

5.  Whether to enter the Proposed Order Preliminarily Approving the Settlement, directing the issuance of notice, setting forth remaining deadlines and setting a hearing for final approval of the proposed Settlement.

1

## I.      **INTRODUCTION**

2

3          In October 2022, Defendant Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions

4     ("Blackhawk" or "Defendant") began sending notice to 165,727 individuals whose names and payment

5     card information were potentially accessed by an unauthorized third party that placed malicious code on

6     Defendant's website.

7          Plaintiffs filed the Amended Consolidated Complaint on February 9, 2023, alleging (i)

8     Negligence, (ii) Breach of Implied Contract, (iii) Unjust Enrichment, (iv) Violations under the California

9     Unfair Competition Law, Cal Bus. & Prof Code §§ 17200, *et seq.,* (v) Violations under the California

10    Consumer Privacy Act, Cal. Civ. Code § 1798.150, *et seq.*, (vi) Deceit by Concealment, Cal. Civ. Code

11    §§ 1709 and 1710, (vii) Violations under Illinois' Consumer Fraud and Deceptive Business Practices

12    Act, 805 Ill. Comp. Stat. 505/1, *et seq.*, (viii) Violations under Texas' Deceptive Trade Practices –

13    Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, (ix) Violations under the

14    Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq.,* and (x) Violations under the New

15    York General Business Law § 349.

16         After a full-day mediation and an extensive Settlement negotiation process lasting several months,

17    the Parties have reached a proposed Settlement that provides for the creation of a Settlement Fund of

18    $985,000.00 which will be used to provide each Class Member with several direct cash benefits

19    including: reimbursement for any valid Out-of-Pocket losses fairly traceable to the Data Breach up to

20    $5,000; a payment of $200 for California Settlement Subclass Members who submit a valid claim in

21    compensation for their statutory claims available under California Law; and all Class Members who make

22    a valid claim will receive a cash payment consisting of a *pro-rata* share of the remainder of the Settlement

23    Fund. Moreover, the Settlement further requires Defendant to improve its data security practices so as to

24    protect Class Members' data that Defendant retains. Taken together, these monetary and non-monetary

benefits represent a strong recovery when viewed in comparison to what could be achieved through trial even *before* taking into account the significant risk, cost and delay of continued litigation.

## II.        SUMMARY OF THE LITIGATION

### A.        Factual Allegations

Plaintiffs allege unauthorized individuals exploited a vulnerability in Defendant's computer systems and accessed Defendant's network and accessed and/or exfiltrated Class Members' sensitive, non-public PII (the "Data Security Incident"). Amended Consolidated Class Action Complaint (hereafter "ACC") ¶¶ 5-10. Plaintiffs allege the Data Security Incident began in September 2022. ACC ¶ 36. Defendant sent notice to potentially affected individuals beginning on October 31, 2022. ACC ¶ 9. Plaintiffs received such a notice dated October 31, 2022, and subsequently filed suits in this Court seeking damages for the class for lost time, the threat of future harm, out-of-pocket expenses and other injuries related to this event. ACC ¶ 14-20.

### B.        Litigation History

#### 1.        *Discovery*

Class Counsel has thoroughly investigated the key facts of this case. Declaration of Laura Van Note, ¶ 9.[1] Class Counsel's investigation, combined with the information exchanged in connection with mediation, provided Class Counsel with sufficient understanding about the relative strengths and weaknesses of the various claims and defenses at issue in this case to reach an informed decision and a fair resolution. *Id.*

#### 2.        *Negotiations and Mediation*

In final preparation for mediation, Class Counsel requested information tailored to developing a damages and penalties analysis for each of the primary claims identified in the operative complaint. *Id.*,

---

[1] Hereafter cited as "Van Note Decl."

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

¶ 10. On June 5, 2023, the Parties participated in a mediation before experienced mediator Michelle Yoshida of Phillips ADR. *Id.*, ¶ 7. At mediation, the Parties exchanged information and engaged in intensive discussions regarding their evaluations of the litigation and various aspects of the litigation, including the risks and delays of further litigation, the risks to the Settling Parties of proceeding with class certification, the law relating to the allegations, the evidence produced and analyzed and the possibility of appeals, among other things. *Id*. Though the mediation was not initially successful, the Parties negotiated for three months after the mediation. *Id*. The Settlement Fund was negotiated first and separately from any discussion regarding attorney's fees, service awards and claims administrator fees. *Id.*, ¶ 28. The Parties ultimately reached a Settlement in principle and continued to negotiate the long form agreement over the next few weeks. *Id.*, ¶ 12. This resulted in the Settlement Agreement accompanying this Motion. *Id*.

### III.    TERMS OF THE SETTLEMENT

#### A.    The Settlement Class

The Settlement Class includes all individuals within the United States whose names and personally identifiable and payment card information were potentially exposed to unauthorized third parties as a result of Defendant's Data Security Incident that occurred in approximately September of 2022. Excluded from the Settlement Class is any judge presiding over the Litigation and their first-degree relatives, judicial staff, and persons who timely and validly request exclusion from the Settlement Class. S.A. § II (B).

#### B.    The Settlement Benefits

The Settlement provides for a *pro-rata* cash payment for each Class Member, plus reimbursement for any valid Out-of-Pocket losses fairly traceable to the Data Breach up to $5,000. S.A. § II (H)(1)-(3), (5) Additionally, California Settlement Subclass Members who submit a valid claim will receive $200 in compensation for their statutory claims available under California Law. S.A. § II (H)(4). The Settlement

also provides that Defendant has made and/or will make the following enhancements: (a) performing a code vulnerability scan to look for other potential vulnerabilities; and (b) implementing velocity controls designed to alert more quickly to, and to mitigate the risk of, another attempted similar attack. S.A. § II (E)(2)(A).

### C.   Notice, Notice Plan and Claims Administration

Within ten days of the filing of the Motion for Preliminary Approval, the Claims Administrator shall serve a letter and accompanying materials to be provided by Defendant's Counsel on the Attorney General of the United States and each state Attorneys General or others, all as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). The Claims Administrator shall provide and Defendant shall cause to be filed with the Court a declaration evidencing such service. S.A. § II (G).

Within fifteen days of entry of the Preliminary Approval Order, Blackhawk will provide the Claims Administrator with a list of Settlement Class Members which will include, to the extent available, the name and email address of each Settlement Class Member. The Claims Administrator shall cause notice to be disseminated to the Settlement Class Members pursuant to the Preliminary Approval Order and the Notice Program, as described below.

Within fourteen days after receiving the Settlement Class list from Blackhawk, the Claims Administrator shall send the Summary Notice via email to Settlement Class Members (the "Notice Deadline").

Within seven days after receiving the Settlement Class list from Blackhawk, the Claims Administrator shall establish a dedicated Settlement website that includes this Class Settlement Agreement, the Long Notice and the Claim Form approved by the Court. Settlement Class Counsel shall propose the format and content of the Settlement website for approval by Defendant's Counsel. The Claims Administrator shall maintain and update the website throughout the Claims Period. The Claims Administrator will also post on the Settlement website copies of the Motion for Final Approval of the

Class Settlement Agreement and the Motion for an Attorneys' Fees and Expenses Award and a Service Award. A toll-free number with interactive voice response and FAQs shall also be made available to address Settlement Class Members' inquiries. The Settlement website shall not include any advertising and shall remain operational until at least six months following the Effective Date, at which time the Claims Administrator shall terminate the Settlement website and transfer ownership of the URL to Blackhawk. S.A. § II (G).

### D.    The Settlement Administrator

The Parties selected Angeion Group as the Settlement administrator. Van Note Decl. ¶ 23. Information about Angeion's credentials and experience are provided in the Declaration of Steven Weisbrot ("Weisbrot Decl."), including information regarding Angeion's handling of Class Member data and insurance coverage. Angeion estimates the cost of notice and administration at $70,000, a reasonable amount in relation to the size of the Class and value of the Settlement. Weisbrot Decl. ¶ 32. Within the Declaration of Steven Weisbrot, he lists the prominent, multistate class action settlements administered by Angeion in the recent past.

### E.    Attorneys' Fees, Costs and Service Award

Settlement Class Counsel requests attorneys' fees in the amount of $246,250.00, plus reasonable costs and expenses. Van Note Decl. ¶ 14. This amount was negotiated only after the Parties agreed on compensation to the Class. *Id*. ¶ 28. Settlement Class Counsel will request a Service Award payment to Representative Plaintiffs in the amount of $2,500 each. S.A. § II (F)(2). The Service Award was negotiated after the Parties agreed on compensation to the Class. Van Note Decl. ¶ 21. Both Settlement Class Counsel's attorneys' fees and costs and Plaintiffs' Service Award shall be paid separately from payment to Class Members such as it will have no effect on the amount any Class Member receives as compensation. S.A. § II (F)(2).

#### F.    Released Claims

Upon entry of the Final Approval Order, each Settlement Class Member, including Representative Plaintiffs, shall be barred from initiating, asserting or prosecuting against Blackhawk and any Released Parties any claims that are released by operation of the Class Settlement Agreement and the Final Approval Order. S.A. § II (H)(9). Each Settlement Class Member, including Plaintiff, whether or not they have received an Award, will be deemed by operation of the Agreement to have fully released, discharged and acquitted Blackhawk and the Released Parties from any and all of the Released Claims and will be deemed to have also released Unknown Claims. *Id*. This includes a release of any and all Unknown Claims, even if unrelated to the Released Claims, and any and all provisions, rights and benefits conferred by any law of any state, province or territory of the United States which is similar, comparable or equivalent to California Civil Code section §1542. S.A. § II (A)(6).

### IV.    <u>LEGAL ARGUMENT</u>

Judicial approval of class action settlements typically proceeds through three stages: (i) preliminary approval, where the court conducts an initial fairness review and decides whether to notify the class; (ii) a notice period, where class members are given an opportunity to review the Settlement and object or comment; and (iii) a fairness hearing, where the court considers the overall class reaction and makes its final determination. *See* Fed. R. Civ. P. 23; *Newberg on Class Actions § 13:1* (5th ed.).

This case is now at the preliminary approval stage, where the Court will decide whether the Parties should notify Class Members about the Settlement. That decision requires the Court to make several preliminary determinations: first, whether the proposed Settlement is likely to be approved if notice is disseminated to the Class; second, whether the proposed Settlement class is likely to be certified for purposes of judgment; third, whether the parties' proposed notice plan provides for the best notice practicable under the circumstances and the Settlement Administrator may disseminate notice; and fourth, the Court sets a schedule for notifying the Class and considering its reaction to the proposed

Settlement. Fed. R. Civ. P. 23(c), (e). In the sections that follow, Plaintiffs offer their analysis of each facet of the preliminary approval process, including the Northern District of California's procedural guidelines for the preliminary approval of class action settlements.

## A.    The Settlement Falls Within the Range of Reasonableness

The 2018 amendments to Rule 23 direct the Parties to present proposed class settlements "in terms of a shorter list of core concerns." Fed. R. Civ. P. Rule 23(e)(2), 2018 Adv. Comm. Notes. These concerns, which Rule 23(e)(2) now requires courts to consider before approving a class settlement, include two concerns bearing on procedural fairness and two bearing on substantive fairness. *Id*. The two procedural concerns are (i) whether plaintiff and their counsel have adequately represented the class and (ii) whether the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. Rule 23(e)(2)(A)-(B). The two substantive concerns are (i) whether the relief provided for the class is adequate and (ii) whether the proposed settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(C)-(D).

Here, review of these four core concerns favors the proposed Settlement.

### 1.    *Plaintiffs and Counsel Have Adequately Represented the Class*

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. Rule 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. *See id.*, Adv. Comm. Note. Formal discovery is not required, but counsel should have sufficient information to make informed decisions at the bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, Class Counsel were well prepared to negotiate a beneficial settlement for Class Members. In addition to a comprehensive pre-filing investigation, they sought early discovery that went to the heart of the case and had extended negotiations with Defendant. Van Note Decl. ¶¶ 6, 9-11.

Representative Plaintiffs will request a service payment of $2,500 each for their participation in this litigation. Each Representative Plaintiff researched and identified qualified counsel, participated in the mediation settlement process, and risked being further targeted for identity theft by putting their name on this litigation.

2.    *The Settlement Resulted from Informed, Arm's-Length Negotiations*

"Class Settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *Carlotti v. ASUS Computer Inte'l*, 2019 WL 6134910, *6 (N.D. Cal. Nov. 19, 2019). Here, the Parties' Settlement was reached after contentious negotiations consisting of a full-day mediation before Michelle Yoshida and another three months of negotiations to finalize the terms of the Settlement. Van Note Decl. ¶¶ 7, 11-12. Ms. Yoshida is a respected and experienced neutral. Van Note Decl. ¶¶ 7, 11. The Parties did not discuss Attorneys' Fees, Service Awards or Settlement Administration costs until after reaching agreement on the Class Settlement. Van Note Decl. ¶¶ 21-22. Taking into consideration the Parties' preparation for the mediation, the length of negotiations and the involvement of a highly qualified private mediator, the proposed Settlement should be presumed procedurally fair. Fed. R. Civ. P. Rule 23(e)(2)(B), 2018 Adv. Comm. Note.

3.    *The Relief Provided for the Class Is Adequate*

The proposed Settlement provides meaningful monetary recovery in addition to important non-monetary relief. The benefits conferred are fair and adequate compared to other similar cases. Blackhawk's improved security protocols and policies are meaningful and will help minimize the risk of incidents of unauthorized access to Blackhawk customers' accounts. The collective relief is even more favorable considering the factors under Rule 23(e)(2)(C).

While Plaintiffs believe their case is strong, ongoing litigation will require Plaintiffs and the Class to take on significant risks of expenses, delays and negative outcomes. Data breach cases are particularly complex and expensive by nature. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020

WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020) [hereinafter "*In re Equifax*"] (recognizing the complexity and novelty of issues in data breach class actions). Courts explicitly recognize data breach cases as among the most risky and uncertain of all types of class action litigation. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases).

This case is no exception. It involves tens of thousands of Class Members, complicated and technical facts, a well-funded and motivated Defendant and contested central issues relating to class certification, liability, and damages. Defendant would surely oppose class certification and move for summary judgment (or seek similar dispositive relief). Establishing liability for such a breach (or an alternative theory of liability) at trial would require countless hours of costly investigation, discovery, reporting, and testimony from data security and financial industry expert witnesses. Even if these were all successful, given the relative novelty of the legal theories underlying Plaintiffs' claims it could face significant scrutiny on appellate review.

Moreover, no side agreements were made between the Parties (*See* Fed. R. Civ. P. 23(e)(3)). Van Note Decl. ¶¶ 21-22.

### 4. <u>The Settlement Structure Is Fair, Effective, and Reasonable</u>

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Cathode Ray Tube (Crt) Antitrust Litig.*, 2016 WL 721680, at *21 (N.D. Cal. Jan. 28, 2016). Because Class Members may have suffered varying types and degrees of injury, the Settlement permits Settlement Class Members to receive cash payments consistent with the categories of damages they incurred (i.e., lost time and/or unreimbursed expenses) and in what amount. In this respect, the Settlement achieves customized recovery to each Class Member and treats them fairly and equitably. As such, this type of claims process has been approved in numerous other cases involving data breaches and privacy infringements. *See, e.g.*, *In re Equifax*, 2020 WL 256132 at **2, 8; *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2020 WL 4212811, *12 (N.D. Cal. July 22, 2020), aff'd, *Schwartz v. Yahoo!*

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

*Inc.*, No. 20-16633 (9th Cir. June 27, 2022) [hereinafter "*In re Yahoo!*"]; *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 325, 328, 332 (N.D. Cal. 2018).

The claims process here is designed to be simple and fast, yet comprehensive enough to ensure fair and equitable treatment of potential individual damages. All Settlement Class Members may submit a claim that allows them to elect benefits, depending on their individual facts. Claimants can claim out-of-pocket expenses for unreimbursed payment card fees or bank fees, cell, internet or text charges; unreimbursed costs or charges for obtaining credit reports, credit freezes or credit monitoring or identity theft protection services, postage costs and lost time. They simply check the relevant box and input the amount claimed. S.A., Ex. C.

Courts have approved similar processes in data breach cases (*see, e.g., Cottle v. Plaid Inc.*, 340 F.R.D. 356, 365, 378 (N.D. Cal. 2021); *In re Yahoo!*, *supra*, 2020 WL 4212811 at *12), and the proposed plan here is favorable by comparison to numerous other Settlements requiring documentation for analogous cash payments (*see, e.g., In re Anthem*, 327 F.R.D. at 325, 328, 332 (approving claim process requiring supporting documentation for claims of lost time and out-of-pocket expenses).

The settlement administrator has estimated, based on its experience with over 46 similar settlements, that the claims rate in this settlement will likely fall between 3% and 6%. Weisbrot Decl., ¶ 31. This comports with Class Counsel's expectations as well, where based on previously approved similar processes in similar cases, Class Counsel expects that the claims-rate will be between 1% and 9%. This claims rate would not be unusual for a class settlement. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-CV-03747-JD, 2021 WL 757025, at *2 (N.D. Cal. Feb. 26, 2021) (noting that consumer class actions typically have a claims rate between 4% and 9%). Nor would it be unusual for data breach settlements. *In re Anthem Data Breach*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (1.8% claims rate); *In re Premera Blue Cross Data Breach*, Case No. 3:15-md-02633 (D. Or.) (7.81% claims rate); *Gaston v. Fabfitfun*, Case No. 2:20-cv-09534 (C.D. Cal.) (5.27% claims rate).

5.    *The Settlement Falls Within the Range of Possible Approval*

When considering whether the amount of a Settlement is adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982). "[A] proposed Settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Plaintiff has analyzed the potential class recovery and offers the following explanation of the factors bearing on the amount of the compromise:

Defendant reported that 165,727 individuals were potentially affected by this security incident. As noted above, the Data Security Incident involves only names and payment card information. Since Plaintiffs were the only individuals to come forward and file lawsuits, it is unclear how many of these 165,727 individuals will claim injury. Indeed, it follows that most, if not all, individuals who experienced unauthorized charges to their accounts would have been reimbursed by their bank or card issuer pursuant to federal law[2] (though Class Members may still claim unreimbursed card or bank fees). Accordingly, the remaining compensable claims are for lost time and modest damages for out-of-pocket expenses (e.g., postage, paying for credit freezes, etc.). A total of $500 per person represents more than enough to satisfy the vast bulk of potential claims, given the nature of the information involved here. As discussed above, Defendant has also agreed to make meaningful changes to its security protocol which will protect Class Members' information going forward. Given the type of information involved, this represents an excellent outcome for the Class. Van Note Decl. ¶ 24.

Indeed, the Settlement, at $5.94 per person, compares favorably with other Settlements that have been approved in data breach matters. For example, in *In re: Hanna Andersson and Salesforce.com Data*

---

[2] *See e.g.*, the Fair Credit Billing Act (15. U.S.C. 1666, *et seq.*).

*Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal.), a similar case in this district involving payment card data and no sensitive PII such as Social Security numbers, had a settlement valued at $2.00 per class member finally approved. Similarly, in *Cochran v. Kroger*, No. 5:21-cv-01887 (N.D. Cal.) another data breach matter in this district, a settlement valued at $1.31 per class member was finally approved. Van Note Decl. ¶ 26.

### 6. *Experienced Counsel Recommend Approval*

Class Counsel have substantial experience in complex class action litigation, including data privacy cases. Van Note Decl. ¶ 18. Class Counsel fully endorse the Settlement as falling within the range of reasonableness. Van Note Decl. ¶¶ 24-25.

### 7. *The District's Procedural Guidelines for Preliminary Approval Are Satisfied*

In addition to the requirements for Settlement approval established by Rule 23(e), the proposed Settlement also satisfies the District's Procedural Guidance for Class Action Settlements. The guidelines are addressed throughout this Motion and supporting papers.

## B.   The Proposed Settlement Class Should be Certified

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. Rule 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

### 1. *The Class Meets the Requirements of Rule 23(a)*

**Numerosity.** The Settlement Class consists of approximately 165,727 individuals, making joinder of all members impracticable. Fed. R. Civ. P. Rule 23(a)(1).

**Commonality.** Plaintiffs' and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564

1    U.S. 338, 350 (2011). For example, Plaintiffs' negligence claim turns on the contention that Defendant

2    implemented sub-standard security protocols and procedures that allowed unauthorized users to gain

3    access to Class Members' credit card information. Additionally, Plaintiffs' breach of contract claim turns

4    on the common contentions that Blackhawk promised yet failed to use certain specific security measures.

5    ACC, ¶¶ 52, 54. Each of these contentions depend only on the nature of Defendant's security protocols,

6    which will be proven using generalized evidence applicable to the entire Class. *See In re Yahoo!*, 2020

7    WL 4212811 at *3 (certifying data breach Settlement class where common issues existed as to whether

8    Yahoo! employed sufficient security measures to protect class members' personal information).

9        **Typicality.** The typicality requirement is also satisfied, as "the unnamed class members have

10   injuries similar to those of the named Plaintiff and the injuries result from the same, injurious course of

11   conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Here, Plaintiffs' claims are typical of the

12   Settlement Class as they are customers who experienced incidents of unauthorized access to their

13   Blackhawk accounts. While it is likely that Plaintiffs and the Class may allege varying degrees of injuries,

14   each harm will be based on the same data breach and underlying conduct. The claims arise from the same

15   nucleus of facts relating to Blackhawk's security protocols, pertain to a common defendant and are based

16   on the same legal theories. Rule 23(a)(3) is satisfied.

17       **Adequacy.** Plaintiffs are adequate representatives of the Settlement Class, as they actively

18   participated in the litigation and continue to do so. Van Note Decl. ¶ 22. They do not have conflicts with

19   other Class Members as their claims are co-extensive with those of the class, *Kent v. Hewlett-Packard

20   Co.*, 2011 WL 4403717, *1 (N.D. Cal. Sept. 20, 2011), and they have retained experienced counsel to

21   represent the Class's interests. *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). Class Counsel have

22   decades of experience representing plaintiffs in complex class actions, including other cases involving

23   data privacy and cybersecurity. Van Note Decl. ¶¶ 18, 24-25. They also vigorously pursued Plaintiffs'

24   claims, preparing an opposition to a motion to dismiss and engaging in extensive Settlement negotiations.

2.      *The Class Meets the Requirements of Rule 23(b)(3)*

**Predominance.** The predominance requirement is satisfied when class members' claims can be proven using common, class-wide evidence rather than evidence that varies from class member to class member. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Because Plaintiffs' claims are focused on the nature of Blackhawk's security policies and protocols, they are well-suited for class treatment. Blackhawk's liability can be established largely, if not entirely, through class-wide evidence. There would be little need for Class members to present individualized evidence until the damages phase, and it is well established that the need for individualized findings as to the amount of damages is not enough to defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016); *In re Yahoo!,* supra, 2020 WL 4212811 at *7 (court found common questions regarding the nature of Yahoo's security measures predominated*)*.

**Superiority.** Rule 23(b)(3) requires a class action be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> "The matters pertinent to the findings include: (a) the class members' interest in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3).

In the context of these factors, the instant matter is superior as a class action as there is low interest in prosecuting a multitude of claims in a variety of forums and otherwise doing so in this matter would be overly laborious to the individual class members and the Courts. However, given that this case is in settlement context, the Court need not consider manageability issues because "the proposal is that there be no trial;" as such, manageability considerations are no obstacle to certification for purposes of Settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Defendant. See, e.g., *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions…permit the Plaintiff to pool claims which would be uneconomical to litigate individually… [In such a case,] most of the Plaintiff would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law via individual actions is impracticable because the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review is too costly. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

The class device is the superior method of adjudicating consumer claims against Defendant arising from unauthorized access to customer accounts because it promotes greater efficiency, and no realistic alternative exists. Courts have routinely recognized this in other data breach cases where class-wide Settlements have been approved. *See, e.g.*, *In re Yahoo!*, *supra*, 2020 WL 4212811 at *8; *In re Equifax*, 2020 WL 256132 at *45.

3.   <u>The Settlement Class Definition Comports with the Class Definition in the Complaint</u>

The Settlement Class definition is both broader and more detailed that the class definition in the First Amended Complaint, and now includes "All individuals whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident." S.A. § II (B). A California Settlement Subclass is defined as "All residents of California whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or SCC2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc's Data Security Incident.". *Id.*

### C.   The Proposed Notice and Notice Program Meet All Applicable Requirements

1.   *The Notice Plan Uses the Best Practicable Means to Reach Class Members*

The federal rules require that, before final approval of a Settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. Rule 23(e)(1)(B). Where certified under Rule 23(b)(3), the notice must also be "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. Rule 23(c)(2)(B).

The notice plan meets these requirements. It provides for direct electronic or mailed notice to the 165,727 Class Members. This Notice is reasonably calculated to reach all Class Members and apprise them of the Settlement.

2.   *The Proposed Notice Adequately Informs Class Members of Their Rights and Options*

In accordance with Rule 23(c)(2)(B) and this District's procedural guidelines, the Notice (S.A. Exs. A, B) sets forth in clear, concise and easily understood language all requisite information, including, *inter alia*, the nature of the action, the class definition, claims, issues, or defenses, the binding effect of a class judgment and all available rights under the Settlement.

### D.   Settlement Class Counsel Should be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. Rule 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. Rule 23(g)(1)(A)(i-iv).

Here, Class Counsel have extensive experience prosecuting complex consumer class action cases, and specifically data privacy cases. Van Note Decl. ¶¶ 18, 24-25. Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Cole & Van Note, Clayeo C. Arnold, A Professional Corporation, Markovits, Stock & Demarco, LLC and Bradley/Grombacher LLP as Co-Lead Class Counsel.

## E.    Schedule

| Event | Date |
|---|---|
| Settlement Administrator sends Notice to the Settlement Class (the "Notice Date") | Within 29 after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | Within 75 after Entry of Preliminary Approval Order |
| Last day for Settlement Class Members to submit Claim Forms | 90 days after the Notice Deadline |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 45 days prior to the Final Approval Hearing |
| Final Approval Hearing | TBD |

## V.    **CONCLUSION**

For these reasons, Plaintiffs respectfully request the Court grant preliminary approval.


Dated:  November 3, 2023                **CLAYEO C. ARNOLD**
                                        **A PROFESSIONAL CORPORATION**


                                        By:    */s/M. Anderson Berry*
                                               M. Anderson Berry
                                               Gregory Haroutunian
                                               865 Howe Avenue
                                               Sacramento, California 95825
                                               Telephone: (916) 239-4778
                                               aberry@justice4you.com
                                               gharoutunian@justice4you.com

                                               Laura Van Note, Esq.
                                               **COLE & VAN NOTE**
                                               555 12th Street, Suite 2100
                                               Oakland, California 94607

Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
lvn@colevannote.com

Terence R. Coates
Justin C. Walker
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

Marcus J. Bradley
Kiley L. Grombacher
Lirit A. King
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com