Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com
Web: www.colevannote.com

Attorneys for Representative Plaintiffs and the Proposed Class

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE: BLACKHAWK NETWORK DATA BREACH LITIGATION*<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:22-cv-07084-CRB<br><br>CLASS ACTION<br><br>**DECLARATION OF LAURA GRACE VAN NOTE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:        December 1, 2023<br>Time:        1:30 pm<br>Judge:       Hon. Charles R. Breyer |

I, Laura Grace Van Note, do hereby declare as follows:

1.      I am an attorney-at-law, licensed to practice in all jurisdictions of this State, and I am a Shareholder at the law firm of Cole & Van Note ("CVN"), attorneys for Representative Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Silvia Cortez, Brian O'Connor, and Kelly Rogers (collectively "Plaintiffs") and the Proposed Class.

2.      I make these statements based on personal knowledge, would so testify if called as a witness at trial and have personal knowledge of the foregoing. I make this Declaration in Support of

---

1

Representative Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. The Settlement Agreement to be reviewed for preliminary approval is filed concurrently with the Motion for Preliminary Approval.

3.      On or about September 2022, Defendant Blackhawk Network Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk" or "Defendant") discovered unauthorized activity on its internal computer systems.

4.      On or about October 31, 2022, Defendant began sending Notices to affected individuals. These Notices stated, in part, that "irregular activity" was discovered on Blackhawk's network that began on September 4, 2022. The Notices further stated that the unauthorized actor compromised Plaintiffs' and Class Members' names, email addresses, phone numbers and prepaid card information such as card numbers, expiration dates and CVV codes.

5.      Plaintiffs filed the Amended Consolidated Complaint on February 9, 2023, alleging (i) Negligence, (ii) Breach of Implied Contract, (iii) Unjust Enrichment, (iv) Violations under the California Unfair Competition Law, Cal Bus. & Prof Code §§ 17200, *et seq.,* (v) Violations under the California Consumer Privacy Act, Cal. Civ. Code § 1798.150, *et seq.*, (vi) Deceit by Concealment, Cal. Civ. Code §§ 1709 and 1710, (vii) Violations under Illinois' Consumer Fraud and Deceptive Business Practices Act, 805 Ill. Comp. Stat. 505/1, *et seq.*, (viii) Violations under Texas' Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, (ix) Violations under the Colorado Consumer Protection Act, Colo. Rev. Stat. §6-1-101, *et seq.,* and (x) Violations under the New York General Business Law § 349. Even prior to filing the Action, Proposed Class Counsel were armed with a detailed factual understanding of Defendant's operations and data breaches in general.

6.      After the filing of the consolidated Action, the Parties, in lieu of completing the briefing of a Motion to Dismiss, agreed to mediate the matter. The Parties then engaged in informal discovery

efforts, including a voluntary exchange of confirmatory information to facilitate settlement discussions. The information made available to Proposed Class Counsel prior to the ultimate mediation was sufficient to place Proposed Class Counsel, each of whom are experienced class action litigators, in a position to explore settlement.

7.     On June 5, 2023, the Parties mediated the matter before experienced neutral, Michelle Yoshida of Phillips ADR, a mediator with substantial knowledge of class action procedure. At mediation, the negotiations were intense and at arm's length. Though the mediation was not initially successful, over the next three months the Parties engaged in settlement discussions and reached a settlement in principle. The Settlement Agreement attached to this Declaration as **Exhibit "A"** provides the long form agreement that conforms to this initial settlement in principle. The Settlement Agreement provides substantial benefits to the Settlement Class, eliminates the costs and burdens of continued litigation and fully accomplishes Plaintiff's goals in this Action.

8.     No trial date has been set and no class has been certified. The Settlement Class and the proposed Class in the operative First Amended Complaint are the same (i.e., all individuals whose information was involved in the Data Breach).

**SETTLEMENT PROCESS**

9.     Proposed Class Counsel conducted a thorough investigation into the facts of this Action. The Parties engaged in extensive informal discovery and production of data for the putative Class Members to perform an analysis and valuation of all claims. Prior to mediation, the Parties exchanged information and documents to investigate the veracity, strength, and scope of the claims, and to allow analysis and evaluation of the claims and Defendant's defenses thereto. Representative Plaintiffs have vigorously prosecuted this case, and Defendant has vigorously contested it. I believe that the documents exchanged and analyzed in preparation for mediation, as well as the Parties' discussions during mediation

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

and subsequent negotiations are sufficient for the Parties to make an informed decision about a fair resolution of this Action.

10.     In final preparation for mediation, Proposed Class Counsel requested information tailored to developing a damages and penalties analysis for each of the primary claims identified in the Consolidated Amended Complaint. Though Defendant did not provide complete responses to our FRE 408 requests, Defendant provided the number of Class Members for each of the proposed classes, which was sufficient to explore settlement.

11.     On June 5, 2023, the Parties participated in a mediation before respected and experienced mediator Michelle Yoshida of Phillips ADR. At mediation, the Parties exchanged information and documents, including a substantial amount of information requested in Plaintiffs' prior informal discovery requests, and engaged in intensive discussions regarding their evaluations of the litigation and various aspects of the litigation, including the risks and delays of further litigation, the risks to the Settling Parties of proceeding with class certification, the law relating to the allegations, the evidence produced and analyzed and the possibility of appeals, among other things. Due to the Parties' extensive experience in data breach and class action litigation, the Parties were able to determine the principle of the matter relatively quickly and spent the majority of the mediation discussing the nature of and size of the proposed Settlement Fund.  Unfortunately, the Parties were unable to come to an agreement at mediation and ended the mediation session at an impasse.

12.     Following mediation, the Parties continued arms-length negotiations to try to reach a resolution and only after several months of further negotiations were able to reach a settlement in principle of the matter. The Parties continued to negotiate various settlement terms over the next three months. This process culminated in the Settlement Agreement accompanying this Motion. No side agreements were made (i.e., the Settlement Agreement is the only agreement between the Parties).

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

13.     The Parties diligently worked on a Notice Plan, Notices, Claim Forms and other exhibits alongside the long-form settlement agreement until filing this Motion for Preliminary Approval. Many redline drafts were exchanged.

14.     The long-form Settlement Agreement was finalized and signed as of November 2, 2023. The requested attorneys' fees and costs of up to $246,250 are only 25% of the total settlement fund and will, almost certainly, represent a negative multiplier on Proposed Class Counsel's lodestar by the time of Final Approval, considering that Proposed Class Counsel have vigorously litigated this matter including briefing their opposition to Defendant's Motion to Dismiss and engaging in substantial arms-length negotiations with Defendant both before and after mediation to bring about a successful resolution of this matter.

**FAIRNESS AND ADEQUACY OF THE PROPOSED SETTLEMENT**

15.     After thoroughly interviewing Representative Plaintiffs, Proposed Class Counsel determined their claims were likely typical of the other Class Members and they would be adequate as representative plaintiffs. Throughout the litigation to date, Proposed Class Counsel's opinions in this regard have not wavered.

16.     Proposed Class Counsel are not aware of any antagonism or conflict of interest between Representative Plaintiffs and the putative class. In fact, Representative Plaintiffs have been involved in this case and have been in routine contact with Proposed Class Counsel. Additionally, Representative Plaintiffs assisted with the prosecution efforts that included frequent emails and telephone calls with counsel, production of documents and communications surrounding mediation and settlement.

17.     The information Proposed Class Counsel acquired through their pre-filing investigation and knowledge of this industry enabled Proposed Class Counsel to properly and intelligently value these claims for purposes of settlement, assess the risks of continued litigation and otherwise determine what

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

terms of settlement would be fair and reasonable. As a result, it is clear that the discovery process has been involved and thorough, placing Representative Plaintiffs and Proposed Class Counsel in an excellent position to evaluate the merits and value of this lawsuit.

18.     Proposed Class Counsel together possess decades of experience in class action litigation, privacy litigation, and data breach litigation and have a great deal of experience working together for the efficient prosecution of class action litigation. Each of Proposed Class Counsel's firm biographies and resumes are attached hereto as **Exhibits B** (CVN); **C** (Clayeo C. Arnold); **D** (Markovitz, Stock & Demarco, LLC); and **E** (Bradley/Grombacher LLP).

19.     If class certification was granted, there would still be the inherent risks of trial. Proof of Plaintiffs' case at trial would require expert testimony to establish that Defendant failed to adequately safeguard Class Members' PII.

20.     Finally, the Settlement obviates the risk that Plaintiffs would succeed at trial only to have Defendant significantly delay payment of the judgement by appeal or even overturn the judgment on appeal. This is especially important in data breach cases because time is of the essence. By requiring enhanced security now, the proposed Settlement will protect the Class Members' PII in ways that a later monetary judgment will not. There is no overall cap on the total amount Class Members can receive and no money will revert to Defendant in connection with the Settlement Agreement.

21.     The Parties reached an agreement in principle on the material terms of the Settlement before negotiating on attorneys' fees and costs.

### THE PROPOSED CLASS REPRESENTATIVES

22.     A service (or enhancement) award for each named Plaintiff will be sought in the amount of $2,500. Representative Plaintiffs' alleged claims are similar to those of the Class. Each stepped forward and was available as a proposed class representative, filed a lawsuit and worked with their

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

attorneys as needed throughout the litigation. Representative Plaintiffs were available for questions and to supply documents to Proposed Class Counsel and vigorously litigated this case. Representative Plaintiffs expended time and resources in litigating their case. Their effort should be rewarded. Moreover, the service award was negotiated separate and apart from the other settlement terms and were only negotiated after the primary terms were finalized.

## THE PROPOSED SETTLEMENT ADMINISTRATOR

23.     The Class Notice will be distributed by the Claims Administrator. The Parties ask the Court to appoint Angeion Group as the Claims Administrator. Angeion Group is an established and respected class action administrator. The fee to be paid to Angeion Group was negotiated separately and will not affect the Settlement Fund (since Defendant is paying it separately from the payment to the Class), making this element of the Settlement greatly beneficial to the Class. Even then, the Parties solicited bids from three established companies and ultimately selected Angeion Group, which estimates the costs of notice and administration to be $70,000. In my experience, this is a reasonable amount in relation to the size of the Class and the value the Settlement provides to Class Members.

## EXPERIENCE, QUALIFICATION AND VIEWS ON SETTLEMENT

24.     Proposed Class Counsel were involved in the proceedings on this case and are familiar with this litigation and the proposed Settlement. The combined decades of experience of Proposed Class Counsel informed the settlement negotiations. Proposed Class Counsel believe this settlement is fair, reasonable, and adequate, and warrants approval. It is our opinion that, given the limited information accessed in the security incident, few if any Class Members would be able to prove damages over $500 at trial. Accordingly, Proposed Class Counsel believe that all or nearly all Class Members who make claims can receive full value or close to full value for their claims. Proposed Class Counsel am not aware of any other cases that will be affected by this Settlement.

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

25.     The basis for Proposed Class Counsel's opinion is derived from research relating to the filing of the case and issues of the case, multiple discussions with counsel for Defendant relating to case management, informal exchanges of discoverable information and documents, settlement negotiations, reviewing and analyzing documents and contracts, participating in settlement negotiations including drafting of mediation statements and attending various meetings relating to mediation including the all-day mediation session, drafting of the settlement documents, multiple phone conferences relating to the resolution and the drafting of this Declaration in Support of Preliminary Approval.

## COMPARABLE CASES

26.     Class Counsel and Plaintiffs believe that the Settlement in this case is fair and reasonable in that it exceeds the settlement amount recovered per class member in several other recent data breach class action settlements, such as: *In re: Hanna Andersson and Salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC (N.D. Cal.), a similar case in this district involving payment card data and no sensitive PII such as Social Security numbers, had a settlement valued at $2.00 per class member finally approved; and *Cochran v. Kroger*, No. 5:21-cv-01887 (N.D. Cal.) another data breach matter in this district, a settlement valued at $1.31 per class member was finally approved.

## EXHIBITS

27.     Attached hereto and marked as **Exhibit "A"** is a true and correct copy of the fully executed Settlement Agreement and Release of Claims ("Agreement") entered in by the Representative Plaintiff, individually, and on behalf of the putative Class, and Defendant.

28.     Attached hereto and marked as **Exhibit "B"** is a true and correct copy of CVN's professional resume.

29.     Attached hereto and marked as **Exhibit "C"** is a true and correct copy of Clayeo C. Arnold, APC's professional resume and firm biography.

DECLARATION OF LAURA GRACE VAN NOTE ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:22-cv-07084-CRB

30.     Attached hereto and marked as **Exhibit "D"** is a true and correct copy of Markovitz, Stock & Demarco, LLC's professional resume and firm biography.

31.     Attached hereto and marked as **Exhibit "E"** is a true and correct copy of Bradley/Grombacher LLP's professional resume and firm biography.

I declare, under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 3rd day of October 2023, at Oakland, California.



Laura Grace Van Note

# EXHIBIT A

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

I.  **Introduction.**

   A.   This Settlement Agreement ("**Agreement**" or "**Settlement Agreement**") is hereby entered into by and among Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Silvia Cortez, Brian O'Connor, and Kelly Rogers ("**Plaintiffs**" or "**Named Plaintiffs**") individually and on behalf of the Settlement Class members and Defendant Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("**Defendant**" or "**Blackhawk**"), (collectively, "**the Parties**"), in the matter of *In re: Blackhawk Network Data Breach Litigation*, Case No. 22-cv-07084-CRB (N.D. Cal.).

   B.   This Agreement is intended by the Parties to fully, finally, and forever settle, compromise, and discharge the Released Claims (as defined below), subject to the terms of this Agreement, and subject to preliminary and final approval of the Court.

II.  **Terms of Settlement**

   A.   Definitions.

      1.   "**Action**" means the civil action *In re: Blackhawk Network Data Breach Litigation*, Case No. 22-cv-07084-CRB, in which an Amended Consolidated Class Action Complaint was filed in the District Court for the Northern District of California on February 9, 2023.

      2.   "**Agreement**" or "**Settlement Agreement**" means this Class Action Settlement Agreement and Release, including any exhibits.

      3.   "**Class Counsel**" means:

         M. Anderson Berry
         Gregory Haroutunian
         CLAYEO C. ARNOLD, A PROFESSIONAL CORPORATION
         865 Howe Avenue
         Sacramento, CA 95825

         Terence R. Coates
         Justin C. Walker
         Dylan J. Gould
         MARKOVITS, STOCK & DEMARCO, LLC
         119 East Court Street, Suite 530
         Cincinnati, OH 45202

Marcus J. Bradley
Kiley L. Grombacher
Lirit A. King, Esq.
BRADLEY/GROMBACHER LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361

Scott Edward Cole
Laura Grace Van Note
COLE & VAN NOTE
555 12th Street, Suite 2100
Oakland, California 94607

4.    "**Court**" means the United States District Court for the Northern District of California.

5.    "**Data Security Incident**" means the unauthorized access to personal, payment card, and other information of certain customers, which was disclosed by Blackhawk in October 2022.

6.    "**Released Claims**" means any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, based on any federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of or relating to actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act relating to the Data Security Incident, including all claims relating to the Data Security Incident that were brought or could have been brought in the Action belonging to any and all Releasing Parties. Released Claims shall not include the right of any Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement and shall not include the claims of any person who has timely excluded themselves from the Class.

7.    "**Released Parties**" means Blackhawk and its past, present, and future direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, members, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors, and trustees.

8.      "**Releasing Parties**" means Plaintiffs and other Settlement Class members and their respective past, present, and future heirs, beneficiaries, conservators, executors, agents, and estates.

9.      "**Reminder Notice**" means a reminder notice sent via email to members of the Settlement Class in substantially the form attached hereto as **Exhibit A**. This Reminder Notice will be provided to the Settlement Class seventy-five (75) days from the Notice Date.

10.     **"Personally Identifiable Information"** means first name, last name, email address and/or telephone number.

11.     "**Settlement Fund Taxes and Tax-Related Expenses**" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Blackhawk with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

B.      Certification of Class Action for Settlement Purposes Only.  The Parties agree, for settlement purposes only, to stipulate to the certification of:

A Settlement Class defined as follows:

> All individuals whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident.

Excluded from the Settlement Class are (i) any judge or magistrate judge presiding over this Action, members of their staff, and members of their immediate families; (ii) the Released Parties; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Blackhawk; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

A California Settlement Subclass defined as follows:

> All residents of California whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV

or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident.

Excluded from the California Settlement Subclass are (i) any judge or magistrate judge presiding over this Action, members of their staff, and members of their immediate families; (ii) the Released Parties; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Blackhawk; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

For purposes of settling this Action, the Parties conditionally stipulate and agree that the requirements for establishing class certification with respect to the Settlement Class have been met, and that the class is comprised of approximately 165,727 individuals.  In the event that, for any reason, the Court does not issue a Final Approval Order that approves of this Settlement Agreement, then such stipulated class certification shall become null and void and the Parties shall not be affected in any way by such prior certification. Blackhawk thus does not waive, and instead expressly reserves, the right to challenge the propriety of class certification for any purpose in the event that the Court does not issue a Final Approval Order that approves this Settlement Agreement.

C.      No Admission of Liability.  Blackhawk does not admit any liability or wrongdoing of any kind associated with the allegations or claims asserted in the Action. Nothing in this Settlement Agreement or any action that Blackhawk takes under it shall be deemed or construed as an admission of liability or wrongdoing of any kind on the part of Blackhawk with respect to any allegations or claims, nor does it constitute an admission that any putative class meets the requirements for class certification.  It is specifically understood and agreed that the benefits provided in this Settlement Agreement are being paid or provided in full and final settlement of all claims and that such payment and the providing of sufficient benefits does not constitute and shall not be construed as any admission or evidence of fault or liability on the part of the Released Parties, and shall not be admissible in any proceeding as evidence of fault, liability, or wrongdoing.  Blackhawk has asserted defenses it believes to be meritorious and expressly denies that it was at fault and further denies that it is liable to Plaintiffs or the Settlement Class for any amounts. Plaintiffs disagree with the strength and validity of Blackhawk's defenses.

D.      Effective Date.  The settlement in this Settlement Agreement is conditioned upon the occurrence of each of the following events: (i) counsel for the Parties executing the Settlement Agreement; (ii) the Court granting preliminary approval to the Settlement Agreement as provided herein; (iii) notice being provided to the Settlement Class members, providing them with an opportunity to submit claims or opt out; (iv) the Court entering a Final Approval Order granting final approval of

the Settlement Agreement without any material modification or condition; and (v) dismissal of this Action with prejudice. Assuming each of these events has occurred, the effective date of the Settlement Agreement ("**Effective Date**") shall be the later of either the expiration of the time for filing an appeal of the Final Approval Order, or if a timely appeal is made, the date of the final resolution of that appeal and any subsequent appeals resulting in final approval of the Settlement Agreement without any material modification or condition.

E.     Settlement Consideration.

1.     <u>Agreed Monetary Relief</u>.  Within thirty (30) days of the Effective Date of this Agreement, Blackhawk shall create a fund, by depositing with the Settlement Administrator, US $985,000.00 in cash (the "**Settlement Fund**").  The Named Plaintiffs and Settlement Class members' settlement awards, Class Counsel's attorney's fees, costs and expenses ("**Class Counsel Fees**"), the Named Plaintiffs Service Payments, and all costs of Settlement Administration ("**Administrative Costs**") will be paid from the Settlement Fund.

Other than the Settlement Fund, Blackhawk will have no financial obligation to the Named Plaintiffs, Settlement Class members, Class Counsel, any other attorney representing Named Plaintiffs, any other attorney representing any Settlement Class member, or the Settlement Administrator with respect to the Released Claims. The Settlement Fund represents the total extent of Blackhawk's monetary obligations under this Agreement.

The "**Net Settlement Amount**" shall be that portion of the Settlement Fund that remains after deducting amounts for any (i) Administrative Costs, (ii) Settlement Fund Taxes and Tax-Related Expenses, (iii) Service Award Payments approved by the Court, and (vii) Class Counsel Fees approved by the Court; all of which shall be payable from the Settlement Fund.

2.     <u>Agreed Injunctive Relief</u>.

a.     Blackhawk agrees to and has implemented the following security measures: After discovery of the Data Security Incident, Blackhawk implemented a code update that remediated the vulnerability that had been exploited. Amongst additional mitigation measures, Blackhawk further (1) performed a code vulnerability scan to look for other potential vulnerabilities; and (2) implemented velocity controls designed to alert more quickly to, and to mitigate the risk of, another attempted similar attack. The costs of any such improvements on the part of Blackhawk shall be fully borne by

Blackhawk, and under no circumstances will such costs be deducted from the Settlement Fund.

b.   <u>Blackhawk</u> has provided or will provide a copy of the investigation report generated by the PCI DSS Forensic Investigator ("PFI") and an interview with the PFI.

F.   Class Counsel Fees and the Named Plaintiffs Service Payments.

1.   At least one week prior to the deadline for Class Members to object to the settlement, Class Counsel will submit an application for Class Counsel Fees. Any Class Counsel Fees awarded by the Court at the Court's discretion shall be paid out of the Settlement Fund within thirty (30) days from the Effective Date.  The Court's approval of Class Counsel Fees in an amount less than the applied-for amount will not affect the enforceability of this Agreement.

2.   In recognition of their time and effort spent serving as Class Representatives, Class Counsel shall submit an application for approval of Named Plaintiffs Service Payment awards in the amount of $2,500 per Named Plaintiff.  The amounts approved for the Named Plaintiffs Service Payment is solely within the discretion of the Court.  The Named Plaintiffs Service Payments shall be paid out of the Settlement Fund within thirty (30) days from the Effective Date. The Court's approval of Named Plaintiffs' Service Payment awards in an amount less than the applied-for amount will not affect the enforceability of this Agreement.

G.   <u>Settlement Administration</u>. The Parties will engage Angeion Group as the Settlement Administrator to oversee the sending of the Class Notice and making of the payments required under this Settlement Agreement. The Settlement Administrator estimates Administrative Costs to be $68,877.00. Administrative Costs shall be paid out of the Settlement Fund.

The Settlement Administrator will administer the settlement, including (i) not later than ten (10) calendar days after the filing of this Settlement Agreement with the Court, the Settlement Administrator, on Defendant's behalf, shall serve or cause to be served notice of the proposed Settlement upon the appropriate federal and state officials, as provided by the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq.*; (ii) providing notification of the proposed settlement as per this Agreement to the Settlement Class members; (iii) creating and hosting a website, publicly accessible for at least six months after the Effective Date, dedicated to providing information related to the Action, including access to relevant publicly available court documents, the settlement and this Settlement Agreement, the long-form notice of the settlement, and providing Settlement Class members with the ability to submit

claims and supporting documentation for compensatory relief; (iv) maintaining a toll-free telephone number and P.O. Box by which Settlement Class members can seek additional information regarding this Settlement Agreement; (v) processing claims and supporting documentation submissions, and providing approved payments to Settlement Class members; (vi) processing requests for exclusion from Settlement Class members; and (vii) any other provision of this Settlement Agreement that relates to the settlement and claims administration.

H.    Distribution of Net Settlement Amount to Settlement Class members.

1.    Settlement Class members may submit one claim per Settlement Class member.

2.    The claimed benefits, as described below, shall include: (a) Out-of-Pocket Losses; (b) California Consumer Privacy Act ("CCPA") Payments; and (c) *Pro Rata* Cash Payments. A Class Member may be eligible for and may claim more than one category of benefits.  The cost of providing these benefits shall be paid from the Settlement Fund after the payment of any Attorneys' Fees and Expenses Award, any Service Awards, and the Costs of Claims Administration. Thereafter, the priority for payment of claimed benefits will be as follows: (1) Out-of-Pocket Losses; (2) CCPA Payment; and (3) *Pro Rata* Cash Payment. If the Settlement Fund is insufficient to cover all Out-of-Pocket Losses, such claims shall be reduced *pro rata* to account for the amount of remaining funds, and no money shall be paid to any claimants for CCPA Payments or *Pro Rata* Cash Payments. If there are sufficient funds to pay for all claimed Out-of-Pocket Losses, but insufficient funds to pay for all claimed CCPA Payments, then claimants shall receive full value for their Out-of-Pocket Losses, but CCPA Payments shall be reduced *pro rata* to account for the amount of remaining funds. Any remaining money in the Settlement Fund (to the extent any exists) after the payment of Out-of-Pocket Losses and CCPA Payments shall be disbursed in a *pro rata* amount to all Settlement Class members that make claims.

3.    Out-of-Pocket Losses: Every Settlement Class member may submit a claim for up to $5,000 each for out-of-pocket expenses and losses, which are unreimbursed costs, expenditures, or losses incurred by a Settlement Class member that are fairly traceable to the Data Security Incident ("Out-of-Pocket Losses"). Out-of-Pocket Losses may include, without limitation, the following:

(i)    unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, or falsified tax returns;

(ii)      unreimbursed costs incurred on or after September 12, 2022, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;

(iii)     other unreimbursed miscellaneous expenses incurred related to any out-of-pocket expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

(iv)     other mitigative costs that were incurred on or after September 12, 2022, through the date of the Settlement Class member's claim submission; and

(v)      unpaid time off work to address issues fairly traceable to the Data Security Incident at the actual hourly rate of that Settlement Class member.

Settlement Class members who elect to submit a claim for reimbursement of Out-of-Pocket Losses must provide to the Settlement Administrator information required to evaluate the claim, including: (1) the Settlement Class member's name and current address; (2) documentation reasonably supporting their claim; and (3) a brief description of the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Documentation supporting Out-of-Pocket Losses can include receipts or other documentation not "self-prepared" by the Settlement Class member concerning the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to clarify or support other submitted documentation. Out-of-Pocket Losses will be deemed "fairly traceable" if: (1) the timing of the loss occurred on or after September 12, 2022, and (2) in the Settlement Administrator's sole determination, the Out-of-Pocket Losses could reasonably be caused by the Data Security Incident. Claims for Out-of-Pocket Losses may be reduced *pro rata* if insufficient funds remain in the Settlement Fund after the payment of Attorneys' Fees and Expenses Award, any Service Awards, the Costs of Claims Administration, and the CAFA Notice.

4.    CCPA Payment: California Subclass Members may submit a claim for a $200.00 cash payment as a result of the CCPA claim asserted against Defendants. The CCPA Payment, for California residents, is in addition to any other Settlement benefits available. The CCPA payment may be *pro rata* decreased if insufficient funds remain, as described above in Section H.3.

5.    *Pro Rata* Cash Payment: All Settlement Class members may file a claim for a *pro rata* portion of the Settlement Fund. The amount of this benefit shall be based on the number of claims received and the amount of funds

remaining in the Settlement Fund following the payment of any Attorneys' Fees and Expenses Award, any Service Awards, the Costs of Claims Administration, claims for Out-of-Pocket Losses, and claims for CCPA Payments, as described above in Section H.3.

6.     Cy Pres: Within one-hundred and twenty (120) days of the Distribution, if money remains, those funds will be distributed to one or more nonprofit organizations mutually agreed upon by the Parties, and approved by the Court, as a *cy pres* award for a purpose(s) consistent with the objectives of the litigation and interests of Settlement Class; provided that such grants shall stipulate that the grant amounts may not be used in furtherance of litigation. The Parties agree that no residual funds will revert to Defendants.

7.     Payment: Claims of Settlement Class members that are deemed valid will result in Distributions being made to Settlement Class members within ninety (90) days from the Effective Date, or as soon thereafter as is reasonably practical.

   a.     Settlement Class members shall have a choice of how to be paid the Distribution (with the same choice applying to both distributions), either via electronic payment (e.g., Venmo), pre-paid credit card, or check.  Any checks issued from the Settlement Fund shall be valid for ninety (90) days from the date of issuance.

   b.     If the Distribution is returned as undeliverable, or unable to be paid, the Settlement Administrator will reattempt distribution if a forwarding address is provided.  If a new address is not provided, or if the distribution is remailed and returned or is unable to be paid, the Settlement Administrator shall cancel the distribution and there will be no further obligation to attempt to make a distribution to that Settlement Class member.

8.     Taxes: Taxes on the Distribution are the responsibility of the Settlement Class members to whom the payments are made.  The Released Parties are not responsible for taxes arising from the payment of the Distribution.  Any Settlement Fund Taxes and Tax-Related Expenses shall be paid out of the Settlement Fund.

9.     Release.  Upon the Effective Date, and in consideration of the settlement relief and other consideration described herein, the Releasing Parties shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from any and all Released Claims, including but not limited to any state law or common law claims that the

Releasing Parties may have or had, such as under California's Customer Records Act, California Civil Code § 1798.80, *et seq.* and/or California's Consumer Privacy Act, California Civil Code § 1798.100, *et seq.* Each Party expressly waives all rights under California Civil Code section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties also waive the provisions and rights of any law(s) that are comparable in effect to California Civil Code section 1542 (including, without limitation, California Civil Code § 1798.80, *et seq.*, Montana Code Ann. § 28- 1- 1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20- 7-11). The Releasing Parties agree that, once this Agreement is executed, they will not, directly or indirectly, individually or in concert with another, maintain, cause to be maintained, or voluntarily assist in maintaining any further demand, action, claim, lawsuit, arbitration, or similar proceeding, in any capacity whatsoever, against any of the Released Parties based on any of the Released Claims.

I.   <u>Notice of Settlement</u>.  The Parties agree to the following procedures for notifying the Settlement Class members.

    1.   <u>Identification of Settlement Class members</u>.  Within ten (10) days of entry of an Order from the Court granting Preliminary Approval of the Settlement, Blackhawk will provide to the Settlement Administrator a list of approximately 165,727 unique names and email addresses associated with users who received notice of the Data Security Incident from Blackhawk.

       Any documentation or information disclosed in connection with this paragraph may be used by Class Counsel and the Settlement Administrator only for purposes of implementing this Settlement Agreement.  All such documentation or information may not be disclosed by Class Counsel or the Settlement Administrator to anyone outside their organizations.

    2.   <u>Class Notice</u>.  The court-approved Notice of Proposed Class Action Settlement ("**Class Notice**") shall be in substantially the form attached hereto as **<u>Exhibit A</u>**, a long form notice shall be available to the Class Members in substantially the form attached hereto as **<u>Exhibit B</u>**, and a Claim Form shall be in substantially the form attached here to as **<u>Exhibit</u>**

**C**. Any changes to the Class Notice that do not materially affect the substance of the Settlement Agreement that the Court may require will not invalidate this Settlement Agreement.

The Class Notice shall be sent to Settlement Class members via email in substantially the form attached hereto as **Exhibit A** sent by the Settlement Administrator to all Settlement Class members at the email address used to distribute notice of the Data Security Incident. In the event the Settlement Administrator discovers that any Settlement Class member's email address is not valid, the Class Notice shall be sent to said Settlement Class members via US Mail (see "Postcard Notice," **Exhibit A**).

The Class Notice shall be sent via email to Settlement Class members within thirty (30) days of entry of an Order granting Preliminary Approval of the Settlement (the "**Notice Date**").

The Reminder Notice shall be sent via email to Settlement Class members within seventy-five (75) days from the Notice Date.

3.   Claim Forms.  Claim Forms, in substantially the form attached hereto as **Exhibit C**, shall be submitted online or by mailing to the Settlement Administrator. The deadline for submitting a valid Claim Form shall be ninety (90) days from the Notice Date. Valid Claim Forms must include the claimant's current mailing address, valid email address, and the Settlement Administrator's unique claim ID for the claimant. The Settlement Administrator shall be initially responsible for determining if a claim is valid.

4.   Dispute Resolution. In the event of a dispute over the validity of a claim or the denial of a distribution, Settlement Class members or Blackhawk shall be entitled to submit their claim to the designated Claims Referee, who is to be mutually agreed upon by Blackhawk and Class Counsel. Blackhawk will provide notice to Class Counsel of any claims submitted to the Claims Referee. The Claims Referee's findings will be final and binding. The Claims Referee's fees for the dispute resolution process shall be part of the Administrative Costs. Settlement Class members and Blackhawk will each bear their own attorneys' fees and any other costs of the dispute resolution process, if any. Class Counsel will have the option, but not the obligation, to participate in the dispute resolution process.

J.   Objection Procedures.  The Class Notice shall inform Settlement Class members of the right to object to the Settlement Agreement.  If a Settlement Class member wishes to have the Court consider an Objection to the Settlement Agreement, such person (i) must not have excluded themselves from the Settlement and (ii) must file

with the Court a written statement stating the reasons for the objection to the Settlement, along with any supporting documentation that the person wishes the Court to consider, by no later than sixty (60) days after the Notice Date (the "**Objection/Opt-Out Deadline**"). If such Objection is submitted and overruled by the Court, the objecting member of the Settlement Class shall remain fully bound by the terms of the Settlement Agreement and the Final Approval Order. The Parties shall submit any responses to Objections no later than seven (7) days prior to the Final Approval Hearing. Any Settlement Class member who does not appear individually or through counsel and who does not challenge or comment upon the fairness and adequacy of the Settlement Agreement or Class Counsel's request for Class Counsel Fees shall waive and forfeit any and all rights to appear separately or object.  All Settlement Class members shall be bound by the Settlement and by all orders and judgments in this Action.

K.      Opt-Out Procedures. The Class Notice shall also provide that Settlement Class members who wish to exclude themselves (i.e., opt out) from the Settlement Class must mail a letter to the Settlement Administrator on or before the Objection/Opt-Out Deadline requesting exclusion from the Settlement Class.  An Opt-Out request must: (i) be in writing; (ii) provide the Settlement Class member's current address; (iii) contain the following statement: "I request that I be excluded from the Settlement Class in the case of *In re: Blackhawk Network Data Breach Litigation*"; (iv) be signed; and (v) be mailed to the Settlement Administrator at the address provided in the Class Notice with a postmark on or before the deadline set forth in the Class Notice. Each individual who properly files a timely written Opt-Out request shall be excluded from the Settlement Class and shall have no rights under the Settlement Agreement. Settlement Class members who fail to submit a valid and timely request for exclusion on or before the Objection/Opt-Out Deadline shall be bound by all terms of the Settlement and any final judgment entered in this Action if the settlement is approved by the Court, regardless of whether they have objected to the settlement. An Opt-Out request shall be deemed timely if it is postmarked no later than sixty (60) days after the Notice Date.

L.      Settlement Administrator Reports. After the Notice Date, the Settlement Administrator shall provide a weekly report to Class Counsel and to Blackhawk's Counsel, setting forth the number of valid Claim Forms that were submitted each week. Within ten (10) days of the Objection/Opt-Out Deadline, the Settlement Administrator shall provide jointly to Class Counsel and Blackhawk's Counsel a report listing the timely written Opt-Out requests and copies of same.

Within one hundred (100) days of the Notice Date, the Settlement Administrator shall provide Class Counsel and Blackhawk's Counsel a report listing preliminary information, which shall be subject to audit, validity, and review of duplicate submissions, regarding: (i) the total number of Claim Forms that were valid and

timely submitted; and (ii) the calculated Claimant Award amount for each Settlement Class member that submitted a valid Claim Form.

Within sixty (60) days of the Effective Date, the Settlement Administrator shall issue a Final Report listing the audited, verified and deduplicated information regarding: (i) the total number of Claim Forms that were valid and timely submitted; and (ii) the calculated Claimant Award amount for each Settlement Class member that submitted a valid Claim Form.

M.   <u>Review and Assistance</u>. Class Counsel and Blackhawk or its counsel will be permitted to audit and review actual (or summary reports on) claims made, claims approved or denied, distributions issued, calculations of benefits under the settlement, and returned distributions and uncashed distributions in order to assist with the effectuation of the settlement and the Parties' respective desire to reasonably ensure that the settlement benefits are administered in a manner to attempt to reach every Settlement Class member.

N.   <u>Preliminary Approval</u>. Within thirty (30) days of execution of the Settlement Agreement, Class Counsel shall promptly prepare and file with the Court a Motion for Preliminary Approval and determination by the Court as to the fairness, adequacy, and reasonableness of this Settlement Agreement. The Motion for Preliminary Approval shall request entry of a preliminary order that: (i) certifies the Settlement Class, (ii) approves the Class Notice and Claim Form as to form and content and directs that such Class Notice and Claim Form be provided to Settlement Class members; (iii) preliminarily approves the Settlement Agreement; and (iv) approves Angeion Group as the Settlement Administrator.

O.   <u>Final Approval and Entry of Final Judgment</u>.  On or before one hundred and twenty (120) days after the Notice Date, the Parties will jointly request that the Court grant final approval and enter judgment approving the Settlement Agreement as fair, adequate, reasonable, and binding on all Settlement Class members; ordering that the settlement payments be made to the Settlement Class members; ordering that Class Counsel Fees, the Administrative Costs, and the Named Plaintiffs Service Payments be paid in the amounts approved by the Court; dismissing the Action with prejudice; and barring Settlement Class members from bringing Released Claims.

P.   <u>Termination</u>.

1.   The Settlement Agreement may be terminated and cancelled at the sole and exclusive discretion of Blackhawk if two percent (2%) or more of Settlement Class members timely and validly exclude themselves from the Settlement Class.

2.      If there is a failure to reach any Effective Date and/or if the Court should for any reason fail to approve this Settlement Agreement in the form agreed to by the Parties, decline to enter the Final Approval Order, or impose any modification or condition to approval of the Settlement Agreement to which the Parties do not consent, and/or if the Final Approval Order is reversed or rendered void, then (a) this Settlement Agreement shall be considered null and void; (b) neither this Settlement Agreement nor any of the related negotiations shall be of any force or effect; (c) Blackhawk shall have no obligation to provide any cash or other benefit to Settlement Class members or make any cash payment to the Settlement Fund and shall be entitled to the return of all cash deposited with the Settlement Administrator; (d) all Parties to this Agreement shall stand in the same position, without prejudice, as if the Agreement had been neither entered into nor filed with the Court; and (e) the Settlement Agreement and all negotiations, statements, proceedings and data relating thereto shall be protected by Federal Rules of Evidence Rule 408 and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Action. Invalidation of any portion of this Agreement shall invalidate this Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect.

3.      <u>Confidentiality</u>.  To the extent permitted by ethics rules, the Parties and their counsel shall keep confidential all settlement communications, including communications regarding the negotiation and drafting of this Settlement Agreement.  This paragraph shall not be construed to limit or impede the notice requirements contained in this Settlement Agreement, nor shall this paragraph be construed to prevent Class Counsel or Blackhawk's Counsel from notifying or explaining that the Action has settled or limit the representations that the Parties or their Counsel may make to the Court to assist in the Court's evaluation of the Settlement Agreement.  Blackhawk may also provide information about the Settlement Agreement to its attorneys, members, partners, insurers, brokers, agents, and other persons or entities as required by securities laws or other applicable laws and regulations.

Q.      <u>Cooperation in Effecting Settlement</u>: The Parties, their successors and assigns, and their attorneys will implement this Settlement Agreement in good faith, use good faith in resolving any disputes that may arise in the implementation of this Settlement Agreement, cooperate with one another in seeking Court approval of this Settlement Agreement, and use their best efforts to affect the prompt consummation of this Settlement Agreement.

R.     Miscellaneous Provisions.

1.     This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for both Parties.

2.     The headings of the sections of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

3.     This Settlement Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or Party's legal counsel, are merged herein.

4.     The Parties and their counsel will cooperate with each other and use their best efforts to implement this Settlement Agreement.  Class Counsel shall, with the assistance and cooperation of Blackhawk's Counsel, take all necessary steps to secure the Court's final approval of this Settlement Agreement and dismissal of this Action with prejudice.

5.     This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties and Settlement Class members and their respective heirs, successors, and assigns.

6.     All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of California, without regard to its rules regarding conflict of laws.

7.     The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after extensive negotiation, with consideration by and participation of counsel for both Parties. The Settlement Agreement shall be construed according to the fair intent of the language taken as a whole, and not for or against any Party.

8.     The waiver by one Party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Settlement Agreement.

9.     The Parties and their counsel may execute this Settlement Agreement in counterparts and this Settlement Agreement may be executed by electronic signature. Execution in counterparts shall have the same force and effect as if all signatories had signed the same document.

10.     The Court shall retain jurisdiction to interpret, effectuate, enforce, and implement this Settlement Agreement, and all Parties submit to the jurisdiction of the Court only for purposes of implementing and enforcing the Settlement Agreement.  Except as stated above regarding claim disputes, the Court shall have exclusive jurisdiction to resolve any disputes involving this Settlement Agreement.

11.     Each individual signing this Settlement Agreement represents and warrants that he or she has the authority to sign on behalf of the person or entity for which that individual signs.

[The remainder of this page is intentionally left blank]

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

AGREED TO AND ACCEPTED:

Dated: _____

*Steven Pryor*
Steven Pryor (Oct 31, 2023 12:29 MDT)

**Steven Pryor,** *Individually and on Behalf of the Settlement Class*

Dated: _____

*Shane Scheib*
Shane Scheib (Oct 31, 2023 15:59 CDT)

**Shane Scheib,** *Individually and on Behalf of the Settlement Class*

Dated: _10/31/2023_____

*ID SXdLzoPxJxSwBbRbauJknZrn*

**Sabrina Singleton,** *Individually and on Behalf of the Settlement Class*

Dated: _10/31/2023_____

DocuSigned by:

65C7FA7249904E8...

**Silvia Cortez,** *Individually and on Behalf of the Settlement Class*

Dated: _10/31/2023_____

DocuSigned by:
*Brian O'Connor*
20E0348309DE4A9...

**Brian O'Connor,** *Individually and on Behalf of the Settlement Class*

Dated: ___10 / 27 / 2023_____

_____

**Kelly Rogers,** *Individually and on Behalf of the Settlement Class*

Dated: ___11/01/23_____

_____

**M. Anderson Berry,** *Counsel for Named Plaintiffs*

Dated: _____

By: _____

**Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions**

Dated: ___11/1/23_____

_____

**Aravind Swaminathan,** *Counsel for Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solution*

## EXHIBIT A

**Sender Email:** [Settlement Administrator Email Address]

**Sender Name:** Settlement Administrator

**Subject Line:** Notice of Class Action Settlement – In re: Blackhawk Network Data Breach Litigation

Notice ID:   [Notice ID number]
Confirmation Code:   [Confirmation code number]

## NOTICE OF CLASS ACTION SETTLEMENT

You may be eligible for cash payment from a class action settlement involving Blackhawk Network, Inc. but you need to act.

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

**A court authorized this Notice**.

This is not spam, an advertisement, or a lawyer solicitation.

A settlement has been reached in a class action lawsuit against Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk") that alleges that Blackhawk was negligent and breached contractual and statutory duties in connection with a Data Security Incident on MyPrepaidCenter.com that Blackhawk disclosed in October 2022. Blackhawk denies all of the claims and says it did not do anything wrong.

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**ARE YOU INCLUDED?** Yes, Blackhawk's records show that you are an individual whose information was accessed and that you were sent a notification of the Data Security Incident on or about October 31, 2022. Therefore, you are included in this Settlement as a "Settlement Class member."

**WHAT ARE THE SETTLEMENT BENEFITS?** Blackhawk has agreed to establish a Settlement Fund of $985,000. Settlement Class Members who submit a valid claim will be reimbursed for any valid Out-of-Pocket losses fairly traceable to the Data Security Incident up to $5,000 and will receive a *pro-rata* distribution. Additionally, California Settlement Subclass Members who submit a valid claim will receive $200 in compensation for their statutory claims available under California law. All attorneys' fees and costs will also be paid from the Settlement Fund.

**HOW CAN I FILE A CLAIM**?  The only way to file a claim is by filling out a Claim Form available if you:

- Visit the settlement website at www.XXXXXXXXX.com or
- Call 1-XXX-XXX-XXXX.

All claims must be filed *before* **Month Day, 2024**.

**WHAT ARE MY OTHER OPTIONS?** If you do nothing, you will remain in the Class, you will not be eligible for benefits, and you will be bound by the decisions of the Court and give up your rights to sue Blackhawk for the claims resolved by this Settlement. If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month Day, 2023**. If you stay in the Settlement, you may object to it by **Month Day, 2023**. A more detailed notice is available to explain how to exclude yourself or object. Please visit the settlement website below or call the phone number below for a copy of the more detailed notice.

**WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** On **Month Day, 2024**, the Court will hold a Final Approval Hearing to determine whether to approve the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses of [$$$] and a service award of [$$$] for each Plaintiff. The Motion for attorneys' fees will be posted on the settlement website after it is filed. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you do not have to.

For more information, call or visit the website below.

| www.XXXXXXXXX.com | 1-XXX-XXX-XXXX |
|---|---|

*Unsubscribe*

**You may be eligible for cash payment from a class action settlement involving Blackhawk Network, Inc. but you need to act.**

Si desea recibir esta notificación en español, llámenos o visite nuestra página web.

**A court authorized this Notice.**

This is not spam, an advertisement, or a lawyer solicitation.

PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

Blackhawk Data Breach Settlement
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

«ScanString»

Postal Service: Please do not mark barcode

Notice ID: «Notice ID»
Confirmation Code: «Confirmation Code»
«FirstName» «LastName»
«Address1»
«Address2»
«City», «StateCd» «Zip»
«CountryCd»

that alleges that Blackhawk was negligent and breached contractual and statutory duties in connection with a Data Security Incident on MyPrepaidCenter.com that Blackhawk disclosed in October 2022. Blackhawk denies all of the claims and says it did not do anything wrong.

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, [insert appropriate Court location here], between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**ARE YOU INCLUDED?** Yes, Blackhawk's records show that you are an individual whose information was accessed and that you were sent a notification of the Data Security Incident on or about October 31, 2022. Therefore, you are included in this Settlement as a "Settlement Class member."

**WHAT ARE THE SETTLEMENT BENEFITS?** Blackhawk has agreed to establish a Settlement Fund of $985,000. Settlement Class Members who submit a valid claim will be reimbursed for any valid Out-of-Pocket losses fairly traceable to the Data Security Incident up to $5,000 and will receive a *pro-rata* distribution. Additionally, California Settlement Subclass Members who submit a valid claim will receive $200 in compensation for their statutory claims available under California law. All attorneys' fees and costs will also be paid from the Settlement Fund.

**HOW CAN I FILE A CLAIM?**  The only way to file a claim is by filling out a Claim Form available if you:  Visit the settlement website at www.XXXXXXXXX.com or Call 1-XXX-XXX-XXXX.  All claims must be filed *before* **Month Day, 2024**.

**WHAT ARE MY OTHER OPTIONS?** If you do nothing, you will remain in the Class, you will not be eligible for benefits, and you will be bound by the decisions of the Court and give up your rights to sue Blackhawk for the claims resolved by this Settlement. If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month Day, 2023**. If you stay in the Settlement, you may object to it by **Month Day, 2023**. A more detailed notice is available to explain how to exclude yourself or object. Please visit the settlement website below or call  the phone number below for a copy of the more detailed notice.

**WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?** On **Month Day, 2024**, the Court will hold a Final Approval Hearing to determine whether to approve the Settlement, Class Counsel's request for attorneys' fees, costs, and expenses of [$$$] and a service award of [$$$] for each Plaintiff. The Motion for attorneys' fees will be posted on the settlement website after it is filed. You or your own lawyer may ask to appear and speak at the hearing at your own cost, but you do not have to.

**For more information, call 1-XXX-XXX-XXXX or visit www.XXXXXXXXX.com.**

## EXHIBIT B

### Long Form Notice

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

***In re Blackhawk Network Data Breach Litigation*, Case No. 22-cv-07084 (N.D. Cal.)**

> **You may be eligible for a cash payment from a class action settlement involving Blackhawk Network, Inc., but you need to act.**

This is a court-authorized Notice of a proposed settlement in a class action lawsuit, *In re Blackhawk Network Data Breach Litigation*, Case No. 22-cv-07084, currently pending in the District Court for the Northern District of California.  The proposed settlement would resolve a lawsuit that alleges that Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk") was negligent and breached contractual and statutory duties in connection with a Data Security Incident on MyPrepaidCenter.com that Blackhawk disclosed in October 2022. Blackhawk contests these claims and denies that it did anything wrong. This Notice explains the nature of the class action lawsuit, the terms of the settlement, and your legal rights and obligations.

You have legal rights and options that you may act on before the Court decides whether to approve the proposed settlement. Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. To read the precise terms and conditions of the settlement, you can access a copy of the Settlement Agreement here [**link to document on website**]. You may also contact the Settlement Administrator at 1-XXX-XXX-XXXX.

| Summary of Your Legal Rights and Options in This Settlement | | Deadline |
|---|---|---|
| **Submit a Claim** | The only way to be eligible to receive a Claimant Award from this Settlement is by submitting a timely and valid Claim Form. The Claim Form must be submitted no later than _____, **2023**. | _____, **2023** |
| **Opt Out of the Settlement** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | _____, **2023** |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

| **Object to the Settlement and/or Attend a Hearing** | If you do not opt out of the Settlement, you may object to it by writing to the Court explaining why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for a Claimant Award. | **_____, 2023** |
|---|---|---|
| **Do Nothing** | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not receive a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

## What Is This Lawsuit About?

In a class action, one or more people, called class representatives, sue on behalf of people who have similar claims. All of the people with similar claims are class members. One court resolves the issues for all class members, except those who exclude themselves from the class.

This lawsuit began when Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Silvia Cortez, Brian O'Connor, and Kelly Rogers filed a consolidated putative class action complaint against Blackhawk.  In the lawsuit, Plaintiffs allege that Blackhawk was negligent and violated contractual and statutory damages when a third party obtained unauthorized access to payment card information about certain prepaid cards being managed by users through MyPrepaidCenter.com. Blackhawk denies any liability or wrongdoing of any kind associated with the claims in this lawsuit.

This is just a summary of the allegations. The complaint in the lawsuit is posted at www.XXXXXXXXXX.com and contains all of the allegations.

## Why Is There a Settlement?

To resolve this matter without the expense, delay, and uncertainties of litigation, the parties reached a settlement.  The proposed settlement would require Blackhawk to pay money to the Settlement Class, and pay settlement administration costs, attorneys' fees and costs of Class Counsel, and a Service Payment to the Class Representatives, as may be approved by the Court. The settlement is not an admission of wrongdoing by Blackhawk and does not imply that there has been, or would be, any finding that Blackhawk violated the law.

## Am I a Class Member?

You are a member of the Settlement Class if you are a resident of the United States whose information was accessed in the Data Security Incident and you received notice of the Data Security Incident from Blackhawk.

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## Who Represents Me?

The Court has appointed a team of lawyers as Class Counsel.

| M. Anderson Berry Gregory Haroutunian | Terence R. Coates Justin C. Walker Dylan J. Gould | Marcus J. Bradley Kiley L. Grombacher Lirit A. King, Esq. | Scott Edward Cole Laura Van Note |
|---|---|---|---|
| CLAYEO C. ARNOLD, A PROFESSIONAL CORPORATION | MARKOVITS, STOCK & DEMARCO, LLC | BRADLEY/ GROMBACHER LLP | COLE & VAN NOTE |
| 865 Howe Avenue Sacramento, CA 95825 | 119 East Court Street, Suite 530 Cincinnati, OH 45202 | 31365 Oak Crest Drive, Suite 240 Westlake Village, CA 91361 | 555 12th Street, Suite 2100 Oakland, California 94607 |

Class Counsel will petition to be paid legal fees and to be reimbursed for their reasonable expenses from the Settlement Fund. You do not need to hire your own lawyer, but you may choose to do so at your own expense.

## What Are the Settlement Benefits?

Blackhawk has agreed to establish a Settlement Fund, by depositing with the Settlement Administrator US $985,000.00 in cash.

The Settlement Fund will be used to pay attorneys' fees and costs, a Service Payment for the Class Representative and Settlement administration costs. After deducting amounts for attorneys' fees and costs, a Service Payment for the Class Representative, and Settlement administration costs, the remaining amount ("**Net Settlement Amount**") will be used to pay timely valid claims.

A Settlement Class Member who timely submits a valid and approved Claim Form shall be entitled to a Claimant Award: [DISTRIBUTION PLAN]

After payment of the above awards, if any money remains from the Net Settlement Amount, that money will be distributed pro rata among all Settlement Class Members who timely submitted a valid and approved Claim Form, or if too little money remains to make such a payment, the money will be donated to an appropriate charity.

Blackhawk has also agreed to certain enhancements to its data security.

## How Do I Get a Payment?

You must submit a completed Claim Form no later than **[Day/Month, 2024]**. You may submit a Claim Form online at www.XXXXXXXXXX.com.

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## How Do I Exclude Myself from the Settlement?

If you want to exclude yourself from the Settlement Class, sometimes referred to as "opting out," you will not be eligible to recover any benefits as a result of this settlement and you will not receive a payment or have any rights under the Settlement Agreement. However, you would keep the right to sue Blackhawk at your own expense about the legal issues raised in this lawsuit. You may exclude yourself from the settlement by mailing a written notice to the Settlement Administrator, postmarked on or before **[Day/Month, 2023]**. Your exclusion request letter must:

- Be in writing;
- State your current address;
- Contain the statement "I request that I be excluded from the Settlement Class in the case of *In re Blackhawk Network Data Breach Litigation*.";
- Be signed by you; and
- Be mailed to the Settlement Administrator, **[Street Address]**, **[City, State, Zip]**, postmarked on or before **[Day/Month, 2023]**.

## How Do I Object to the Settlement?

You can ask the Court to deny approval by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

If you are a member of the Settlement Class and you do not exclude yourself from the Settlement, you can object to the Settlement. To do so, you must file your written objection with the Court no later than **[Day/Month, 2023]**, and mail a copy to Class Counsel and Blackhawk's Counsel at the addresses listed below. Your written objection may include any supporting documentation you wish the Court to consider.

If your objection is submitted and overruled by the Court at the Final Approval hearing, you will remain fully bound by the terms of the Settlement Agreement and the Final Approval Order.

Mailing addresses for Class Counsel and Blackhawk's Counsel are as follows:

| CLASS COUNSEL: | BLACKHAWK'S COUNSEL: |
|---|---|
| M. Anderson Berry | Aravind Swaminathan |
| Gregory Haroutunian | Caroline Simons |
| CLAYEO C. ARNOLD, | Rebecca Harlow |
| A PROFESSIONAL CORPORATION | ORRICK HERRINGTON & SUTCLIFFE LLP |
| 865 Howe Avenue | 401 Union Street - Suite 3300 |
| Sacramento, CA 95825 | Seattle, WA 98101 |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## What Is the Difference Between Objecting and Asking to be Excluded?

Objecting means telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## What Am I Agreeing to by Remaining in the Settlement Class?

Unless you exclude yourself, you will be part of the Settlement Class and you will be bound by the release of claims in the Settlement. This means that if the Settlement is approved, you cannot sue, continue to sue, or be part of any lawsuit against Blackhawk or the other Released Parties asserting a "Released Claim," as defined below. It also means that the Court's Order approving the settlement and the judgment in this case will apply to you and legally bind you.

"**Released Claims**" means any and all actual, potential, filed, unfiled, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and/or obligations, whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on federal, state, local, statutory or common law or any other law, against the Released Parties, or any of them, arising out of, or relating to, actual or alleged facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act in connection with the data security incident, and including all claims that were brought or could have been brought in the Action, belonging to any and all Settlement Class members, including but not limited to any state law or common law claims that they may have or had, such as under California's Customer Records Act, California Civil Code section 1798.80, et seq. and/or California's Consumer Privacy Act, California Civil Code section 1798.100, et seq.  Each party expressly waives all rights under California Civil Code section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

"**Released Parties**" means Blackhawk and its past, present, and future, direct and indirect heirs, assigns, associates, corporations, investors, owners, parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, agents, employees, attorneys, insurers, reinsurers, benefit plans, predecessors, successors, managers, administrators, executors and trustees.

## When Will the Court Decide Whether to Approve the Settlement?

The Court will hold a Final Approval Hearing on **[Day/Month, 2024] at XX:XX A.M./P.M.** at _____. At that hearing, the Court will determine the overall fairness of the settlement, hear objections, and decide whether to approve the requested attorneys' fees and expenses, Service Payment for the Class Representatives, and settlement administration costs. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXXXXXXX.com and the Court's docket for updates.

## How Do I Get More Information?

For more information, go to www.XXXXXXXXX.com, or call the Settlement Administrator at 1-XXX-XXX-XXXX. You may also write to the Settlement Administrator via mail to [address] or via email  [email address].

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

## <u>EXHIBIT C</u>

<u>ONLINE CLAIM FORM</u>

*In re Blackhawk Network Data Breach Litigation*, Case No. 22-cv-07084 (N.D. Cal.)

**<u>Important</u>**: Your Claim Form must be submitted online by [**Month, Day**] **2023** in order to be timely and valid. You may submit a Claim Form by completing the form below.

Your failure to submit a timely Claim Form will result in you forfeiting any payment and benefits for which you may be eligible under the Settlement.

**To begin your Claim Form, please enter your Notice ID and Confirmation Number below.** Your Notice ID and Confirmation Number can be located on the Notice that was emailed or mailed to you. If you did not receive a Notice but believe you are a Class Member, or have misplaced your notice, you may email [email address] for additional assistance.

Notice ID: _____

Confirmation Code: _____

[NEXT button]

**<u>Claim Form Page</u>**:

This claim form should be filled out online if you are an individual who received notice of a Data Security Incident that Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk") disclosed in October 2022 pertaining to unauthorized access to payment card information about certain prepaid cards being managed by users through MyPrepaidCenter.com. You may receive money if you fill out this claim form, if the Settlement is approved, and if you are found to be eligible for a payment.

The <u>Settlement Notice</u> [**link to document on website**] describes your legal rights and options.

If you wish to submit a claim for a Settlement payment, you will need to provide the information requested below.

Please complete the claim form for each category of benefits that you would like to claim. Categories include: (1) Out-of-Pocket Expense Reimbursement; (2) Cash Payment under the California Consumer Privacy Act (California residents only), and (3) Pro Rata Cash Payment. If you are claiming out-of-pocket expenses, please be sure to fill in the total amount you are claiming and attach the required documentation.

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE REQUIRED INFORMATION BELOW AND YOU MUST ELECTRONICALLY SIGN THIS CLAIM FORM.

First Name_____(*required*) Middle Name_____(*not required*) Last Name_____(*required*)

Mailing Address_____(*required*) City_____(*required*) State_____(*required*) Zip Code_____(*required*) Country_____(*required, default to United States*)

Telephone Number_____(*required, must be minimum of 10 digits*)

Email Address_____(*required, must be valid email address format*)

---

## Out-of-Pocket Loss and Expense Reimbursement

Allowable out-of-pocket expenses are detailed in the Settlement Agreement, available at www.XXXXXXXXX.com. To receive up to **$5,000.00** in reimbursement of out-of-pocket losses caused by, or expenses incurred as a result of, the Data Security Incident, please provide the following information:

☐  Check this box if you are submitting a claim for reimbursement of out-of-pocket losses.

Amount Requested**:**  $_____**.**____

Please briefly describe the out-of-pocket expenses and how they relate to the Data Security Incident:

| Description of Expense | Amount |
|---|---|
| *Example: Receipt for credit repair services* | *$100* |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Documentary proof **MUST** be submitted to support your exact claim amount.  "Self-prepared" documents are, by themselves, insufficient.

[DOCUMENTATION UPLOAD FUNCTIONALITY]

---

### Pro Rata Cash Payment

All Class Members are eligible to claim a Pro Rata payment by checking the box below. The specific amount of this payment will be based on the number of claims received.

☐ I would like to claim a Pro Rata payment.

---

### Cash Payment Under the California Consumer Privacy Act (CCPA)

**CALIFORNIA RESIDENTS ONLY.** If you were a resident of California between September 4, 2022, and September 11, 2022, you may submit a claim for a payment of up to $200 under the CCPA by checking the box below. The specific amount of this payment will be based on the number of claims received.

☐ I was a California resident between September 4, 2022, and September 11, 2022, and would like to claim a payment under the CCPA of up to $200.

---

### Payment Selection

Select from one of the following options (graphics to be added):

- PayPal
- Venmo
- Direct Deposit
- Zelle

Check

Signature_____(*required*)

Date: (*auto-populate*)

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
[**DEADLINE**]

</td><td>

*In re Blackhawk Network Data Breach Litigation*
Case No. 22-cv-07084 (N.D. Cal.)

# CLAIM FORM

</td><td>

**CRE**

</td></tr>
</table>

| **GENERAL INSTRUCTIONS** |
| --- |

This claim form should be filled out if you are an individual who received notice of a Data Security Incident that Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions ("Blackhawk") disclosed in October 2022 pertaining to unauthorized access to payment card information about certain prepaid cards being managed by users through MyPrepaidCenter.com.  You may receive money if you fill out this claim form, if the Settlement is approved, and if you are found to be eligible for a payment.

The Settlement Notice [link to document on website] describes your legal rights and options.

If you wish to submit a claim for a Settlement payment, you need to provide the information requested below.

<u>**SUBMIT YOUR CLAIM FORM BY _____, 2023**</u>

Online: _____

Mail: Blackhawk Data Breach Settlement,
c/o Settlement Administrator
1650 Arch Street, Suite 2210
Philadelphia, PA 19103

**QUESTIONS? VISIT WWW.CREDATASETTLEMENT.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

| Your claim must be submitted online or **postmarked by:** [DEADLINE] | *In re Blackhawk Network Data Breach Litigation*<br>Case No. 22-cv-07084 (N.D. Cal.)<br><br>**CLAIM FORM** | BLA |
| --- | --- | --- |

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this Claim Form.

**First Name**

**Last Name**

**Street Address**

**City**

**State**

**Zip Code**

**Email Address**

**Telephone Number**

**Notice ID Number**
*(provided on the Notice you received by email or mail)*

## II. OUT-OF-POCKET LOSSES AND EXPENSE REIMBURSEMENT

☐ Check this box if you are submitting a claim for reimbursement of out-of-pocket losses.

Allowable out-of-pocket expenses are detailed in the Settlement Agreement, available at www.XXXXXXXXX.com. To receive up to **$5,000.00** in reimbursement of out-of-pocket losses caused by, or expenses incurred as a result of, the Data Security Incident, please provide the following information:

<u>Amount Requested</u>**:** $_____.____

Please briefly describe the out-of-pocket expenses and how they relate to the Data Security Incident:

| *Description of Expense* | *Amount* |
| --- | --- |
| *Example: Receipt for credit repair services* | *$100* |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**QUESTIONS? VISIT** _____ **OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:** [**DEADLINE**]

</td><td>

*In re Blackhawk Network Data Breach Litigation*
Case No. 22-cv-07084 (N.D. Cal.)

# CLAIM FORM

</td><td>

**BLA**

</td></tr>
</table>

Documentary proof **<u>MUST</u>** be submitted to support your exact claim amount.  "Self-prepared" documents are, by themselves, insufficient.

| **III. PRO RATA CASH PAYMENT** |
| --- |

All Class Members are eligible to claim a Pro Rata payment by checking the box below. The specific amount of this payment will be based on the number of claims received.

☐  I would like to claim a Pro Rata payment.

| **IV.  CASH PAYMENT UNDER THE CALIFORNIA CONSUMER PRIVACY ACT (CCPA)** |
| --- |

**<u>CALIFORNIA RESIDENTS ONLY.</u>** If you were a resident of California between September 4, 2022, and September 11, 2022, you may submit a claim for a payment of up to $200 under the CCPA by checking the box below. The specific amount of this payment will be based on the number of claims received.

☐  I was a California resident between September 4, 2022, and September 11, 2022, and would like to claim a payment under the CCPA of up to $200.

| **V.  PAYMENT SELECTION** |
| --- |

Please select from **<u>one</u>** of the following payment options:

☐  **PayPal** - Enter your PayPal email address: _____

☐  **Venmo -** Enter the mobile number associated with your Venmo account: __ __ __-__ __ __-__ __ __ __

☐  **Zelle -** Enter the mobile number or email address associated with your Zelle account:

Mobile Number: __ __ __-__ __ __-__ __ __ __   or Email Address: _____

☐  **Physical Check -** Payment will be mailed to the address provided in Section I above.

| **VI.  SIGNATURE** |
| --- |


_____          _____          _____
            Signature                                    Printed Name                              Date


**QUESTIONS? VISIT** _____ **OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

**EXHIBIT B**



555 12th Street, Suite 2100
Oakland, California 94607
Tel: (510) 891-9800
www.colevannote.com

# Firm Resume

Cole & Van Note ("CVN") is a boutique class action firm known for aggressive representation and impressive results in the areas of consumer fraud, data breach, environmental and employment litigation. Founded in 1992, CVN has been devoted primarily to such matters, having litigated hundreds of class actions against businesses of all types and in every industry imaginable. The members of CVN have vast experience prosecuting class/complex actions, both in a sole counsel capacity and in leadership positions, oftentimes among many firms, in California and nationwide litigation. They have published numerous scholarly articles dealing with various substantive issues as well as class action litigation/procedure, speak regularly at public events and/or to legal audiences, and have served as consulting experts in class action litigation. The firm has helped recover billions of dollars for tens of millions of workers and consumers, been involved in record-setting settlements and judgments and achieved the correction of numerous unlawful practices.

## SHAREHOLDERS/ASSOCIATES:

<u>Scott Edward Cole</u>, founder/shareholder, graduated from the University of San Francisco School of Law, practices in all California courts and has extensive leadership experience prosecuting cases in federal and state courts nationwide. Mr. Cole has authored numerous scholarly publications and serves as highly regarded guest lecturer on issues surrounding class action procedures and negotiation theory. Mr. Cole has been responsible for shaping the law in trial and appellate courts for decades, authored the book "Fallout" and is available to serve as a mediator of class action disputes.

Credentials: Admitted, California State Bar, December 1992; University of San Francisco School of Law, J.D., 1992; President, University of San Francisco Labor & Employment Law Society; San Francisco State University, B.A., Speech Communications (Individual Major in Rhetoric), 1989, Minor Study in Business Administration, 1989; Admitted, United States District Court for all California Districts and in numerous additional states; Admitted, United States Court of Appeals (9th Circuit). Additionally, Mr. Cole is a former National Association of Securities Dealers Registered Representative (Series 7) and is/has been a member of the Association of Trial Lawyers of America, California Employment Lawyers Association, American Bar Association,

Alameda County Bar Association (e.g., Vice Chair of ACBA's Labor & Employment Law Section Executive Committee), National Employment Lawyers Association and a U.S. Delegate to the InterAmerican Meeting of Labor and Trade Union Lawyers, Havana, Cuba (March 2012). Mr. Cole is also the author of "Fallout," a story based upon his experiences litigating after the 1994 airborne release of toxic chemicals by the Unocal Corporation (also used by various law schools in the curriculum for first year law students).

Laura Van Note, shareholder, is an aggressive and skilled advocate and leads the firm's hiring and career outreach efforts. A 2013 graduate of the University of Missouri, Kansas City School of Law, her practice has focused primarily on class action representation of data breach victims and in employment/civil rights litigation. With a near-perfect track record for results, Ms. Van Note appears in all California courts, is also licensed in Missouri and Kansas and maintains various professional affiliations.

Credentials: Member, State Bar of California (Admitted 2016), State Bar of Missouri (Admitted 2013), State Bar of Kansas (Admitted 2015); Admitted, Federal District Courts in California, Missouri, and Kansas. University of Missouri, Kansas City School of Law (2013, Order of the Barrister, Dean's List), Captain of the National Trial Advocacy Team, President of the American Constitutional Society for Law and Policy, Teaching Assistant to the Directory of Advocacy; Graduate, University of Missouri, Kansas City (Bachelor of Arts in History, Minor in French);

Elizabeth Ruth Klos, associate attorney, graduated from the University of Southern California Gould School of Law with a merit scholarship in 2022. During law school, Ms. Klos worked as a research assistant for the USC Law Library, while also achieving honors grades in courses such as Contracts, Labor Law, Torts, Mediation and Constitutional Law. Ms. Klos developed her passion for litigation through diverse experiences at the Hillsborough County Public Defender's office, a boutique family law practice in Los Angeles, and clerking under Judge Valerie Salkin at the Los Angeles Superior Court. At CVN, Ms. Klos utilizes her litigation experience in the areas of class action, consumer and data breach law.

Credentials: Admitted, California State Bar, December 2022; University of Southern California Gould School of Law, J.D., 2022; New College of Florida, B.A. in Liberal Arts (dual Area of Concentration in Political Science and History), 2016.

Margo Amelia Crawford, associate attorney, graduated from McGill University, Faculty of Law in Montréal, Canada with a joint J.D. and B.C.L. in 2020. Margo served as Vice President of the McGill Business Law Association, and as Editor and Vice President of Contours, a feminist law journal. At McGill, Margo focused her study on privacy and intellectual property. During law school Margo worked as a Pro Bono student for the Canadian Civil Liberties Association and a legal intern for the Samuelson-Glushko Canadian Internet Policy and Public Interest Clinic. Margo undertook independent research projects in comparative US-Canada trademark law, and Indigenous intellectual property rights. In 2022, Margo received an LL.M. from UC Law SF (formerly UC Hastings), where her studies focused on US trademark law. As an Associate at CVN, Margo uses

her unique experiences and educational background to bring new and analytical perspectives to consumer and data breach litigation.

Credentials: Admitted, California State Bar, May 2023; McGill University Faculty of Law, J.D. and B.C.L., 2020; The University of California College of the Law, San Francisco (formerly UC Hastings), LL.M., 2022; Brown University, A.B. (English Literature), 2016.

## CVN SCHOLARLY PUBLICATIONS (*Partial List Only*):

Scott Edward Cole & Matthew Roland Bainer, *The Quest for Class Certification*, Employment Law Strategist (Sept. & Oct. 2003).

Scott Edward Cole & Matthew Roland Bainer, *To Be or Not to Be a Penalty: Defining the Recovery Under California's Meal and Rest Period Provisions*, Golden Gate U. L. Rev. (Spring 2005).

Scott Edward Cole & Matthew Roland Bainer, *To Certify or Not to Certify: A Circuit-By-Circuit Primer of the Varying Standards for Class Certification in Actions under the Federal Labors Standards Act*, B.U. Pub. Int. L.J. (Spring 2004).

Scott Edward Cole, *Kullar v. Footlocker Retail, Inc.: A New Standard for Class Action Settlement Approval*, CELA Bulletin (April 2009).

Matthew Roland Bainer, *Ninth Circuit Provides Much Needed Guidance on Evidentiary Burdens in Overtime Misclassification Litigation,* CELA Bulletin (May 2009).

Kevin Robert Allen, *Putting the "Rest" Back in Rest Break,* Alameda County Bar Association - Labor & Employment Section News (Autumn 2009).
Michael Scott Lubofsky, *Barristers to Blogs: Softening Ethical Restrictions in the Digital Age,* Los Angeles Daily Journal (June 14, 2010).

## REPRESENTATIVE CLASS ACTION AND COMPLEX CASES (*Partial List Only*):

Our firm has represented, directly or indirectly, millions of individuals in thousands of legal disputes, including several hundred class actions and/or complex litigation cases. For three decades, the firm has amassed extensive experience litigating data breach, wage and hour, environmental, and other personal injury and commercial cases. Today, the firm almost exclusively prosecutes multi-state data breach class actions. Drawing from various areas of law, examples of the range of our practice include:

Augustus/Davis v. ABM Security Services, Inc (aka American Comm. Security Service, Inc. Superior Court of California, County of Los Angeles, Case No. BC336416
Our firm filed this action for violations of California law for denial of meal and rest periods toward security guards. The action achieved class certification status in 2009. Following summary

judgment proceedings, a judgment of over $89 million was entered against the defendant(s). The judgment hinged on the issue of whether "on-duty" rest breaks were legally sufficient. After the Court of Appeal ruled against Plaintiffs on the issue, the case went to the California Supreme Court where Plaintiffs prevailed and, in so doing, created a new legal standard clarifying that "on-duty" rest breaks are invalid. After 12 years of litigation, a judgment and substantial appellate work, this matter resolved for $110 million.

Bower, et al. v. Steel River Systems LLC
Illinois Fourteenth Judicial Circuit Court (Whiteside County), Case No. 2023-LA-000006
This action arose out of Steel River Systems' 2022 data breach which affected numerous consumers and/or employees. This action has settled.

Bulow, et al. v. Wells Fargo Investments, LLC
United States District Court, Northern District of California, Case No. 3:06-CV-7924
This matter was filed as a nation-wide class action against Wells Fargo Investments, on behalf of its Financial Consultants to recover overtime pay, compensation for denied meal and rest periods (California only) and reimbursement for business related service and supply expenses (California only). This matter settled for $6.9 million.

Cano, et al. v. United Parcel Service, Inc.
Superior Court of California, County of Alameda, Case No. RG03089266
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt Operations Management Specialists, Operational Excellence Specialists and/or Industrial Engineering Specialist at this company's California facilities. This action settled in 2004 for $4.5 million.

Chaidez, et al. v. Odwalla, Inc.
Superior Court of California, County of San Mateo, Case No. CIV430598
This wage and hour complex litigation matter involved the alleged misclassification of overtime non-exempt California Route Sales Representatives. CVN served as primary counsel for this proposed class of employees. This action settled for $2.2 million.

CKE Overtime Cases
Superior Court of California, County of Los Angeles, Case No. BC283274 (JCCP No. 4274)
This class action was brought against fast food chain Carl's Jr. for violations of California's overtime laws on behalf of the company's California restaurant chain Managers. The coordinated litigation settled for up to $9.0 million in 2004.

Davis, et al. v. Universal Protection Security Systems, Inc., et al.
Superior Court of California, County of San Francisco, Case No. CGC-09-495528
Our firm filed a claim in 2009 against Universal Protection Security Systems, Inc. for violations of California law for denial of meal and rest periods toward security guards. This case settled in 2013 for $4 million.

<u>Despres (Cornn), et al. v. United Parcel Service, Inc.</u>
United States District Court, Northern District of California, Case No. 3:03-CV-02001
This wage and hour class action litigation was brought to remedy violations of meal and rest period regulations on behalf of the company's California ground delivery drivers. CVN served as co-counsel for the certified class of drivers. This action settled for $87 million, an unprecedented settlement amount for such claims.

<u>Escow-Fulton, et al. v. Sports and Fitness Clubs of America dba 24 Hour Fitness USA, Inc.</u>
Superior Court of California, County of San Diego County, Case Nos. GIC881669/GIC873193)
Our firm filed this class action on behalf of the company's California "Group X" Instructors to recover regular and overtime pay, related penalties and un-reimbursed expenses. The action achieved class certification status in 2009. In 2011, the parties agreed to settle the expense reimbursement claims for $10 million. The parties then filed cross-motions for summary adjudication and on August 2, 2011, the court issued an Order finding 24 Hour Fitness' session rate compensation scheme to be an invalid piece rate. The parties then agreed to settle the unpaid wage claims for another $9 million, and the summary adjudication order was vacated pursuant to settlement.

<u>Fedorys, et al. v. Ethos Group, Inc.</u>
United States District Court, Northern District of Texas, Case No. 3:22-cv-02573-M
This action arose out of Ethos Group's 2022 data breach which affected at least 267,000 consumers. Cole & Van Note was appointed co-lead class counsel.

<u>Hakeem v. Universal Protection Service, LP</u>
Superior Court of California, County of Sacramento, Case Nos. 34-2020-00286228-CU-OE-GDS; 34-201900270901-CU-OE-GDS
After an exhaustive multi-year process including venue transfer, consolidation, migration of litigants from one case to the other, multiple appeals and hard-fought litigation, these security guards class actions achieved a consolidated judgment for $10 million.

<u>Henderson, et al. v. Reventics, LLC</u>
United States District Court, District of Colorado, Case No. 1:23-cv-00586-MEH
This action arose out of Reventics' massive 2022 data breach which affected, potentially, millions of patients, consumers and/or employees. Cole & Van Note was appointed co-lead class counsel.

<u>Hinds v. Community Medical Centers</u>
United States District Court, Eastern District of California, Case No. 2:22-cv-01207-JAM-AC
This action arose out of Community Medical Centers' massive data breach in 2021 which affected countless patients, consumers and/or employees. After reviewing competing requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead counsel position.

In Re Walgreen Co. Wage and Hour Litigation
United States District Court, Central District of California, Case No. 2:11-CV-07664
Our firm served as court-appointed Lead Counsel after an adversarial hearing process in this consolidated action of nine lawsuits bringing a variety of wage and hour claims on behalf of California workers. The case settled for $23 million.

In Re: Apple Inc. Device Performance Litigation
United States District Court, Northern District of California, Case No. 5:18-md-02827-EJD
Following Apple's December 2017 admission that it throttled back performance of its iPhones (versions 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus) to mask the problem of defective batteries and unexpected iPhone shut-downs, Cole & Van Note filed a class action to recover damages for consumers nationwide. This action settled for $500 million. Cole & Van Note served on the Plaintiffs' Steering Committee.

In Re: Rackspace Security Litigation
United States District Court, Western District of Texas, Case No. SA-22-cv-01296
This action arises out of Rackspace Technology's 2022 massive ransomware event which shut down functionality for tens of thousands of individuals and businesses across the Unites States and overseas. Cole & Van Note serves as court-appointed lead counsel for the nationwide class and representative plaintiffs from over 30 states.

In Re Tosco SFR Litigation
Superior Court of California, County of Contra Costa, Case No. C97-01637
During incidents on April 16, 1997, and January 7, 1998, the Tosco Refinery in Rodeo, California released airborne toxic chemicals. These harmful substances traveled into neighboring communities, seriously affecting the health of citizens and local workers. CVN served as Lead Counsel in this complex litigation and represented thousands of members of the community in that role. CVN settled this matter for $2.5 million, the funds from which were disbursed to over 2,000 claimants who participated in the settlement.

In Re Unocal Refinery Litigation
Superior Court of California, County of Contra Costa, Case No. C94-04141
In response to Unocal's 16-day airborne release of chemicals over the County of Contra Costa in 1994, CVN filed a class action against the corporation on behalf of thousands of victims and thereafter served as one of a handful of firms (among dozens of law firms of record) on the Plaintiffs' Steering Committee. After hard-fought litigation, the matter eventually settled for $80 million. This case is the context for Mr. Cole's book "Fallout," published in 2018 (2605 Media LLC).

In Re Westley Tire Fire Litigation
Superior Court of California, County of Santa Clara, Case No. CV 801282
On September 22, 1999, lightning struck and ignited a pile of approximately 7 million illegally stored waste tires in Westley, California, a town about 70 miles east of San Francisco. Over

the subsequent five weeks, the fire spewed smoke and carcinogens over a large portion of the State of California. CVN served as the (sole) Lead and (shared) Liaison Counsel over a Plaintiffs' Steering/Management Committee in the consolidated actions against the owners and operators of this tire pile and related entities. These cases sought compensation for those individuals and businesses suffering personal and/or property damages as a result of these toxic substances and the fire's fall-out. In 2001, CVN reached a settlement with one defendant (CMS Generation Co.) for $9 million. In 2003, the Court granted final approval of the settlement. In 2005, two of the remaining defendants settled for roughly $1.4 million (over $10 million aggregate).

Kowarsky v. American Family Life Insurance Company
U.S.D.C. Western District of Wisconsin, Case No. 3:22-cv-00377
This case involves a data breach in which a flaw in the Defendant's website allowed cybercriminals to obtain driver's license numbers, at least some of which were subsequently used to fraudulently apply for government benefits.

Kullar v. Foot Locker, Inc.
Superior Court of California, County of San Francisco, Case No. CGC-05-447044
This action was brought on behalf of California employees allegedly forced to purchase shoes of a distinctive color or design as a term and condition of their employment and in violation of state law. After the Court approved a multi-million settlement, two separate appeals challenged the settlement, but the Court of Appeal affirmed the trial court's judgment. This case has now established in California what's known as the "*Kullar standard*" for court approval of class action settlements.

Lett v. TTEC
U.S.D.C. Northern District of California, Case No. 3:22-cv-00018
This action arose out of TTEC Service Corporation's massive data breach in 2021 which affected countless patients, consumers and employees. CVN helped negotiate a $2.5 million maximum settlement for the class of victims.

Mambuki, et al. v. Securitas Security Services USA, Inc.
Superior Court of California, County of Santa Clara, Case No. 1-05-CV-047499 (JCCP No. 4460) Our firm filed a claim against this defendant for violations of California law (for denial of meal and rest periods) on behalf of the company's California-based security guards. This coordinated proceeding settled in 2008 for $15 million.

Mendoza v. CaptureRx
United States District Court, Western District of Texas, Case No. 5:21-CV-00523-OLG
This class action against NEC Networks, LLC, d/b/a CaptureRx ("CaptureRx"), as well as Rite Aid and Community Health Centers of the Central Coast arising out of the massive data breach in 2021 which affected a minimum of 1.6 million people. The hacked information included sensitive personally identifiable information and personal health information. These consolidated cases settled in 2022 for a total value of at least $4.75 million.

O'Brien v. Edward D. Jones & Co., LP.
United States District Court, Northern District of Ohio, Case No. 1:08-CV-00529
We filed a nation-wide (and New York State) class action against this financial securities company on behalf of the company's financial services representatives to recover overtime pay and related penalties. CVN served on a Lead Counsel Committee in this action, which settled in 2007 for $19 million.

Onyeige, et al. v. Union Telecard Alliance, LLC
U.S.D.C. Northern District of California, Case No. 3:05-CV-03971; MDL No. 1550
Our firm filed an action against Union Telecard Alliance, LLC alleging negligent misrepresentation and deceptive advertising practices related to its marketing of pre- paid telephone calling cards. This action settled for $22 million.

John Prutsman, et al. v. Nonstop Administration and Insurance Services, Inc.
United States District Court, Northern District of California, Case No. 3:23-cv-01131-VC
This action arose out of Nonstop's massive 2022 data breach which affecting consumers, employees and health care affiliates. Cole & Van Note was appointed co-lead class counsel.

Ramirez, et al. v. The Coca Cola Company, et al.
Superior Court of California, County of San Bernardino, Case No. RCV 056388 (JCCP No. 4280)
This is one of two companion actions CVN prosecuted against this soft drink giant for violations of California's overtime laws. This action was brought on behalf of over 4,000 hourly workers at the company's bottling, distribution and sales centers who were allegedly forced to work "off-the-clock" for Coca Cola and/or whose time records were ordered modified by the company. This well-publicized action settled for $12 million and  on very favorable terms for the claimants. CVN filed the first action on these issues and ultimately worked with co-counsel for the proposed class of workers.

Riordan, et al. v. Western Digital Corp.
U.S.D.C. Northern District of California, Case No. 5:21-CV-06074
This action arose out of the well-publicized widespread criminal data deletion of consumer hard drives in 2021. According to the lawsuit, the company knew of vulnerabilities in, at least, six of its products for years which ultimately led to the erasure of data for countless purchasers of these products. CVN serves as sole counsel for the victims.

Roman, et al. v. HanesBrands, Inc.
United States District Court, Central District of California, Case No. 5:22-cv-01770
This case involves a data breach of HanesBrands' network system in which personal health information was accessed and/or reviewed by cybercriminals.

Thomas, et al. v. Cal. State Auto. Assoc., et al.
Superior Court of California, County of Alameda, Case No. CH217752
Our firm filed this class action litigation on behalf of all California claims adjusters working for CSAA after mid-January 1997. This lawsuit alleged that, during those years, CSAA mis- classified these workers as exempt "administrators" and refused to pay them for overtime hours worked. This lawsuit settled for $8 million. CVN commenced this action and served as co-counsel for the nearly 1,200 claims representatives.

Tierno v. Rite Aid Corporation
United States District Court, Northern District of California, Case No. 3:05-CV-02520
Our firm filed this action against Rite Aid Corporation on behalf of its salaried California Store Managers. It was alleged that defendant, purportedly the nation's third largest drug store chain, failed to pay overtime to those workers and denied them their meal and rest periods. In 2006, the federal court certified the class in this action, and approved a $6.9 million non-reversionary settlement in 2009.

Tsvetanova v. Regents of the University of California, d/b/a U.C. San Diego Health Superior Court of California, County of San Diego, Case No. 37-2021-00039888-CU-PO-CTL
This action arises out of U.C. San Diego Health's massive data breach between December 2020 and April 2021 which affected countless patients, consumers and employees. After reviewing numerous requests for leadership over these consolidated actions, Cole & Van Note was appointed by the court to a co-lead class counsel position.

Ward v. Anderson McFarland & Conners LLC
Superior Court of California, County of Los Angeles, Case No. 20CV00611
Our firm filed this case in connection with a data breach that affected the information the firm's clients, adversarial parties, etc. This action has settled.

Witriol, et al. v. LexisNexis., et al.
U.S.D.C., Southern District of California, Case No. 3:06-CV-02360
Our firm filed an action against this company for its unlawful disclosure of private credit, financial and/or other personal information. This action settled for up to $2.8 million.

Zucchero v. Heirloom Roses, Inc.
U.S.D.C. Northern District of California, Case No. 4:22-cv-00068
CVN filed this case in connection with a 2021 data breach that hacked the information of the company's mostly online customers. This action has resolved.

**NOTABLE APPELLATE EXPERIENCE:**

CVN has substantial appellate experience, highlighted by the examples below. For other appellate and/or unreported opinions, please contact our firm.

Augustus, et al. v. ABM Security Services, Inc. (2016) 2 Cal.5th 257 (Case No. S224853)

Baddie v. Berkeley Farms, Inc. (9th Cir. 1995) 64 F.3d 487 (Case No. 93-17187)

Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422 (First Dist., Division 1, Case No., A111153)

In Re Certified Tired and Service Centers Wage and Hour Cases (Cal. Supreme Ct. Case No. S252517)

Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal.App.4th 116 (Case No. A119697)

Montano v. The Wet Seal Retail, Inc. (2015) Not Reported in Cal.App.4th (2015 Cal. App. LEXIS 1199, Second District, Division 4, Case No. B244107)

O'Hara v. Factory 2-U Stores, Inc. (2003) Not Reported in Cal.Rptr.3d, 2003 WL 22451991 (First District, Division 4, Case No. A101452)

Taylor v. Park Place Asset Management, et al. (1999) (First Dist., Division 5, Case No. A086407)

Whiteway v. Fedex Kinko's Office and Print Services (9th Cir. 2009) 319 Fed.Appx. 688 (Case No. 07-16696)

**CONTACT INFORMATION:**

Cole & Van Note
555 12th Street, Suite 2100
Oakland, CA 94607
Tel:    (510) 891-9800
Web:   www.colevannote.com

# EXHIBIT C



### Arnold Law Firm Biography

**Sacramento Office**

865 Howe Avenue
Sacramento, CA 95825
916-777-7777
916.239.4778 (d)
415.595.3302 (c)

**Los Angeles Office**

6200 Canoga Ave, Ste 375,
Woodland Hills, CA 91367
Phone: 747.777.7748

**justice4you.com**



Founded in 1975 by Clayeo C. Arnold, the Arnold Law Firm is a litigation-oriented practice in Sacramento and Woodland Hills, California. In keeping with its founding principles, our firm consciously works for the interests of individual people and small businesses — not for large corporations or insurance companies.

The Arnold Law Firm prosecutes class action, mass tort, *qui tam*, product defect, employment, and personal injury cases. We pride ourselves on being a practice of trial lawyers, typically trying a minimum of ten cases per year to verdict. In addition to our practice throughout the state of California in both state and federal courts, we pursue class action, *qui tam* and multi-district litigation claims on a nationwide basis.

Our team of ten attorneys collectively encompass a broad, diverse professional background, including plaintiff contingency work, public entity representation, criminal defense, and civil defense. We have current and past board members of Capital City Trial Lawyers Association, as well as members of numerous prestigious professional organizations, including the American Board of Trial Advocates, American Association for Justice, Association of Trial Lawyers of America, and Consumer Attorneys of California.

Our firm's operating structure is based on teams directed towards specific practice areas. These teams regularly and intentionally collaborate and exchange information between their practice areas to improve the quality of representation for all of our clients.



**Arnold Law Firm Biography**

(continued)

Over four decades the Arnold Law Firm has developed a respected and extensive network of co-counsel and experienced contract counsel to rapidly expand our capabilities as necessary on an *ad hoc* basis (e.g., document review). We employ a robust staff of highly qualified, experienced assistants and paralegals to ensure that attorney time is spent in the most efficient manner possible.

The Arnold Law Firm employs technology to increase productivity, resulting in lower hourly billing, even though adverse parties eventually pay those bills. The firm increases efficiencies by using template software, client management software, and secure internet-based client management for mass tort or multi-plaintiff litigation. We also invest in appropriate billing and tracking software for contemporaneous hourly record keeping.

The Arnold Law Firm places substantial value on representing clients in a manner that is both effective and courteous. Integrity with clients, the courts, and adverse counsel are all considered to be as indispensable as successful results.

Our highly accomplished counsel has a long history of successfully handling class actions across a range of industries, including data breach cases.



## M. Anderson Berry
## Biography



The Arnold Law Firm has a proven track record of success and the ability to work efficiently and cooperatively with others. In addition, our firm has the availability and resources necessary to litigate complex class actions.

### M. Anderson Berry

M. Anderson Berry heads the data breach complex litigation and *qui tam* practices for the Arnold Law Firm. He brings substantial experience in complex litigation matters with a history of litigating in an efficient and practical manner, including Lead Class Counsel, Co-Lead Class Counsel, and Plaintiff's Executive Committee.

Mr. Berry has an extensive background in privacy and consumer/government fraud litigation, actively participating in a currently sealed False Claims Act case involving widespread cybersecurity fraud upon the United States, and the class action litigations filed in federal courts across the nation, set out below.

Mr. Berry was first selected as the Northern California Super Lawyers Rising Star in 2015 in the field of complex civil litigation.

Before joining the Arnold Law Firm in 2017, Mr. Berry worked as an Assistant United States Attorney for the Eastern District of California. As part of the Affirmative Civil Enforcement unit, Mr. Berry handled a wide variety of complex cases, recovering millions of dollars for the United States.

Before working for the Department of Justice, Mr. Berry practiced at one of the world's largest law firms, Jones Day, where he represented clients in international arbitration and complex commercial litigation, including defending class action allegations.



**M. Anderson Berry Biography**

(continued)

Mr. Berry attended the University of California, Berkeley, where he majored in English and graduated with highest honors. Anderson was inducted into the Phi Beta Kappa Honor Society and served as President of the English Undergraduate Associate.

After working as a private investigator for both criminal and civil investigations in the San Francisco Bay Area, Anderson graduated from U.C. Berkeley School of Law, where he was a Senior Editor for both the *Berkeley Journal of Criminal Law* and *Berkeley Journal of International Law*.

He was admitted to the California Bar in 2009 and is admitted to practice in the Northern, Eastern, Southern and Central Districts of California. Mr. Berry is also admitted to practice in the Northern District of Illinois, the Eastern District of Michigan and the Southern District of Indiana.

Mr. Berry was raised in Moraga, California.

### Select Data Breach Cases

*In Re: Entertainment Partners Data Breach Litigation,* 2:23-cv-06546-CAS (C.D. Ca.) (Co-Lead Counsel)

*In Re: Snap Finance Data Breach*, 2:22-cv-00761-TS-JCB (D.UT.) (Co-Lead Counsel)

*Ware v. San Gorgonio Memorial Hosp.,* CVRI2301216 (Sup. Crt of CA, Riverside) (Co-Lead Counsel)

*Holmes v. Elephant Insurance Company, et al*., 3:22-cv-00487-JAG (E.D. VA.) (Co-Lead Counsel);

*In Re: Arthur J. Gallagher Data Breach Litigation,* 1:21-cv-04056 (N.D.Ill.) (Co-Lead Counsel);

*In Re: CaptureRx Data Breach Litigation*, 5:21-cv-00523 (W.D.TX.)(Co-Lead Counsel) (settled);

*Rossi v. Claire's Stores, 1*:20-cv-05090 (N.D. Il.) (Co-Lead Counsel) (settled);

*Desue v. 20/20 Eye Care Network, Inc. et al.,* 0:21-cv-61275 (S.D. Fla.) (Executive Comm.);



**M. Anderson Berry Biography**

(continued)

*In re: Mednax Services, Inc. Customer Data Security Breach Litigation,* 21-MD-02994 (S.D. Fl.) (Executive Comm.);

*Bowdle v. King's Seafood Co. LLC,* 8:21-cv-01784-CJC-JDE, (CD. Cal.)(Class Counsel) (settled);

*Hashemi et al. v. Bosley, Inc.* 2:21-cv-00946 (CD. Cal.) (Class Counsel) (settled);

*Heath et al. v. Insurance Technologies Corp et al.,* 3:21-cv-01444 (N.D. Tex.) (Class Counsel) (settled);

*Carrera Aguallo et al. v. Kemper Corporation et al.,* 1:21-cv-01883 (N.D. Ill.) (Class Counsel) (settled);

*Ahn et al. v. Herff Jones, LLC,* 1:21-cv-01381 (S.D. Ind.) (settled);

*Bitmouni v. Paysafe Limited*, 3:21-cv-00641-JCS (N.D. Cal.);

*Gaston v. FabFitFun, Inc.*, 2:20-cv-09534 (C.D. Cal.) (Class Counsel) (settled);

*Hamid et al. v. Canon, U.S.A., Inc. et al.* 1:20-cv-06380-AMD-SJB (E.D.N.Y.);

*In Re: Ambry Genetics Data Breach Litigation*, 8:20-cv-00791 (C.D. Cal.) (settled);

*In Re: Hanna Andersson and Salesforce.com Data Breach Litigation*, 3:20-cv-00812-EMC (N.D. Cal.) (Co-Lead Class Counsel) (settled);

*In Re: Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.) (settled);

*Pfeiffer et al. v. RadNet, Inc.*, 2:20-cv-09553-RGK-SK (C.D. Cal.)(Class Counsel) (settled);

*Thomsen v. Morley Companies, Inc.*, 1:22-cv-10271-TLL (E.D. Mi.) (settled);

*In re Lakeview Loan Servicing Data Breach Litigation*, 1:22-cv-20955-DPG (S.D. Fl.);

*Myron Schellhorn et al v. Timios, Inc.*, 2:21-cv-08661-VAP-JC (C.D. Ca.) (settled).

# EXHIBIT D



## MARKOVITS, STOCK & DeMARCO, LLC

Markovits, Stock & DeMarco, LLC is a boutique law firm whose attorneys have successfully represented clients in some of the largest and most complex legal matters in U.S. history. Our deep and varied experience extends from representing businesses, public pension funds, and individuals in federal and state courts across the nation, to successfully arguing appeals at the highest levels of the legal system – including prevailing before the United States Supreme Court. This broad-based litigation and trial expertise, coupled with no overstaffing and overbilling that can typify complex litigation, sets us apart as a law firm. But expertise is only part of the equation.

"Legal success comes only from recognizing a client's goals and being able to design and effectively execute strategies that accomplish those goals. We understand that every client is different, which is why we spend so much time learning what makes them tick."

As the business world becomes increasingly complex, you need to be able to trust your law firm to help you make the right decisions. Whether you seek counsel in resolving a current conflict, avoiding a future conflict, or navigating the sometimes choppy state and local government regulatory waters, the lawyers at Markovits, Stock & DeMarco have both the experience and track record to meet your legal needs.

**BILL MARKOVITS**

Bill Markovits practices in the area of complex civil litigation, with an emphasis on securities, antitrust, RICO, and False Claims Act cases. Bill began his career as a trial lawyer at the U.S. Department of Justice Antitrust Division in Washington, D.C. He continued to focus on antitrust after moving to Cincinnati, where he became an adjunct professor of antitrust law at the University of Cincinnati Law School. Bill has been involved in the past in a number of notable cases, including: the Choice Care securities, antitrust and RICO class action in which the jury awarded over $100 million to a class of physicians; a fraud/RICO case on behalf of The Procter & Gamble Company, which resulted in a settlement of $165 million; an eleven year antitrust and RICO class action against Humana, including appeals that reached the United States Supreme Court, which culminated in a multi-million dollar settlement; and a national class action against Microsoft, in which he was chosen from among dozens of plaintiffs' attorneys to depose Bill Gates. More recently, Bill was: a lead counsel for plaintiffs in the Fannie Mae Securities Litigation that settled for $153 million; a lead counsel for plaintiffs in a class action against Duke Energy that settled for $80.75 million; and lead counsel for plaintiff in *Collins v. Eastman Kodak*, where he successfully obtained a preliminary injunction against Kodak on an antitrust tying claim. Based upon the result in *Collins*, Bill was a 2015 finalist in the American Antitrust Institute's Antitrust Enforcement Awards under the category "Outstanding Antitrust Litigation Achievement in Private Law Practice."

Bill has received a number of awards and designations, including current and past designations as a "Best Lawyer in America" in the fields of antitrust and commercial litigation.

### Education:

- Washington University, A.B. (1978), Phi Beta Kappa
- Harvard Law School, J.D. (1981), cum laude

### Significant and Representative Cases:

- *Collins v. Eastman Kodak*, United States District Court, Southern District of Ohio. Lead counsel representing Collins in antitrust tying claim, resulting in preliminary injunction against Kodak.
- *In Re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation*, United States District Court, District of Columbia. Co-lead counsel representing Ohio pension funds in securities class action that settled for $153 million.
- *Ohio Employees Retirement System v. Federal Home Loan Mortgage, aka Freddie Mac, et al.*, United States District Court, Northern District of Ohio, Eastern Division. Special counsel representing Ohio pension fund in securities class action.
- *Williams v. Duke Energy et al.*, United States District Court, Southern District of Ohio. Representing class of energy consumers against energy provider in complex antitrust and RICO class action that settled for $80.75 million.
- *In Re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, United States District Court, Central District of California. Former member of economic loss lead counsel committee, representing class of consumers in litigation relating to sudden acceleration.
- *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, United States District Court, Eastern District of Louisiana. RICO workgroup coordinator in class action resulting from oil spill.
- *In Re Microsoft Corp. Litigation*, United States District Court, District of Maryland. Member of co-lead counsel firm in antitrust class action.
- *Procter & Gamble v. Amway Litigation*, United States District Court, Southern District of Texas, at Houston; United States District Court, District of Utah, at Salt Lake City. Member of trial team

representing Procter & Gamble in obtaining jury verdict against Amway distributors relating to spreading of false business rumors.

- *United States ex rel. Brooks v. Pineville Hospital*, United States District Court, Eastern District of Kentucky. One of the lead counsel in successful False Claims Act litigation.
- *Procter & Gamble v. Bankers' Trust Litigation*, United States District Court, Southern District of Ohio. Co-counsel in successful $165 million settlement; developed the RICO case.
- *United States ex rel. Watt v. Fluor Daniel*, United States District Court, Southern District of Ohio. Co- lead counsel of successful False Claims Act case.
- *Forsyth v. Humana*, United States District Court, District of Nevada. Represented class of consumers in antitrust and RICO class action; successfully argued antitrust appeal; co-chaired successful Supreme Court appeal on RICO.
- *In Re Choice Care Litigation*, United States District Court, Southern District of Ohio, Western Division. Trial attorney on largest antitrust/RICO/securities verdict.

### Presentations & Publications:

- *"Implications of Sixth Circuit Collins Inkjet Corp. v. Eastman Kodak Co. Decision,"* American Bar Association panel discussion, December 10, 2015
- *"Defining the Relevant Market in Antitrust Litigation,"* Great Lakes Antitrust Seminar, October 29, 2010
- *"Beyond Compensatory Damages – Tread, RICO and The Criminal Law Implications,"* HarrisMartin's Toyota Recall Litigation Conference, Part II, May 12, 2010
- *"The Racketeer Influenced and Corrupt Organizations Act (RICO),"* HarrisMartin's Toyota Recall Litigation Conference, March 24, 2010
- *"The False Claims Act: Are Healthcare Providers at Risk?,"* presentation to Robert Morris College Second Annual Health Services Conferences, Integrating Health Services: Building a Bridge to the 21st Century, Moon Township, PA, October 9, 1997
- *"The Federal False Claims Act: Are Health Care Providers at Risk?,"* (Co-Speaker), Ohio Hospital Association, April, 1996
- *"A Focus on Reality in Antitrust,"* Federal Bar News & Journal, Nov/Dec 1992
- *"Using Civil Rico and Avoiding its Abuse,"* Ohio Trial, William H. Blessing, co-author, Summer 1992
- *"Antitrust in the Health Care Field,"* a chapter published in Legal Aspects of Anesthesia, 2nd ed., William H. L. Dornette, J.D., M.D., editor
- *Antitrust Law Update, National Health Lawyers Health Law Update and Annual Meeting (Featured Speaker)*, San Francisco, California, 1989

### Affiliations:

- American Association for Justice
- American Bar Association
- American Trial Lawyers Association
- Cincinnati Bar Association
- District of Columbia Bar Association (non-active)
- Hamilton County Trial Lawyers Association
- National Health Lawyers Association
- Ohio State Bar Association
- Ohio Trial Lawyers Association

### Courts Admitted:

- District of Columbia (1981)
- State of Ohio (1983)
- United States District Court, Southern District of Ohio (1983)
- U.S. Court of Appeals, 6th Circuit (1991)
- U.S. Court of Appeals, 9th Circuit (1995)
- U.S. Supreme Court, United States of America (1998)
- United States District Court, Northern District of Ohio (2008)

## PAUL M. DEMARCO

Paul M. De Marco is a founding member of Markovits, Stock & DeMarco, LLC. He is an Appellate Law Specialist certified by the Ohio State Bar Association and has handled more than 100 appellate matters, including cases before the Supreme Court of the United States, six federal circuits, and five state supreme courts.

Paul's practice also focuses on class actions and other complex litigation. During his 25 years in Cincinnati, Paul has been actively involved in successful litigation related to the U.S. Department of Energy's Fernald nuclear weapons plant, the Lucasville (Ohio) prison riot, Lloyd's of London, defective Bjork-Shiley heart valves, Holocaust-related claims against Swiss and Austrian banks, the Bankers Trust derivative scheme, Cincinnati's Aronoff Center, the San Juan DuPont Plaza Hotel fire, the Procter & Gamble Satanism rumor, the Hamilton County (Ohio) Morgue photograph scandal, defective childhood vaccines, claims arising from tire delamination and vehicle roll-over, racial hostility claims against one of the nation's largest bottlers, fiduciary breach claims against the nation's largest pharmacy benefits manager, and claims arising from the heatstroke death of NFL lineman Korey Stringer.

### Education:

- College of Wooster (B.A., 1981)
- University of the Pacific, McGeorge School of Law (J.D. with distinction, 1983)
- University of Cambridge (1985)

### Significant and Representative Appeals:

- *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896 (2009): In a case involving allegations of a fraudulent tax shelter and accounting and legal malpractice, the Supreme Court of the United States resolved the issue of the rights of non-parties to arbitration clauses to enforce them against parties, which had divided the circuits.
- *Williams v. Duke Energy International, Inc.*, 681 F.3d 788 (6th Cir. 2012): In a case brought as a class action by a utility's ratepayers for selective payment of illegal rebates to certain ratepayers, the United States Court of Appeals for the Sixth Circuit reversed a district court's dismissal of the excluded ratepayers' claims that the utility violated the RICO statute, the Robinson-Patman Act, and the state corrupt practices act.
- *State of Ohio ex rel. Bd. of State Teachers Retirement Sys. of Ohio v. Davis*, 113 Ohio St.3d 410, 865 N.E.2d 1289 (2007): The Supreme Court of Ohio upheld the appellate court's issuance of the extremely rare writ of procedendo commanding the trial judge to proceed with a trial on claims he mistakenly believed the previous jury had resolved.
- *Chesher v. Neyer*, 477 F.3d 784 (6th Cir. 2007): The Sixth Circuit affirmed the district court's rejection of qualified immunity defenses raised by the Hamilton County (Ohio) coroner, his chief deputy, the coroner's administrative aide, a staff pathologist, and a pathology fellow in connection with the Hamilton County Morgue photo scandal.
- *State of Ohio ex rel. CNG Fin'l Corp. v. Nadel*, 111 Ohio St.3d 149, 855 N.E.2d 473 (2006): The Supreme Court of Ohio affirmed the appellate court's refusal to issue a writ of procedendo commanding the trial judge to halt injunctive proceedings and decide an arbitration issue.
- *Smith v. North American Stainless, L.P.*, 158 F. App'x. 699 (6th Cir. 2006): Rejecting a steel manufacturer's "up-the-ladder" immunity defense, the United States Court of Appeals for the Sixth Circuit reversed the district court's dismissal of a wrongful claim brought by the widow and estate of a steel worker killed on the job.
- *Procter & Gamble Co. v. Haugen*, 427 F.3d 727 (10th Cir. 2005): The United States Court of Appeals for the Tenth Circuit reversed the district court's dismissal of Procter & Gamble's Lanham Act claims, paving

the way for a $19.25 million jury verdict in its favor.

- *Roetenberger v. Christ Hospital*, 163 Ohio App.3d 555, 839 N.E.2d 441 (2005): In this medical malpractice action for wrongful death, the Ohio court of appeals reversed the jury verdict in the physician's favor due to improper arguments by his attorney and instructional error by the trial court.
- *City of Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 768 N.E.2d 1136 (2002): In this landmark decision on public nuisance law, the Supreme Court of Ohio held that a public nuisance action could be maintained for injuries caused by a product — in this case, guns — if the design, manufacture, marketing, or sale of the product unreasonably interferes with a right common to the general public.
- *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 165, 766 N.E.2d 977 (2002): In an employee's intentional tort action alleging that his employer subjected him to long-term beryllium exposure, the Supreme Court of Ohio ruled that a cause of action for an employer intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and — here's the ground-breaking part of the holding — the wrongful conduct of the employer.
- *Wallace v. Ohio Dep't of Commerce*, 96 Ohio St.3d 266, 773 N.E.2d 1018 (2002): In overturning the dismissal of a suit against the state fire marshal for negligently inspecting a fireworks store that caught fire killing nine people, the Supreme Court of Ohio held for the first time that the common-law public-duty rule cannot be applied in cases against the state in the Ohio Court of Claims.

**Courts Admitted:**

- Ohio
- California
- Supreme Court of the United States
- U.S. Court of Appeals, 1st Circuit
- U.S. Court of Appeals, 4th Circuit
- U.S. Court of Appeals, 5th Circuit
- U.S. Court of Appeals, 6th Circuit
- U.S. Court of Appeals, 7th Circuit
- U.S. Court of Appeals, 9th Circuit

- U.S. Court of Appeals, 10th Circuit
- U.S. District Court, Southern District of Ohio
- U.S. District Court, Northern District of Ohio
- U.S. District Court, Eastern District of California
- U.S. District Court, Central District of California
- U.S. District Court, Southern District of California
- U.S. Court of Federal Claims

Since 1994, Paul has worked to promote professional responsibility among lawyers, serving first as a member and eventually the chair of the Cincinnati Bar Association Certified Grievance Committee, and since 2008 as a member of the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio.

He also is a member of many legal organizations, including the Federal Bar Association, Ohio State Bar Association, Cincinnati Bar Association, American Bar Association, ABA Council of Appellate Lawyers, and the Cincinnati Bar Association's Court of Appeals Committee.

Paul was one of the founders of the Collaborative Law Center in Cincinnati, a member of Cincinnati's Citizens Police Review Panel (1999-2002), and a member of Cincinnati CAN and its Police and Community Subcommittee following the 2001 riots.

He currently serves on the boards of the Ohio Justice and Policy Center and the Mercantile Library and on the advisory committees of the Fernald Community Cohort and the Fernald Workers' Medical Monitoring Program.

## TERENCE R. COATES

Terry Coates is Markovits, Stock & DeMarco's managing partner. His legal practice focuses on personal injury law, sports & entertainment law, business litigation and class action litigation. Mr. Coates is currently participating as a member of plaintiffs' counsel in the over 75 data breach cases pending around the country, including serving as co-lead counsel for plaintiff in *Migliaccio v. Parker Hannifin Corp.*, No. 1:22-CV-00835 (N.D. Ohio) (Class Counsel for $1.75 million data breach class action settlement); *Lutz v. Electromed, Inc.*, No. 0:21-cv-02198 (D. Minn.) (Class Counsel for $825,000 data breach class action settlement); *Abrams v. Savannah College of Art & Design*, No. 1:22-CV-04297 (N.D. Ga.) (Class Counsel for data breach class action settlement); *John v. Advocate Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.) (Class Counsel in $12,225,000 data privacy class action settlement); *In re Cerebral, Inc. Privacy Practices*, No. 2:23-cv-1803 (C.D. Cal.) (interim co-lead class counsel in a data privacy class action); *In re U.S. Vision Data Breach Litigation*, No. 22-cv-06558 (D. N.J.) (court-appointed interim co-lead class counsel for plaintiffs); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio) (Class Counsel for $1.75 million common fund settlement); *Vansickle v. C.R. England*, No. 22-cv-00374 (D. Utah) (Class Counsel in data breach class action settlement in principle); *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-cv-00185 (S.D. Ohio) (Class Counsel for $1.75 million common fund settlement); *Sherwood v. Horizon Actuarial Services, LLC*, No. 1:22-cv-1495 (N.D. Ga.) (class counsel in data breach class action settlement in principle); *Tracy v. Elekta, Inc.*, No. 1:21-cv-02851-SDG (N.D. Ga.) (court-appointed interim class counsel); *Rodriguez v. Professional Finance Company, Inc.*, No. 1:22-cv-1679 (D. Colo.) (same).

### Education:

- Wittenberg University, B.A. (2005)
- Thomas M. Cooley Law School, J.D. (2009)

### Representative Cases:

- *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) ($3.65 million common fund settlement finally approved on September 20, 2022);
- *Bowling v. Pfizer, Inc.*, No. C-1-95-256 (S.D. Ohio) (Class Counsel for recipients of defective mechanical heart valves including continued international distribution of settlement funds to remaining class members);
- *Collins Inkjet Corp. v. Eastman Kodak Company*, No. 1:13-cv-0664 (S.D. Ohio) (trial counsel for Collins in an antitrust tying claim resulting in a preliminary injunction against Kodak – a decision that was affirmed by the Sixth Circuit Court of Appeals: *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264 (6th Cir. 2015));
- *Day v. NLO, Inc.*, Case No. C-1-90-67 (S.D. Ohio) (Class Counsel for certain former workers at the Fernald Nuclear weapons facility; the medical monitoring program continues);
- *In re Fannie Mae Securities Litigation*, Case No. 1:04-cv-1639 (D.D.C.) (represented Ohio public pension funds as Lead Plaintiffs in Section 10b securities class action litigation resulting in a $153 million court-approved settlement);
- *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, & Products Liability Litigation*, MDL No. 2151 (C.D. Cal.) (represented plaintiffs and prepared class representatives for deposition testimony resulting in a court-approved settlement valued in excess of $1.5 billion);
- *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, Case No. 09-1967 (N.D. Cal.) (represented NCAA, Olympic, and NBA legend, Oscar Robertson, in antitrust claims against the National Collegiate Athletic Association (NCAA), Collegiate Licensing Company (CLC), and Electronic Arts (EA) leading to a $40 million settlement with EA and CLC and the Court issuing a permanent injunction against the NCAA for unreasonably restraining trade in violation of antitrust law);
- *Linneman v. Vita-Mix Corp.*, No. 14-cv-748, (S.D. Ohio) (Class Counsel for a nationwide class of Vita-Mix blender consumers resulting in a nationwide settlement);

- *Ryder v. Wells Fargo Bank, N.A.*, No. 1:2019-cv-00638 (S.D. Ohio) (member of class counsel in a $12 million settlement on behalf of roughly 1,830 class members);
- *Shy v. Navistar International Corp.*, No. 92-cv-0333-WHR (S.D. Ohio) (class counsel for a class action settlement valued at over $742 million);
- *Walker v. Nautilus, Inc.*, No. 2:20-cv-3414-EAS (S.D. Ohio) ($4.25 million common fund settlement); and,
- *Williams v. Duke Energy*, No. 1:08-cv-00046 (S.D. Ohio) (representing class of energy consumers against energy provider in complex antitrust and RICO class action resulting in the court granting final approval of an $80.875 million settlement).

**Community Involvement:**
- Cincinnati Academy of Leadership for Lawyers (CALL), Class XXI, *Participant* (2017)
- Cincinnati Chamber of Commerce C-Change Class 9, *Participant* (2014)
- Cincinnati Chamber of Commerce, *Ambassador* (2014)
- Cincinnati Athletic Club, *President* (2015-2017)
- Cincinnati Athletic Club, *Vice President* (2014-2015)
- Cincinnati Bar Association, Board of Trustees, *Trustee* (2019-present)
- Cincinnati Bar Association, Board of Trustees, *Executive Committee* (2021-present)
- Cincinnati Bar Association, Board of Trustees, *Secretary* (2023-present)
- Cincinnati Bar Association, *Membership Services & Development Committee* (2014-present)
- Cincinnati Bar Association, *Run for Kids Committee* (2009-2014)
- Cincinnati Bar Association, *Social Committee* (2011-2014)
- Clermont County Humane Society, *Board Member* (2014-2017)
- Clermont County Humane Society, *Legal Adviser* (2017-present)
- Potter Stewart Inn of Court, *Executive Director* (2021-present)
- Summit Country Day High School, *Mock Trial Adviser* (2013-2016)
- St. Peter in Chains, Cathedral, Parish Council (2014-2017)

**Recognitions:**
- Super Lawyers, Rising Star (2014 – 2022)
- Super Lawyers, Super Lawyer (2022-present)
- Best Lawyers in America, Commercial Litigation (2020-present)
- Wittenberg University Outstanding Young Alumnus Award (2014)
- Cincinnati Bar Association, Young Lawyers Section Professionalism Award (2015)
- JDRF Bourbon & Bow Tie Bash, *Young Professional (Volunteer) of the Year* for the Flying Pig Marathon (2016)
- Cincinnati Business Courier, Forty Under 40 (2019)
- Cincinnati Cystic Fibrosis Foundation, Cincinnati's Finest Honoree (2020)

**Courts Admitted:**
- State of Ohio (2009)
- United States District Court, Southern District of Ohio (2010)
- United States District Court, Northern District of Ohio (2010)
- United States District Court, Eastern District of Michigan (2021)
- United States District Court, District of Colorado (2022)
- United States District Court, Eastern District of Wisconsin (2022)
- United States District Court, Western District of Michigan (2023)
- United States District Court, District of Nebraska (2023)
- United States Court of Appeals, Sixth Circuit (2018)

## DYLAN J. GOULD

Dylan is an associate attorney at Markovits, Stock & DeMarco. Dylan's practice primarily focuses on class action and complex civil litigation with an emphasis on cases involving consumer fraud and data privacy. He also has experience with matters related to sports & entertainment, personal injury, commercial law, civil conspiracy, and civil litigation under the RICO Act. At the University of Cincinnati College of Law, where he spent multiple semesters on the Dean's Honors List, Dylan was selected to the Trial Practice and Moot Court teams, participating in mock trial and appellate court competitions with law students across the country. Upon graduation, Dylan joined Markovits, Stock & DeMarco, where he quickly gained valuable experience in nearly every facet of the litigation process while skillfully guiding several cases to final judgment, including as a court appointed member of class counsel in multiple actions gaining final approval of class action settlement. In recognition of his achievements, Dylan was named an Ohio Super Lawyers Rising Star in 2021 and 2023. Aside from his litigation practice, Dylan is also a Certified Contract Advisor with the National Football League Players Association.

### Education:

- University of Colorado at Boulder, B.A. (2015)
- University of Cincinnati, J.D. (2018)

### Courts Admitted:

- State of Ohio (2018)
- United States District Court, Southern District of Ohio (2019)
- United States District Court, Northern District of Ohio (2022)
- United States District Court, Eastern District of Wisconsin (2022)
- United States District Court, District of Colorado (2023)
- United States Court of Appeals, Sixth Circuit (2023)

### Representative Cases:

- *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378 (S.D. Ohio 2023) (granting class certification of contested claims in complex civil RICO action and appointing Mr. Gould as a member of class counsel);
- *Miranda v. Xavier Univ.*, No. 1:20-CV-539, 2023 WL 6443122, at *8 (S.D. Ohio Oct. 3, 2023) (granting final approval of $750,000 settlement and appointing Mr. Gould as member of class counsel)
- *Voss v. Quicken Loans*, No. A 2002899, 2023 WL 1883124 (Feb. 8, 2023 Ohio Com.Pl.) (granting class certification of contested claim under Ohio law and appointing Mr. Gould as member of class counsel);
- *Lutz v. Electromed, Inc.*, No. 21-cv-2198 (D. Minn.) (court appointed member of class counsel in data breach action that recently gained final approval of $825,000 non-reversionary settlement)
- *Abrams v. Savannah Coll. of Art & Design, Inc.*, No. 1:22-CV-04297 (N.D. Ga.) (court appointed member of class counsel in data breach action that recently gained final approval of $375,000 settlement);
- *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-cv-02070-MHW-EPD (S.D. Ohio) (court appointed Interim Co-Lead Counsel in pending data breach action);
- *Anderson v. Fortra LLC*, No. 0:23-cv-00533 (SRN/DTS) (D. Minn.) (court appointed member of Executive Committee Counsel in pending data breach action with millions of alleged victims).
- *In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS (E.D. Wis.) (court appointed member of class counsel in data privacy action that recently gained preliminary approval of $12,225,000 settlement)

### Affiliations:

Cincinnati Bar Association                         Ohio State Bar Association

## JUSTIN C. WALKER

Justin C. Walker is Of Counsel at Markovits, Stock & DeMarco. Justin's practice areas are focused on complex civil litigation and constitutional law, with an emphasis on with an emphasis on cases involving consumer fraud and data privacy. Before joining Markovits, Stock & DeMarco in April 2019, Justin practiced at the Finney Law Firm, a boutique law firm specializing in complex litigation and constitutional law. At the beginning of his legal career, Justin served as a judicial extern for Senior United States District Judge Sandra S. Beckwith before taking a full-time position as a law clerk and magistrate in the Hamilton County Ohio Court of Common Pleas for the Honorable Norbert A. Nadel. After completing his clerkship, Justin took a position as a prosecutor, serving as first chair for multiple jury trials. Justin then entered private practice, shifting his practice to focus on litigation matters.

### Education:

- Miami University, B.S. (2001)
- University of Cincinnati, J.D. (2005)

### Courts Admitted:

- State of Ohio (2005)
- U.S. Court of Appeals, 6th Circuit (2017)
- U.S. District Court, Southern District of Ohio (2008)
- U. S. District Court, Northern District of Ohio (2023)
- U.S.  District Court, Western District of Michigan (2023)
- U.S. District Court for the District of Colorado (2023)
- U.S. Bankruptcy Court, Southern District of Ohio (2009)

### Representative Cases:

- *Abrams v. Savannah Coll. of Art & Design, Inc.*, No. 1:22-CV-04297 (N.D. Ga.) (court appointed member of class counsel in data breach action that recently gained final approval of $375,000 settlement);
- *Bechtel v. Fitness Equipment Services, LLC*, No. 1:19-cv-726-KLL (S.D. Ohio) (court appointed member of class counsel in $3.65 million common fund settlement finally approved on September 20, 2022);
- *Voss v. Quicken Loans*, No. A 2002899, 2023 WL 1883124 (Feb. 8, 2023 Ohio Com.Pl.) (court appointed member of class counsel where Court granted class certification of contested claim under Ohio law);
- *Linneman v. Vita-Mix Corp.*, Case No. 15-cv-748, United States District Court, Southern District of Ohio (Co-Class Counsel for a nationwide class of Vita-Mix blender consumers resulting in a nationwide settlement).
- *Baker v. City of Portsmouth*, Case  No. 1:14-cv-512, 2015 WL 5822659  (S.D. Ohio Oct. 1, 2015)  (Co-Counsel for a class of property owners, the Court ruled that City violated the Fourth Amendment when it required property owners to consent to a warrantless inspection of their property or face a criminal penalty where not valid exception to the warrant requirement exists).
- *E.F. Investments, LLC v. City of Covington, Kentucky*, Case No. 17-cv-00117-DLB-JGW, United States District Court, Eastern District of Kentucky (Lead Counsel on case brought on behalf of local property owners, contending that City's rental registration requirements violated the Fourth Amendment resulting in a settlement).
- *State of Ohio ex rel. Patricia Meade v. Village of Bratenahl*, 2018-04409, Supreme Court State of Ohio (Co-Counsel on behalf of local taxpayer contending that Defendant's violated Ohio Open Meetings Law).
- *Dawson v. Village of Winchester*, United States District Court, Southern District of Ohio (Lead Counsel represented Plaintiff claiming Federal Civil Rights violations due to unconstitutional arrest and detainment).

### Affiliations and Presentations:

- Cincinnati Bar Association

- Clermont County Bar Association
- American Association for Justice
- "Municipal Bankruptcy: Chapter 9 – Should Cincinnati Consider Filing for Bankruptcy"
- "Ohio CLE Introduction to Bankruptcy for Lawyers CLE"

## JONATHAN T. DETERS

Jon is a Cincinnati native whose legal practice is focused on complex civil litigation, class action litigation, personal injury law, and sports & entertainment law. Jon has been a litigator since the start of his career, and his clients have included individuals, businesses, local governments, and government officials. Jon's experience serving as both plaintiff and defense counsel make him uniquely qualified and well-suited to represent individual and corporate clients in litigation. Jon has been designated as an Ohio Super Lawyers "Rising Star" from 2019-present, which is a distinction awarded to less than 2.5% of Ohio attorneys under the age of 40.

Before joining Markovits, Stock & DeMarco in January 2022, Jon practiced at Schroeder, Maundrell, Barbiere & Powers, an Ohio law firm specializing in civil litigation, personal injury, and constitutional law. While in law school, Jon served as a constable in the Hamilton County Ohio Court of Common Pleas for the Honorable Steven E. Martin and worked as law clerk at the Law Office of Steven R. Adams.

### Education:

- Xavier University, Cincinnati, Ohio, Honors Bachelor of Arts (2012)

- Salmon P. Chase School of Law at Northern Kentucky University, J.D. (2015)

### Representative Cases:

- *Baker v. Carnine*, No. 1:19-CV-60 (2022), United States District Court, Southern District of Ohio

- *Jones v. Vill. of Golf Manor,* No. 1:18-CV-403 (2020), United States District Court, Southern District of Ohio

- *Vaduva v. City of Xenia*, 780 F. App'x 331 (2019), United States Court of Appeals, Sixth Circuit

- *Gillispie v. Miami Twp.*, No. 3:13-CV-416 (2017), United States District Court, Southern District of Ohio

- *City of Mt. Healthy v. Fraternal Ord. of Police, Ohio Lab. Council, Inc*., 101 N.E.3d 1163 (2017), Ohio First District Court of Appeals

### Community Involvement:

- Cincinnati Bar Association, *Member*
- Ohio Bar Association, *Member*
- Boy Hope Girls Hope of Cincinnati, *Young Professionals Board Member*
- Board of Trustees of the New St. Joseph Cemetery, Cincinnati, Ohio, *Member*

### Courts Admitted:

- State of Ohio
- United States District Court, Southern District of Ohio
- United States District Court, Northern District of Ohio
- United States Court of Appeals, Sixth Circuit

# CHRISTOPHER D. STOCK

Chris's legal practice focuses on securities class action and multi-district products liability litigation, as well as appellate advocacy. Serving as a judicial law clerk for Ohio Supreme Court Justice Terrence O'Donnell gave Chris invaluable insight into how courts synthesize and deconstruct legal arguments. Since then, Chris has briefed and argued numerous cases before the United States Court of Appeals for the Sixth Circuit, the Ohio Supreme Court, and Ohio appellate courts, including obtaining a rare summary reversal from the United States Supreme Court.

Chris also served as both Deputy First Assistant Attorney General and Deputy State Solicitor for Ohio Attorney General Jim Petro. In these positions, Chris was principal counsel to the Attorney General on a wide variety of legal and policy-oriented issues, including numerous constitutional and regulatory matters arising from state agencies, boards, and commissions. Prior to his service in state government, Chris was an attorney at a 500-lawyer nationally-recognized law firm. He has also received multiple designations as an Ohio Super Lawyers "Rising Star."

## Education:

- The Ohio State University, BA (1997)
- The Ohio State University, Moritz College of Law, J.D. (2002)

## Significant Cases:

- *In re Fannie Mae Securities Litigation,* Case No. 1:04-cv-1639 (D.D.C.). Represented Ohio public pension funds as Lead Plaintiffs in Section 10b-5 securities class action litigation.
- *Ohio Public Employees Retirement System v. Freddie Mac, et al.,* Case No. 4:08-cv-160 (N.D. Ohio). Representing Ohio public pension funds as Lead Plaintiffs in Section 10b-5 securities class action litigation.
- *Williams v. Duke Energy,* Case No.: 1:08-CV-00046 (S.D. Ohio). Represented class of energy consumers against energy provider in complex antitrust and RICO class action.
- *Slaby v. Wilson,* Hamilton County Court of Common Pleas. Represented two private individuals who were falsely accused by a County Commissioner of murdering their child and covering up the child's death (as well as sexual abuse of child).
- *Kelci Stringer, et al. v. National Football League, et al.,* United States District Court, Southern District of Ohio, Western Division. Represented professional football player against NFL and helmet manufacturer in wrongful death/products liability litigation related to professional football player's death.
- *Susan B. Anthony List v. Driehaus,* United States District Court, Southern District of Ohio, Western Division. Represented former Congressman in defamation action against organization who published false statements about former Congressman's voting record and alleged influence over organization's commercial activities.
- *Mitchell v. Esparza,* Case No. 02-1369 (United States Supreme Court). Obtained summary reversal of Sixth Circuit decision on Eighth Amendment capital sentencing issue.
- *Cleveland Bar Association v. CompManagement, Inc.,* Case No. 04-0817 (Ohio Supreme Court). Represented the State of Ohio as amicus in landmark workers' compensation lawsuit.

## Presentations:

- Class Action Boot Camp: The Basics and Beyond (2012).
- Harris Martin Toyota Sudden Unintended Acceleration Litigation Conference: TREAD Act Liability and Toyota (2010).
- Harris Martin BP Oil Spill Litigation Conference: The RICO Act's Application to the BP Oil Spill (2010).

## Affiliations:

- Ohio State Bar Association

- Cincinnati Bar Association

**Courts Admitted:**

- State of Ohio (2002)
- United States District Court, Southern District of Ohio (2003)
- Sixth Circuit Court of Appeals, Ohio (2003)
- United States District Court, Northern District of Ohio (2007)

# EXHIBIT E

 # BRADLEY/GROMBACHER LLP

www.bradleygrombacher.com

_____

Bradley/Grombacher LLP (the "Firm") is a law firm based in Los Angeles, California. The Firm is actively engaged in complex litigation, emphasizing on consumer, human rights, and employment class actions. The Firm is well-respected for both the zealous advocacy with which it represents its clients' interests, as well as, the highly-professional and ethical manner by which it achieves results. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted hundreds of class-action lawsuits.

Bradley/Grombacher LLP was formed in 2016, and, since that time, the Firm has recovered more than Fifty Million dollars ($50,000,000) for injured class members. Prior to such formation, the Partners at Bradley/Grombacher LLP were instrumental in recovering over Eight Hundred Million dollars ($800,000,000) on behalf of workers and consumers including the following settlements:

    a. **Guttierez v. State Farm Mutual,** Superior Court for the State of California, County of Los Angeles. The case settled for $135 million just prior to trial.

    b. **Bednar v. Allstate Insurance Company**, Superior Court for the State of California, County of Los Angeles. The case settled for $120 million just prior to trial.

    c. **Roberts v. Coast National Insurance,** Superior Court for the State of California, County of Orange. The case settled at arbitration for an amount in excess of $18 million.

    d. *CNA Class Action Litigation*, Superior Court for the State of California, County of Los Angeles. The case settled for $33 million.

e. **Dotson v. Royal SunAlliance,** Superior Court for the State of California, County of Orange. The case settled for $12.3 million.

f. **Parris v. Lowe's Home Improvement,** Superior Court for the State of California, County of Los Angeles.  The case settled for $29.5 million.

g. **Pardo v. Toyota Motor Sales, et al.**, Superior Court for the State of California, County of Los Angeles.  The case settled for $7.75 million.

h. **Smith/Ballard v. Wal-Mart Stores, Inc.** The action was certified and settled for $86 million.

i. **Hoyng v. AON**, Superior Court for the State of California, County of Los Angeles.  The case settled for $10.5 million.

j. **Heather Stern et al v. New Cingular Wireless Services Inc.,** United States District Court for the Central District of California.  Class action settlement worth up to $250 million.

k. **In Re Bank of America Wage and Hour Employment Practices Litigation,** MDL 2138, United States District Court for the District of Kansas. The case settled for $73 million.

l. **H & R Block Litigation**, United States District Court for the Northern District of California.  Class certified, and settlement of $35 million.

m. **Roberts v. TJ Maxx of CA LLC.,** United States District Court for the Northern District of California.  Class action settlement of $8.5 million.

n. *Brenner v. Kevita, Inc.,* Superior Court, State of California, County of Ventura(Case No. 56-2017-00502340-CU-FR-VTA). Settlement with total estimated value of available monetary benefits that could have been claim equaling more than $5,000,000and injunctive relief valuing between $26,200,446.76 and$34,397,145.69.

## Principals



**Kiley Lynn Grombacher**

Kiley Grombacher been a member of the State Bar of California since 2006.

Ms. Grombacher's involvement in various forms of class action litigation spans more than a decade during which time I have litigated hundreds of class actions. Ms. Grombacher began my legal career at Arias, Ozzello & Gignac where I specialized in and gained extensive experience litigating consumer cases.  Thereafter, Ms. Grombacher joined Marlin & Saltzman in 2010 where she focused her practice almost exclusively on class, collective and enforcement actions including the reported case, *Faulkinbury v. Boyd & Associates*, which clarified the holding in a seminal case, *Brinker Restaurant Corp. v. Superior Court* to establish that legality of certain company policies could be determined on a class-wide basis even if the application of the polices varies by individual.

Ms. Grombacher has been appointed either lead or co-lead counsel including cases in multi-district litigation or coordinated proceedings where I worked collaboratively and cooperatively with co-counsel to bring about an efficient and beneficial resolution for all class members as the above results demonstrate.

Ms. Grombacher has argued cases before trial courts and courts of appeal. Her writings on legal topics pertaining to class and representative actions have appeared in professional publications and she has been called upon to speak at conferences and seminars for professional organizations. I have also been honored as a Rising Star and/or Super Lawyer in the area of class actions by Los Angeles Magazine for multiple years including the current year.



### Marcus Bradley

Marcus Bradley is the founder and senior partner of Bradley/Grombacher LLP. An accomplished trial attorney with more than 22 years of litigation experience, Mark represents clients in matters including complex consumer litigation, class actions, mass torts, product liability, personal injury, and more. e is licensed to practice in all California

state courts and the U.S. district courts for the northern, central, southern and eastern districts of California as well as the U.S. Court of Appeals for the Ninth Circuit.

Active in professional organizations, Mark is a member of the American Association for Justice, the Consumer Attorneys of California, the Consumer Attorneys of Los Angeles, the Los Angeles County Bar Association, and The State Bar of California, among other groups. He also participates in numerous charitable and community organizations.

Mark's writings on legal topics have been widely published and he is frequently called upon to speak at conferences and seminars for professional organizations.

# eSignature Details

| | |
|---|---|
| **Signer ID:** | **EHFkhEW3xZXruAKrJd4pfzgp** |
| Signed by: | Laura Van Note |
| Sent to email: | lvn@colevannote.com |
| IP Address: | 50.213.44.97 |
| Signed at: | Nov 3 2023, 5:22 pm PDT |