Scott Edward Cole, Esq. (S.B. #160744)
Laura Grace Van Note, Esq. (S.B. #310160)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:  (510) 891-9800
Facsimile:   (510) 891-7030
sec@colevannote.com
lvn@colevannote.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, California 95825
Telephone: (916) 239-4778
aberry@justice4you.com
gharoutunian@justice4you.com

[Additional counsel on signature page]

*Attorneys for Representative Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| *IN RE: BLACKHAWK NETWORK DATA BREACH LITIGATION*<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:22-cv-07084-CRB<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVE PLAINTIFFS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       April 5, 2024<br>Time:       10:00 a.m.<br>Judge:     Hon. Charles R. Breyer<br>Courtroom:  6 – 17th Floor<br>              450 Golden Gate Avenue<br>              San Francisco, CA 94102 |

1

2

## NOTICE OF MOTION AND MOTION

3 **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

4       **PLEASE TAKE NOTICE** that on April 5, 2024 at 10:00 a.m., or as soon thereafter as

5 counsel may be heard, before the Honorable Charles R. Breyer, at San Francisco Courthouse,

6 Courtroom 6 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Steven

7 Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor, and Kelly Rogers

8 (collectively "Plaintiffs") will and hereby does move this Court, pursuant to Federal Rule of Civil

9 Procedure 23, for an order granting Plaintiffs' Unopposed Motion for Approval of Attorneys'

10 Fees, Expenses, and Service Awards to Representative Plaintiffs and awarding, pursuant to rules

11 23(h)(l) and 54(d)(2) of the Federal Rules of Civil Procedure: (i) Attorneys' Fees to Class Counsel

12 in the Amount of $246,250.00, which is 25% of the $985,000 non-reversionary Class Settlement

13 Amount; (ii) unreimbursed expenses totaling $12,526.35 that Class Counsel reasonably and

14 necessarily incurred in furtherance of the prosecution of this Action; and (iii) a total of $15,000

15 ($2,500 each) as a Service Awards for Representative Plaintiffs.

16       This motion is based upon this Motion, the Memorandum of Points and Authorities, the

17 accompanying Joint Declaration of Class Counsel ("Joint Fees Decl.") and the exhibits attached

18 thereto, the Plaintiffs' declarations, the pleadings on file in this Action, and other such matters and

19 argument as the Court may consider at the hearing on this motion.

20       ## STATEMENT OF ISSUES TO BE DECIDED

21       1.      Whether the Court should award $246,250, which is 25% of the $985,000 Class

22 Settlement Amount, to Class Counsel as Attorneys' Fees;

23       2.      Whether the Court should award $12,526.35 in unreimbursed expenses that Class

24 Counsel reasonably and necessarily incurred in furtherance of the Action; and

25       3.      Whether the Court should grant Service Awards to Representative Plaintiffs of

26 $2,500 each ($15,000 total) for their time and effort in pursuing this Action.

27

28

1

2

## TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT……………………………………………….    8

II.     STATEMENT OF FACTS……………………………………………….   10

III.    PROCEDURAL HISTORY……………………………………………...   10

IV.     ARGUMENT…………….…..……………………………………………..   11

        A.   The Requested Award is Fair and Reasonable by Ninth Circuit Standards………   11

        B.   The Award Request is Supported by Percentage-of-Recovery Method………….   12

             1.  The Results Achieved Here…………………………………………...   14

             2.  The Risk and Nature of the Litigation………..………………………   15

             3.  The Skill Required to Prosecute  this Action Effectively…………………   17

             4.  Awards in Similar Cases………………………………………………...   17

        C.   The Fee Request is Reasonable Under the Lodestar Cross-Check…………….   18

V.      CLASS COUNSELS' REASONABLE EXPENSES SHOULD BE REIMBURSED..   22

VI.     REQUEST FOR CLASS REPRESENTATIVE PLAINTIFFS SERVICE AWARDS.   22

VII.    CONCLUSION…………………………………………………………...   24

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**                                                                                               **Page**

3    *Adkins v. Facebook*, 424 F.Supp.3d 686 (N.D. Cal. 2019)……………………………………….16

4    *Antman v. Uber Technologies, Inc.,* No. 3:15-cv-01175, 2015 WL 6123054
5        (N.D. Cal. Oct. 19, 2015)........................................................................................ 16

6    *Beasley et al. v. TTEC Services Corporation*, No. 22-cv-00097-PAB-STV
         (D.Col. Feb. 21, 2024)…………………………………………………………………….. 18
7
8    *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245 (N.D. Cal. 2015)...................................... 23

9    *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)........................................................................ 11

10   *Bowdle v. King′s Seafood Company, LLC*, No. 8:21-cv-01784-CJC-JDE
         (C.D. Cal. Feb. 13, 2023) ...................................................................................... 19
11
12   *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F.Supp.2d 415 (S.D.N.Y. 2012)............. 20

13   *Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) ...................................................... 19

14   *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 WL 2643307
15       (S.D.N.Y. June 25, 2010).......................................................................................... 16

16   *Hashemi et al. v. Bosley,* No. 21-946-PSG, 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ....... 20

17   *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896
         (C.D. Cal. Sept. 2, 2014)........................................................................................ 20
18
19   *In re Am. Apparel, Inc. S′holder Litig.*, No. CV-1006352 MMM (JCGx) 2014 WL 10212865
         (C.D. Cal. July 28, 2014) ........................................................................................ 17
20
21   *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068
         (N.D. Cal. Aug. 17, 2018)................................................................................passim

22   *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................. 11, 12, 13

23   *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575
24       (N.D. Cal. Sept. 21, 2018)........................................................................................ 18

25   *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998,
         2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)........................................................ 16
26

27

28

1

2

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page**

3      *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT,  2020 WL 256132
           (N.D. Ga. March 17, 2020)...................................................................................................passim

4

5      *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No.  02-cv-3400 (CM), 2010 WL 4537550
           (S.D.N.Y. Nov. 8, 2010) ........................................................................................... 18

6

7      *In re GEICO Gen. Ins. Co.*, No. 19-cv-03768-HSG, 2023 U.S. Dist. LEXIS 43778
           (N.D. Cal. Mar. 15, 2023)…………………………………………………………… 23

8      *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013)..... 16

9

10     *In re Hanna Andersson and Salesforce.com Data Breach Litigation*,  No. 3:20-cv-00812-EMC
           (N.D. Cal. June 25, 2021).......................................................................................... 18, 19

11     *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730
           (N.D. Cal. Sept. 2, 2015)........................................................................................... 22

12

13     *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669
           (N.D. Cal. Sept. 24, 2018)......................................................................................... 22

14

15     *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420
           (N.D. Cal. Apr. 24, 2019)........................................................................................... 13

16     *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .......................................... 18

17     *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362 (N.D. Cal. 1995) .................................... 22

18

19     *In re Nexus 6P Prods. Liab. Litig.*, No. 17- cv-02185-BLF, 2019 WL 6622842
           (N.D. Cal. Nov. 12, 2019)........................................................................................... 13

20     *In re Omnivision Techs., Inc.*, 559 F.Supp 2d 1036 (N.D. Cal. 2008)........................................... 14

21     *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)................................. 22, 23

22

23     *In re Oracle Sec. Litig.*,  No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593
           (N.D. Cal. June 18, 1994)…………………………………………………………….. 23

24

25     *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp.2d 942
           (S.D. Cal. 2012)......................................................................................................... 16

26     *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306
           (D. Minn. May 17, 2017) ........................................................................................... 14

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                                               **Page**

3
*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, 2016 WL 6902351
    (N.D. Ga. Aug. 23, 2016)...................................................................................... 14

4

5
*In re TJX Companies Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007)……………....16

6
*In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................... 18

7

8
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL
    No. 2672 CRB (JSC), 2017 WL 2214655 (N.D. Cal. March 17, 2017) ................................. 19

9

10
*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL4212811
    (N.D. Cal. July 22, 2020) ................................................................................... 15

11
*Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX,
    2013 WL 7985367 (C.D. Cal. Dec. 23, 2013)…………………………………………………... 11

12

13
*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)…………………………....15

14
*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ..................................................... 20

15
*Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161
    (N.D. Cal. June 5, 2017).................................................................................... 19

16

17
*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. April 17, 2020) ..................... 18

18
*Pygin v. Bombas, LLC, et al.*, No. 20-cv-04412-JSW, 2021 WL6496777
    (N.D. Cal. Nov. 29, 2021).................................................................................. 18, 19

19

20
*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)…………………………….. 23

21
*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ............................ 11

22
*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003).................................................................. 11, 23

23
*Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 WL 4537463
    (C.D. Cal. July 27, 2015) ................................................................................... 13

24

25
*Tallman v. CPS Sec. (USA), Inc.*, 23 F.Supp.3d 1249 (D. Nev. 2014) ......................................... 20

26
*Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598
    (N.D. Cal. May 15, 2018)................................................................................... 13

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page**

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ....................................................passim

*Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997) .......................................................... 17

*Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115 (9th Cir. 2002)............................................. 22

**Other** **Page**

*2022 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ..................................................................................................................... 19

5 Newberg on Class Actions §§ 15:62 (5th ed. 2018) ................................................... 13

-7-

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

**PLAINTIFFS' MEMORANDUM IN SUPPORT**

## I.   SUMMARY OF ARGUMENT

Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor, and Kelly Rogers (collectively "Plaintiffs"), through their undersigned counsel, respectfully move this Court for entry of an Order approving: (1) Class Counsel's requested attorneys' fees award of $246,250, or 25% of the $985,000 Settlement Fund; (2) expense reimbursement totaling $12,526.35; and (3) a service award payment to each Plaintiff of $2,500, for a total of $15,000.

This action arises out of a cyberattack ("Data Incident") on Defendant Blackhawk Network, Inc. d/b/a Blackhawk Engagement Solutions (hereafter "Blackhawk" or "Defendant") in which the personal information ("PI") of Plaintiffs and Class Members was compromised. Defendant notified the approximately 165,727 individuals impacted by the Data Incident of its occurrence in September 2022.

Plaintiffs initiated several actions that were ultimately consolidated into the first filed case, captioned above.[1] Thereafter, on February 9, 2023, Plaintiffs filed the operative Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 26). Following the filing of this Complaint, Plaintiffs drafted a response to Defendant's Motion to Dismiss,[2] exchanged significant amounts of informal discovery, participated in a day-long mediation session in June 2023 with experienced mediator Michelle Yoshida, and continued negotiating for three months following mediation before reaching a class wide settlement in principle. After reaching a tentative deal, the parties spent months negotiating the specific terms of the Settlement

---

[1] The matters of *Pryor v Blackhawk Network, Inc.*, No. 3:22-cv-07084 (N.D. Cal. Filed Nov. 11, 2022); *Sabrina Singleton v. Blackhawk Network, Inc.*, No. 3:22-cv-07198 (N.D. Cal. filed Nov. 16, 2022); and *Sylvia Cortez et al. v. Blackhawk Network, Inc.*, No. 4:22-cv-07492 (N.D. Cal. field Nov, 28, 2022) were consolidated by this Court on January 10, 2023 (ECF No. 19).

[2] Plaintiffs and Defendant agreed to mediate this matter and successfully negotiated a settlement prior to Plaintiffs the date Plaintiffs' Opposition to Defendant's Motion to Dismiss was initially due but after Plaintiffs' opposition brief was prepared, and as such, Plaintiffs' brief was never filed with this Court.

Agreement, which was preliminarily approved by this Court on December 15, 2023. *See* Order Granting Preliminary Approval, ECF No. 48.

Class Counsel's efforts resulted in an outstanding resolution of this high-risk complex litigation that provides substantial monetary benefit to Class Members. Specifically, a Settlement Fund of $985,000 has been created which will pay for: (1) reimbursement for Out-of-Pocket Losses fairly traceable to the Data Breach up to $5,000 per Class Member; (2) a cash payment of $200.00 to each California Subclass Member who submits a claim for such cash payment as a result of the California Consumer Privacy Act ("CCPA") claim asserted against Defendant; and (3) a *Pro Rata* cash payment distributing, on a *pro rata* basis to all Class Members who submit a claim for such, all funds remaining in the Settlement Fund following the payment of any Attorneys' Fees and Expenses Award, any Service Awards, the costs of Claims Administration, any claims for Out-of-Pocket Losses, and all claims for the CCPA cash payment. S.A., § H(1-5). The money in the Settlement Fund will not revert to Blackhawk under any circumstances.

In addition, Blackhawk agreed to implement or maintain steps to enhance the security of its systems. *See* S.A., § E(2). These include remedial and enhanced data security measures, including code vulnerability scans to look for other potential vulnerabilities; and velocity controls to alert more quickly to, and mitigate the risk of, another attempted similar attack. *Id.* These measures will benefit Class Members whose PI Blackhawk still possesses and are valuable benefits that will provide the class with peace of mind that Blackhawk will protect their PI.

For their efforts, Class Counsel seek an award of attorneys' fees totaling 25% of the Settlement Fund, or $246,250, and reimbursement of reasonable expenses totaling $12,526.35. Additionally, Class Counsel seek service awards of $2,500 to each Class Representative ($15,000 total) in recognition of their many hours and substantial effort spent advancing this case.

As discussed below, the fee request is reasonable when considered under the applicable Ninth Circuit standards and is well within the normal range of awards made in contingent-fee class actions in this Circuit. Under a lodestar calculation, considering the combined fees of

$364,814.00, the requested attorneys' fee award represents a significant negative multiplier of 0.675. Joint Declaration of Counsel in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards ("Joint Decl.") ¶ 15. Furthermore, the requested litigation expenses are modest, and were all necessarily and reasonably incurred, and the requested service awards are reasonable and appropriate in light of applicable case law.

## II.   STATEMENT OF FACTS

Plaintiffs refer to and hereby incorporate the Statement of Facts included in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 44.

## III.   PROCEDURAL HISTORY

Plaintiffs refer to and hereby incorporates the procedural history recited in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 44) and limit their description of the history of this matter to that which is relevant to the instant motion. Following consolidation of the individual matters, Plaintiffs filed the Complaint on February 9, 2023. ECF No. 26. After this, Defendant filed its Motion to Dismiss Plaintiffs' Amended Consolidated Complaint on March 13, 2023. ECF No. 27. On March 27, 2023, the day Plaintiffs' opposition to Defendant's motion was due, Plaintiffs and Defendant agreed to seek to mediate this matter and requested this Court continue Defendant's motion and the associated due dates, to allow the parties to attempt to resolve this matter. ECF No. 32.

The parties attended an all-day mediation via Zoom with highly experienced mediator Michelle Yoshida of Phillips ADR on June 5, 2023. Joint Decl. ¶ 7. In the lead up to the mediation, Class Counsel requested substantial informal discovery from Defendant. *Id*. At mediation the Parties exchanged information and engaged in intensive discussions regarding their evaluations of the litigations and various aspects thereof, including the risks and delays of further litigation, the risks to the Settling Parties of proceeding with class certification, the law regarding the allegations, the evidence produced and analyzed and the possibility of appeals, among other things. *Id*. Though mediation was not initially successful, the Parties negotiated for three months

after the mediation before reaching a settlement in principle and later agreeing to the specific settlement terms. *Id.* ¶ 8. The Settlement Fund was negotiated first and separately from any discussion regarding attorneys' fees, service awards, and claims administrator fees. All negotiations were performed at arm's-length, in good faith, and without collusion. *Id.* ¶ 9.

On December 15, 2023, the Court granted Preliminary Approval of the Settlement. ECF No. 48.

## IV.   ARGUMENT

### A.   The Requested Award is Fair and Reasonable by Ninth Circuit Standards

Under the "common fund" or "common benefit" doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* at 478*; see also Staton v. Boeing Co*., 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered.").

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) (encouraging courts "to guard against an unreasonable result by cross-checking their calculations against a second method."). Where the percentage-of-recovery method is employed, it is well established that 25% of the common fund is the "benchmark" award of attorney's fees. *See In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965). The Court may adjust this lodestar figure "upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors." *Id.* at 941–42.

Whether the Court uses the 25 percent benchmark or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The Ninth Circuit has identified five factors that may inform this inquiry: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id.* at 1048–50.

Class Counsel respectfully submit that the requested fee award of 25% of the Settlement Fund, or $246,250, is reasonable under the percentage of recovery methodology, and have provided the Court with sufficient detail herein to perform a lodestar calculation crosscheck which further supports that finding. As set forth below, the work Class Counsel has done here renders this fees award reasonable and warranted.

**B.      The Award Request is Supported by the Percentage-of-Recovery Method**

The nature of this action warrants application of percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit," to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). As courts recognize, this method "is commonly used in the legal marketplace to determine attorneys' fees in contingency fee cases." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018). Where the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more

time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (quoting *In re Bluetooth*, 654 F.3d at 942).

Other considerations also command using the percentage approach here, including (1) replicating more accurately the manner that plaintiffs' lawyers practice outside of the class action context, (2) ensuring that class counsel's interests are more directly aligned with the interests of the class, (3) rewarding counsel for assuming the risks of litigating a matter, and (4) avoiding the trappings often associated with the lodestar method, such as encouraging counsel to bill time and to find reasons to do so. *See Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); 5 Newberg on Class Actions §§ 15:62, 15:65 (5th ed. 2018); *In re Anthem*, 2018 WL 3960068, at *4; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020).

Class Counsel seeks an award of 25%, a percentage value directly on par with the Ninth Circuit's well-established benchmark and previous awards in data breach cases. *See Vizcaino*, 290 F.3d at 1047 (affirming fee award based on 28% of $95 million cash settlement fund); *In re Anthem*, 2018 WL 3960068, at *5. As shown below, this percentage is reasonable under the relevant factors, and falls in line with the actual percentage fee awards in this District.

In assessing the reasonableness of the percentage of recovery method, courts look to "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1050-51); *see also In re Nexus 6P Prods. Liab. Litig.*, No. 17- cv-02185-BLF, 2019 WL 6622842, at *11 (N.D. Cal. Nov. 12, 2019) (same). All of these factors weigh in favor of approving the requested attorneys' fees of 25% the

common fund, but the most important one is the first: the results achieved for Class Members. Here, the results are better than most of those reached in other data breach class actions.

Finally, as discussed below, courts commonly use a lodestar cross-check to confirm the reasonableness of a percentage-based fee. *See Vizcaino*, 290 F.3d at 1050. Here, the requested fee of $246,250 represents a negative multiplier of Class Counsel's current lodestar of $364,814.00. Joint Fees Decl. ¶ 15. Class Counsel will continue to perform work throughout the claims process and leading up to final approval. *Id.* ¶ 16.

### 1. The Results Achieved Here

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). It is readily apparent that there were substantial risks to achieving a recovery had the settlement not been reached at this point in the proceedings, especially considering Plaintiffs have not moved for class certification. *See* Joint Decl. ¶¶ 13-14. Additionally, the dearth of direct precedent certifying data breach cases as class actions, created a substantial risk of achieving no recovery had the settlement not been reached. *See* Joint Decl. ¶ 14.

In light of these facts, the Settlement affords the Class relief which meets the potential impact of the breach to Class Members—monetary benefits carefully negotiated by Class Counsel to definitively right the wrongs underlying this action. In this case, Defendant has agreed to pay $5.94 per Settlement Class Member. This significantly exceeds the value per class member of other data breach settlements where there were no Social Security numbers or other highly sensitive PII involved, beyond payment card data. *See, e.g.*, *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) (cash value of $0.55 per impacted consumer); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306 (D. Minn. May 17, 2017) (cash value of $0.21 per impacted consumer, with alleged data exfiltration); *In re Equifax*, 2020 WL 256132 (cash value of $2.59 per impacted consumer, with alleged data exfiltration); *In re Anthem*, 2018 WL 3960068 (cash value of $1.46 per impacted

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

consumer, with alleged data exfiltration); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL4212811 (N.D. Cal. July 22, 2020) (cash value of $0.60 per impacted consumer, with alleged data exfiltration). Settlement Class Members will have the opportunity to be reimbursed for any Out-of-Pocket losses fairly traceable to the Data Breach up to $5,000, California Subclass members are eligible to receive a $200 payment in recognition of their CCPA claim, and all Settlement Class Members are eligible to receive a *pro rata* share of any funds that remain in the Settlement Fund after all other payments therefrom have been made. The non-monetary benefits also serve to provide improved security for Class Members, whose PII remains in Blackhawk's possession. This is a fair and just outcome where the parties devoted financial resources to early resolution to benefit Class Members, instead of increasing Defendant's costs by litigating the issues described. Class Counsel believe this is a solid result providing substantial benefit to the Settlement Class, thus supporting the requested fee award.

### 2.  The Risk and Nature of the Litigation

"The law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve . . . ." *In re Equifax*, 2020 WL 256132, at *32. In this case, the action settled before Plaintiffs moved for class certification, a high-stakes endeavor, inherently fraught with risks and bearing enormous consequences, especially in the nascent legal landscape of data breach litigation. All cases, including this one, are subject to substantial risk. This case involves thousands of individuals, and a complicated and technical factual overlay lodged against a well-funded and motivated defendant. The damages methodologies, while theoretically sound in Plaintiffs' view, remain largely untested in a disputed class certification setting and unproven in front of a jury. And — as in any data breach, but especially one of this scope and age — establishing causation and damages on a class-wide basis is an unexplored legal frontier rife with uncertainty.

Although nearly all class actions involve a high level of risk, expense, and complexity — undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) — this is a complex class in an especially risky area.

Historically, data breach cases have faced substantial hurdles in making it past the pleading stage. *See, e.g.*, *Antman v. Uber Technologies, Inc.,* No. 3:15-cv-01175, 2015 WL 6123054, at *9-11 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's identity could be stolen was insufficient to confer standing based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and allegations of a heightened risk of identity theft, without more, calls standing into question); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving a data breach settlement in part because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results").

Success at class certification has also been rare in these cases.[3] Even if this Court had granted in full Plaintiffs' anticipated motion for class certification and denied any subsequent motions for summary judgment filed by Defendant, the inherent risks attendant to trying a data breach class action involving only payment cards would have magnified the difficult legal questions at issue here, principally, the damages theories. *See, e.g.*, *In re Anthem*, 2018 WL 3960068, at *12 ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 WL 256132, at *7. Although Plaintiffs believe they would have prevailed in this action, a defense verdict was entirely possible.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged; particularly in the area of damages for

---

[3] *See Adkins v. Facebook*, 424 F.Supp.3d 686 (N.D. Cal. 2019) (granting motion to certify injunctive-only class but denying motion to certify damages and issues classes in data breach class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (same).

breaches involving only payment cards. Data breach cases generally present risk and uncertainty, making settlement the more prudent course when a reasonable deal is available. By settling and paying Class Members now, practical remedies that have been absent become imminently available. Even if Plaintiffs achieved a successful judgment, relief to Class Members would likely be forestalled for years following the exhaustion of appeals. Here then, delay only further delays compensation to Class Members they rightly deserve.

### 3. The Skill Required to Prosecute this Action Effectively

Class Counsel's skill and experience in complex class action litigation also favor the requested fee award here. The descriptions of the backgrounds and experience of Class Counsel demonstrate that Class Counsel are experts in the highly specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. *See* Joint Decl. ¶¶ 11, 21. Class Counsel's fee request is commensurate with that experience, which they were able to leverage to procure the settlement. The skill demonstrated by Class Counsel in developing the Complaint, mediating the case and settling the action early further supports the fees requested. *See Vizcaino*, 290 F.3d at 1050 n.5 (noting that early resolution may be a relevant factor).

They were also equal to the experience and skill of the lawyers representing Defendant, a factor to be considered here. *See, In re Am. Apparel, Inc. S'holder Litig*., No. CV-1006352 MMM (JCGx) 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc*., 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by the highly respected law firm Orrick, Herrington & Sutcliffe, with significant resources and substantial experience defending consumer class actions. This factor weighs in favor of the requested fee award.

### 4. Awards in Similar Cases

The requested fee percentage of 25% is reasonable when compared to reported data breach class action fee orders in the Northern District of California. *See In re Anthem*, 2018 WL

---

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

3960068, at *9 (awarding $31.05 million in attorneys' fees or "27% [of the] $115 million Settlement Fund."); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (awarding attorneys' fees of 25% of the settlement fund, or $312,500); *In re Hanna Andersson & Salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC, ¶ 12 (N.D. Cal. June 25, 2021) (ECF No. 75) (awarding attorneys' fees of 25 percent of the settlement fund, or $100,000); *Pygin v. Bombas, LLC*, No. 20-cv-04412-JSW, 2021 WL 6496777 (N.D. Cal. Nov. 29, 2021) (awarding attorneys' fees of 25% of the settlement fund, or $56,250.00).

### C.    The Fee Request Is Reasonable Under the Lodestar Cross-Check

Where the use of lodestar method is used as a cross-check, it can be performed with a less exhaustive review and analysis of hours. *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award."). Courts apply similar factors to those under the percentage of recovery method to support awards under the lodestar calculation. *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *21 (N.D. Cal. April 17, 2020) (citations and marks omitted) (factors include: "(i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment."). As set forth above, each of these factors weigh heavily in favor of the conclusion that the fee request of $246,250 (below lodestar) is reasonable, particularly given that Class Counsel expended over 749.7 hours in prosecuting this action with a total lodestar of $364,814.00 – a negative 0.675 multiplier when applying Class Counsel's usual and customary rates. *See* Joint Decl. ¶ 15. *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No.  02-cv-3400 (CM), 2010 WL 4537550, at *26 (S.D.N.Y.

Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").[4]

Moreover, in assessing fee applications, the reasonable hourly rates are calculated according to the prevailing market rates in the relevant legal community. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). Here, the hourly rates for Class Counsel are reasonable for the community and comparable to similar services by lawyers of reasonably comparable skill, experience, and reputation. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 2214655, at *5 (N.D. Cal. March 17, 2017) (approving "billing rates ranging from $310 to $1,650 for partners, $185 to $850 for associates, and $125 to $450 for paralegals"); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (approving partner rates up to $1,200 as fair and reasonable for the relevant community); *In re Equifax*, 2020 WL 256132, *259 (finding as reasonable attorneys rates ranging up to $1,050 per hour more than three years ago). Indeed, Class Counsel have been approved at the billing rates they seek in this case. *See, e.g.*, *Pygin v. Bombas, LLC*, 2021 WL 6496777 at *7-8 (awarding requested fees from Class Counsel in this matter); *In re Hanna Andersson & Salesforce.com Data Breach Litig.*, No. 3:20-cv-00812-EMC, ¶ 12 (N.D. Cal. June 25, 2021) (ECF No. 75) (awarding requested fees from Class Counsel in this matter); *Bowdle v. King's Seafood Co., LLC*, No. 8:21-cv-01784-CJC-JDE (C.D. Cal. Feb. 13, 2023) (ECF No. 50) (same); *Beasley et al. v. TTEC Services Corporation*, No. 22-cv-00097-PAB-STV, p. 15 (D.Col. Feb. 21, 2024) (ECF No. 64) (same).

Additionally, the *2022 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report") has often been consulted by courts as a useful

---

[4] Indeed, as the Ninth Circuit has recognized, attorneys in common fund cases are frequently awarded a multiple of their lodestar, which rewards them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051. It is common for courts to enhance the lodestar in complex litigation by multipliers between 3 and 4.5, and many courts have awarded higher multipliers. *See, e.g.*, *id*. at 1051 n.6 (finding multiples ranged as high as 19.6, but most from 1 to 4).

guidepost to determine the reasonableness of hourly rates, including recently in the Central District of California in an analogous data breach case *See, e.g., Hashemi et al. v. Bosley,* No. 21-946-PSG, 2022 WL 18278431, at *10 (C.D. Cal. Nov. 21, 2022). The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV13-1302 DSF (JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014). The Real Rate Report has been found to be "a much better reflection of true market rates than self-reported rates in all practice areas." *Id.*; see also *Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev. 2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in the Bay Area in 2022, partners engaged in litigation have hourly rates ranging from $423-$1,383 and associates have hourly rates ranging from $325-$745. *See* Real Rate Report at 21-22, and 35. These numbers represent the "middle 50 percent" of the rates charged, meaning that twenty-five percent of attorneys in the Bay Area charge hourly rates in excess of the upper limit of these ranges. Based on these numbers, and numbers approved by courts, the range of $185-$325 for paralegals, $375-590 for associates, and $700-1,100 for partners and senior associates requested here is reasonable. Joint Decl., ¶¶ 21-22.

The hours spent are also reasonable. In considering the reasonable of hours, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). To date, Class Counsel have expended 749.74 hours litigating this matter to the benefit of the Class. *See* Joint Decl., ¶ 15. This time included investigating and bringing this case upon the announcement of the Data Breach; drafting the complaints; consolidating the several underlying actions into a single action; drafting the operative amended consolidated complaint; preparing the opposition to the

motion to dismiss from defendant; conducting informal discovery; preparing for and attending a full-day mediation session; obtaining post-mediation information; negotiating a complex Settlement Agreement; soliciting bids for and investigating potential notice and claims administrators and their respective plans; moving for and successfully obtaining preliminary approval; working in concert with the Settlement Administrator; monitoring the Notice Program and claims administration; and drafting this Motion. Joint Decl. ¶¶ 2-3, 5, 7-8, 19.

Finally, Class Counsel took this case on a pure contingency basis without any form of litigation funding or outside funding; the litigation was entirely self-funded for the benefit of the Class. The attorneys working on the case have foregone the ability to devote time to other cases and faced a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time and out-of-pocket expenses. Given the fact that few contested classes have been certified in consumer data breach class actions, there can be no question that the risk of nonpayment was substantial. While Plaintiffs may have succeeded at the trial court level in defeating a motion to dismiss, defeating a motion for summary judgment, and certifying a damages-based class, the passage of time and delay in delivering benefits to Class Members would have been protracted, and any appellate processes would have further prolonged the delivery of those benefits. No stage of the proceedings is guaranteed, and with the highlighted hurdles of overcoming any motions for summary judgment and achieving contested certification in this case, it is plainly clear that Class Members may not have recovered any monetary benefits and the Class Members' PI in Defendant's possession may have continued to be at risk without this litigation. Instead, Class Members will receive compensation that the Court ruled fairly and adequately compensates Class Members in considering preliminary approval of the Settlement. ECF No. 48 at ¶ 3.

In addition, Class Counsel's responsibility for this case is far from over. Class Counsel necessarily must continue to work with the Settlement Administrator, review and respond to objections, move for final approval, handle appeals, and oversee the final administration of

benefits to Class Members. Given the foregoing, Class Counsel's fee request of $246,250 is eminently reasonable.

## V.    CLASS COUNSEL'S REASONABLE EXPENSES SHOULD BE REIMBURSED

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Class Counsel have incurred expenses in the prosecution of this action in the total amount of $12,526.35. Joint Decl. ¶ 17. Class Counsel provide a breakdown of the unreimbursed expenses necessarily incurred by counsel in this case. *See* Joint Decl., Exhibits A, B, C, and D. For example, Class Counsel seeks reimbursement for court costs, legal research, client costs, postage, service of process, reasonable travel expenses, and mediator fees. These are standard expenses incurred in prosecuting a civil lawsuit and are the type of expenses typically billed by attorneys to paying clients in the marketplace. As with the lodestar, all expenses were carefully scrutinized. *See* Joint Decl. ¶ 18. These expenses are in line with those approved by courts in this District and are all the type of expenses routinely charged to hourly paying clients. *See, e.g., In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015). The request for litigation costs and expenses is reasonable here.

## VI.    REQUEST FOR CLASS REPRESENTATIVE SERVICE AWARDS

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

*Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). Service awards of $5,000 are "presumptively reasonable" in this District. *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015).

Class Counsel respectfully request Service Awards in the amount of $2,500 for each Class Representative. "[A] class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *2 (N.D. Cal. June 18, 1994). Such payments are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (service awards "are intended to compensate class representatives for work undertaken on behalf of a class [and] 'are fairly typical in class action cases'" (quoting *Rodriguez*, 563 F.3d at 958)); *Staton*, 327 F.3d at 977 (courts assessing service awards consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of]. . . retaliation" (internal quotations and citations omitted)).

The participation of Plaintiffs directly led to the settlement achieved in this case. Without their willingness to step forward as Class Representatives, the other victims of the Data Breach would be left without legal recourse. Each Plaintiff took personal time to seek out and speak with Class Counsel, search for relevant evidence and documents in advance of mediation, review and approve the complaint for filing, keep apprised of the progress of the litigation, prepare for mediation, evaluate the settlement proposals during and following mediation, and read through and discuss drafts of the Settlement Agreement with Class Counsel before executing them. *See*

1
2
3
4

Plaintiffs' Declarations. Plaintiffs' sacrifice was made to support a case in which they had a relatively modest personal interest, but that has and will continue to provide benefits to thousands of Settlement Class Members, warranting the Court's approval of the requested service awards.

5
6
7
8
9
10
11
12
13

The requested service award payments are reasonable and within the range of payments often awarded in class actions in this District. *See In re GEICO Gen. Ins. Co.*, No. 19-cv-03768-HSG, 2023 U.S. Dist. LEXIS 43778, at *28 (N.D. Cal. Mar. 15, 2023) ("District courts have discretion to award [] fees to named class representatives. Service awards as high as $5,000 are presumptively reasonable in this judicial district."). Additionally, the total service award sought is $15,000, which is a small fraction of the total Settlement Fund, weighing in favor of approval. *See In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *173 (citing cases approving service awards that were an even greater percentage of the settlement fund (up to 2%) than what is sought here (1.5%)).

14
15

Given Plaintiffs' personal contributions to the successful prosecution of this action, each Class Representative should be granted a service award in the amount of $2,500.

16

## VII.  CONCLUSION

17
18
19
20
21

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the instant motion for entry of an Order approving Class Counsel's request for: (i) an attorneys' fees award in the amount of 25% of the Settlement Fund, or $246,250; (ii) reimbursement of $12,526.35 in expenses; and (iii) payment of service awards of $2,500 to each Representative Plaintiff.

22

Date: February 29, 2023

Respectfully Submitted,

23
24
25
26
27

*/s/Gregory Haroutunian*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 3:22-CV-07084-CRB

1
2

Facsimile:  (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

3
4
5
6

Laura Van Note, Esq.
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile:  (510) 891-7030
lvn@colevannote.com

7
8
9
10
11

Terence R. Coates
Justin C. Walker
Dylan J. Gould
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

12
13
14
15
16
17

Marcus J. Bradley
Kiley L. Grombacher
Lirit A. King
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
lking@bradleygrombacher.com

18
19

*Attorneys for Representative Plaintiffs and the
Proposed Classes*

20

21

22

23

24

25

26

27

28