1  M. Anderson Berry (SBN 262879)
   Gregory Haroutunian (SBN 330263)
2  **CLAYEO C. ARNOLD**
   **A PROFESSIONAL CORPORATION**
3  865 Howe Avenue
   Sacramento, CA 95825
4  Telephone: (916) 239-4778
   Facsimile: (916) 924-1829
5  aberry@justice4you.com
   gharoutunian@justice4you.com
6
7  Scott Edward Cole (SBN 160744)
   Laura Grace Van Note (SBN 310160)
8  **COLE & VAN NOTE**
   555 12th Street, Suite 2100
9  Oakland, California 94607
   Telephone:    (510) 891-9800
10 Facsimile: (510) 891-7030
   sec@colevannote.com
11 lvn@colevannote.com
12
   [Additional counsel on signature page]
13
   *Attorneys for Representative Plaintiffs and the Proposed Classes*
14
15              UNITED STATES DISTRICT COURT
16           NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION
17

18 | *IN RE: BLACKHAWK NETWORK DATA* | Case No. 3:22-cv-07084-CRB |
   | *BREACH LITIGATION* | |
19 | | CLASS ACTION |
   | This Document Relates To: | |
20 | | **PLAINTIFFS' NOTICE OF MOTION** |
   | ALL ACTIONS | **AND MOTION FOR FINAL APPROVAL OF** |
21 | | **CLASS ACTION SETTLEMENT; AND** |
   | | **MEMORANDUM OF POINTS AND** |
22 | | **AUTHORITIES IN SUPPORT THEREOF** |
23 | | Date:        April 5, 2024 |
   | | Time:       10:00 a.m. |
24 | | Judge:      Hon. Charles R. Breyer |
   | | Courtroom:  6 – 17th Floor |
25 | | 450 Golden Gate Avenue |
   | | San Francisco, CA 94102 |
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on April 5, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Charles R. Breyer, at San Francisco Courthouse, Courtroom 6 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor, and Kelly Rogers (collectively "Plaintiffs") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiffs' Motion for Final Approval of Class Action Settlement.

      This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying declaration of Omeikiea Lorenzano of Angeion Group, LLC, the pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

      1.    Whether the Court should finally approve the class action settlement.

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT…………………………………………………..   8

II.   STATEMENT OF FACTS………………………………………………………   10

    A.  Terms of the Settlement…………………………………………………   10

    B.  Notice Plan and Claims………………………………………………...   10

III.  PROCEDURAL HISTORY……………………………………………………...   11

IV.  ARGUMENT……………………………………………………………………   11

    A.  The Settlement Meets the Standards for Final Approval Under Rule 23(e)………...   11

    B.  The Settlement Satisfies Rule 23(a)……………………………………   13

        1.  The Proposed Class is Sufficiently Numerous…………………………………   13

        2.  The Settlement Class Satisfies the Commonality Requirement…………………   13

        3.  Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class….   14

        4.  Plaintiff Will Adequately Protect the Interests of the Class……………………..   14

    C.  Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement………………...   15

    D.  The Settlement Should Be Finally Approved Pursuant to Rule 23(e)…………….   17

        1.  The Strength of Plaintiff's Case…………………………………………………   18

        2.  The Risk, Expense, Complexity, and Likely Duration of Litigation…………….   18

        3.  The Risk of Maintaining Class Action Status Through Trial……………………   19

        4.  The Amount Offered in Settlement……………………………………………...   20

        5.  The Extent of Discovery Completed and the Stage of Proceedings…………….   21

        6.  The Experience and Views of Counsel………………………………………….   21

        7.  Governmental Participants………………………………………………………   22

        8.  The Reaction of the Class Members to the Proposed Settlement……………….   22

        9.  Lack of Collusion Among the Parties…………………………………………...   23

        10.  The Settlement Treats Settlement Class Members Equitably……………………   24

V.    CONCLUSION…………………………………………………………………...   24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                     **Page**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)…………………………………… passim

*Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015)……………...    24

*Butler v. Sears, Roebuck & Co*., 727 F.3d 796 (7th Cir. 2013)……………………………    15

*Calderon v. Wolf Firm*, No. SACV 16-1266-JLS(KESx), 2018 WL 6843723,
  (C.D. Cal. Mar. 13, 2018)……………………………………………………………...    20

*Carter v. Vivendi Ticketing US LLC*, No. SACV 22-01981-CJC (DFMx)
2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)…………………………………………...    23

*Celano v. Marriott Int'l Inc*., 242 F.R.D. 544 (N.D. Cal. 2007)……………………………..    13

*Chester v. TJX Cos*., No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788,
  (C.D. Cal. Dec. 5, 2017)…………………………………………………………………    18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)……………………………    11

*Cohorst v. BRE Props*., No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923
  (S.D. Cal. Nov. 9, 2011)…………………………………………………………………    23

*Dennis v. Kellogg Co*., No. 09-CV-1786-L(WMc), 2013 WL 6055326,
  (S.D. Cal. Nov. 14, 2013)………………………………………………………………    18

*Ellis v. Costco Wholesale Corp*., 657 F.3d 970 (9th Cir. 2011)……………………………. 13, 14

*Franklin v. Kaypro Corp*., 884 F.2d 1222 (9th Cir. 1989)………………………………..    18

*See G. F. v. Contra Costa Cty*., No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512
  (N.D. Cal. July 30, 2015)………………………………………………………………..    23

*Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK (MANx),
  2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)…………………………………………..    20

*Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE),
2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)………………………………    19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)……………………………… 14, 15, 17

*Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP (SPx), 2017 WL 10433869,
  (C.D. Cal. April 27, 2017)………………………………………………………..    21

<u>**TABLE OF AUTHORITIES**</u>

**<u>Cases</u>**                                                                                                            **<u>Page</u>**

*Holly v. Alta Newport Hospital,* Case No. 2:19-cv-07496 ODW (MRWx),
    2020 WL 1853308, (April 10, 2020)………………………………………..    13

*Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,
    (S.D. Cal. May 13, 2020)…………………………………………………    24

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018)………..............    16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)…………………    17

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB,
    2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)……………………………………………    14, 15

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT,
    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)………………………………………...    13

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT
    2017 U.S. Dist. LEXIS 221736, (N.D. Ga. Sept. 22, 2017)…………………………    21

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019)…………...........14, 15

*In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)…………………………...    16

*In re Marriott Intn'l Cust. Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023)…………    20

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007)……………………...    24

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM),
    (D. Minn. March 18, 2015) 2017 U.S. Dist. LEXIS 75455
    (D. Minn. May 17, 2017)…………………………………………………………………    21

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*, 266 F.Supp.3d 1 (D.D.C. 2017).......    19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK
    (N.D. Cal. July 20, 2019)………………………………………………………………..    16

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017)…………………………………...14, 17

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504 (C.D. Cal. 2012)…………………………..    15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)…………………………19, 21

MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
3:22-cv-07084-CRB

*Loc. Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152  (9th Cir. 2001)……………………………………………….. 17

*Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310 (C.D. Cal. 2015)……………………… 14

*Malta v. Federal Home Mortg. Corp.,* 10-cv-1290 BEN (NLS), 2013 WL 444619,
   (S.D. Cal. Feb. 5, 2013) …………………………………………...………..... 16

*Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036 (9th Cir. 2012)……………........ 14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523 (C.D. Cal. 2004)…………… 22

*Norton v. Maximus, Inc.*, 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho, April 17, 2017)…... 22

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351 (C.D. Cal. 1982)……………………….…...... 13

*Parsons v. Kimpton Hotel & Rest. Grp., LLC*, No. 3:16-cv-05387-VC
   (N.D. Cal. Jan. 9, 2019)…………………………………………………….. 16

*Paz v. AG Adriano Goldschmeid, Inc*., No. 14cv1372 DMS (DHB), 2016 WL 4427439
   (S.D. Cal. Feb. 29, 2016)…………………………………………………. 19

*Rannis v. Recchia*, 380 Fed.Appx. 646 (9th Cir. 2010)……………………………….. 13

*Richards v. Chime Fin., Inc.*, No. 19-cv-06864-HSG, 2021 WL 2075689
   (N.D. Cal. May 24, 2021)……………………………………………………. 23

*Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574,
   (M.D. Ala. Mar. 17, 2017)……………………………………………………. 20

*Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10272 (E.D. Mich. Nov. 4, 2022)………... 22

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016)…………………………………… 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)…………………………………… 13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)…………………… 17

## <u>Statutes</u>                                                                                                    <u>Page</u>

Fed. R. Civ. P. 23(a)………………………………………………………... 13

Fed. R. Civ. P. 23(a)(1)……………………………………………………... 13

Fed. R. Civ. P. 23(a)(3)……………………………………………………... 14

Fed. R. Civ. P. 23(a)(4)……………………………………………………... 14

Fed. R. Civ. P. 23(b)(1)……………………………………………………... 15

Fed. R. Civ. P. 23(b)(2)……………………………………………………..   15

Fed. R. Civ P. 23(b)(3)…………………………………………………15, 16

Fed. R. Civ. P. 23(e)…………………………………………………17, 24

**<u>Other</u>**                                                          **<u>Page</u>**

4 Newberg on Class Actions § 11.41 (4th ed. 2002)…………………………………..   11

Manual for Complex Litigation (Fourth), § 21.632…………………………………   13

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)………………………   15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>PLAINTIFF'S MEMORANDUM IN SUPPORT</u>

## I.    SUMMARY OF ARGUMENT

Plaintiffs Steven Pryor, Shane Scheib, Sabrina Singleton, Sylvia Cortez, Brian O'Connor, and Kelly Rogers (collectively "Plaintiffs"), by and through the undersigned Class Counsel, on behalf of themselves and the Settlement Class, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement (ECF No. 44-1, Exhibit A) and for certification of the Settlement Class.

If approved, the Settlement will successfully resolve the claims of approximately 165,727 individuals who were notified of a data incident by Defendant Blackhawk Network Inc., d/b/a Blackhawk Engagement Solutions (hereafter "Blackhawk" or "Defendant") in September 2022 in which their personal information ("PI") was potentially accessed by unauthorized third parties (the "Data Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Settlement Fund of $985,000 for the benefit of eligible Class Members. Defendant also has committed to maintaining substantial business practice changes in relation to its data security. Further, all costs of notice and administration, of which $58,217.34 has been billed as of February 29, 2024, with Angeion anticipating approximately $46,260 in additional costs, will be paid from the Settlement Fund. Declaration of Omeikiea Lorenzano of Angeion Group, LLC ("Angeion Decl."), ¶ 21.

On December 15, 2023, the Court preliminarily approved the Settlement, finding that: "it will likely be able to approve the proposed Settlement as fair, reasonable and adequate. The Court also finds it will likely be able to certify the Settlement Class and California Subclass for purposes of judgment on the Settlement because they meet the requirements of Rule 23(a) and the requirements of Rule 23(b)(3)." ECF No. 48 ("Preliminary Approval Order") ¶ 1. The Court-ordered Notice Plan has since been executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Settlement has been overwhelmingly positive. Of the roughly 161,637 individual potential Class Members who were sent Notice, only three (3) have timely requested exclusion and none have submitted timely objections. This response weighs in favor of final approval.

 For the reasons detailed below, Plaintiffs and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs request the Court to finally approve the Settlement, grant Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards to Class Representative Plaintiffs, and enter a final judgment dismissing this case.

## II.   STATEMENT OF FACTS

Plaintiffs refer to and hereby incorporate the Statement of Facts included in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 44.

For the purposes of final approval, Plaintiff highlights the following:

### A.   Terms of the Settlement

If the Settlement receives final approval, the $985,000 non-reversionary Settlement Fund will be used to provide: up to $5,000.00 per person reimbursements of documented out-of-pocket losses fairly traceable to the Data Incident ("Out-of-Pocket Losses"); $200 to California Settlement Subclass Members who submit a valid claim in recognition of statutory damages available under California Law; and a *Pro Rata* cash payment distributing, on a *pro rata* basis to all Class Members who submit a claim for such, all funds remaining in the Settlement Fund following the payment of all other expenses and benefits. S.A. § II (H)(1-5). The Settlement also provides that Defendant has made and/or will make specific enhancements to its data security to better secure all PI remaining in its possession. S.A. § II (E)(2)(A). Based upon their extensive experience in complex litigation and data privacy, Class Counsel believes that the $985,000 Settlement Fund will be ample to pay the claims of Settlement Class Members. No monies will revert to Defendant.

### B.   Notice Plan and Claims

Per this Court's December 15, 2023, Preliminary Approval Order, Defendant provided Angeion Group, LLC ("Angeion") with the names and mailing addresses or emails of 162,115 Settlement Class Members, of which 143,531 records had valid email addresses. Angeion Decl., ¶ 4. On January 12, 2024, Angeion sent the Class Notice via email to these 143,531 emails, with only 1,713 "bounced" back as undeliverable. *Id*., ¶ 5. A further 6,342 notices were emailed where the same email was used for multiple members of the Class. *Id*., ¶ 6. On January 12, 2024, Angeion also mailed notice to 11,763 Class Members, of which 109 were returned with forwarding addresses (and remailed) and 1,672 were returned undeliverable without forwarded address. *Id*., ¶¶ 7-10. Angeion was able to get updated addresses for 1,150 of these Class Members via skip trace

and remailed notice to them. *Id*. Reminder notices are scheduled to be transmitted on March 27, 2024 to Class Members with valid emails who have not yet submitted a claim. *Id*., ¶ 12.

Additionally, Angeion established a toll-free telephone number for Class Members to call and obtain information regarding the Settlement. Angeion also established a dedicated Settlement Website entitled www.PrepaidCardDataBreachSettlement.com containing information about the Settlement, important dates and deadlines, contact information for the Settlement Administrator, and relevant case documents including the Notice in both English and Spanish, the Settlement Agreement, the Preliminary Approval Order, and the Amended Class Action Complaint. *Id.*, ¶ 12. The settlement website also allowed Settlement Class Members to file a Claim Form online. *Id*.

As a result of all of the foregoing notice efforts, as of March 20, 2024, Angeion has received 295 Claim Forms through the mail and 17,669 through the Settlement Website, for a total of 17,964 Claim Forms, with the claims period still ongoing until the Claims Deadline of April 11, 2024. *Id*., ¶ 15. Already this represents a claims rate of nearly 11% (17,964 / 165,727).

## III.   PROCEDURAL HISTORY

Plaintiffs refer to and hereby incorporate the procedural history recited in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 44) and Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards (ECF No. 49).

## IV.   ARGUMENT

### A.   The Settlement Meets the Standards for Final Approval Under Rule 23(e).

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). Individual litigation would unduly tax the court system, require massive expenditures of resources, and given the small value of the individual claims, compared to the cost of litigation, be impracticable. Thus, a settlement—specifically the Settlement Agreement

1
2
proposed here—provides the best vehicle for Class Members to receive relief in a prompt and efficient manner while avoiding the risks of continued litigation.

3
4
5
6
7
8
9
10
Since a court evaluating certification of a settled class action is considering certification only in the settlement context the evaluation is somewhat different than in an unsettled case. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's scrutiny is lessened: as no trial is anticipated, the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
Plaintiffs here seek certification of a Settlement Class consisting of: "All individuals whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident." S.A., § II(B). There is also a proposed California Settlement Subclass, defined as "[a]ll residents of California whose Personally Identifiable Information or payment card information (which includes a card account number, the CVV or CVV2 number or equivalent, and/or expiration date) was impacted in Blackhawk Network, Inc.'s Data Security Incident." *Id.* Excluded from the Classes are (i) any judge or magistrate judge presiding over this Action, members of their staff, and members of their immediate families; (ii) the Released Parties; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) counsel for Blackhawk; and (vi) the legal representatives, successors, and assigns of any such excluded persons." *Id.* The Settlement Class contains approximately 165,727 individuals.

25
26
27
The Settlement Class and Subclass are defined differently, and more specifically, than how they are defined in Plaintiffs' Amended Consolidated Class Action Complaint, ¶¶ 142, 143,

28

---

but both definitions encompass the same set of persons. For the reasons set forth below, the Court should certify the Class for settlement purposes and finally approve the Settlement.

### B.      The Settlement Satisfies Rule 23(a).

The first step for approval is to demonstrate that the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1.   The Proposed Class is Sufficiently Numerous.

While the numerosity requirement has no fixed number, numerosity is generally found where joinder is impracticable due to the size of the class. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Courts generally find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hosp.,* No. 2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020), citing *Rannis v. Recchia,* 380 Fed.Appx. 646, 651 (9th Cir. 2010). With 165,727 persons, the proposed Class here easily satisfies Rule 23's numerosity requirement. Joinder of the 165,727 individuals is impracticable—thus the numerosity prong is satisfied. *See, e.g., Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007).

### 2.   The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also meets the commonality requirement, which requires that the class's claims "depend upon a common contention," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016).

1
2
3
4
5
6
7
8
9

For the same reason, predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.' *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at \*5 (N.D. Cal. Mar. 18, 2020), quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019). Thus, common questions include, *inter alia*, whether Blackhawk engaged in the wrongful conduct alleged; whether the Class's PI was compromised; whether Blackhawk owed a duty to the Class; whether Blackhawk breached its duties; whether Blackhawk unreasonably delayed in notifying the Class of the material facts of the Data Incident; and whether Blackhawk committed the violations alleged by Plaintiffs.

### 3.   Plaintiffs' Claims are Typical of Those of the Settlement Class.

10
11
12
13
14
15
16
17
18
19

Plaintiffs satisfy the typicality requirement of Rule 23 because their claims, which are based on Defendant's alleged failure to protect the Class's PI, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege that their and Class Members' PI was compromised in the Data Incident, and that they were thus impacted by the same allegedly inadequate data security. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4.   Plaintiffs Will Adequately Protect the Interests of the Class.

20
21
22
23
24
25
26
27
28

The adequacy requirement is satisfied where (1) there are no antagonistic or conflicting interests between plaintiffs and their counsel and the absent class members; and (2) the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Plaintiffs have no conflicts of interest with the Class, are not subject to unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are Class Members who experienced the same alleged injuries and seek, like other

Class Members, compensation in connection with the Data Incident. Plaintiffs' interests and the interests of their counsel are consistent with those of the Class. Further, counsel for Plaintiffs have decades of combined experience as class action litigators and are well suited to advocate on behalf of the Class. *See* Joint Declaration of Counsel in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards for Representative Plaintiffs ("Joint Decl.") (ECF No. 49-1), ¶ 11.

### C.    Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id*.

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623, citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012), quoting *Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Predominance is met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *5, quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 559. Plaintiffs' claims depend on whether Defendant used reasonable data security measures to protect consumers' PI. That question can be resolved, for purposes of settlement, using the same evidence for all Class Members, and thus is precisely the type of

question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ….") (citation omitted).

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims at once is far superior to individual lawsuits, promoting adjudicative consistency and efficiency. *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Malta v. Federal Home Mortg. Corp.,* 10-cv-1290 BEN (NLS), 2013 WL 444619, (S.D. Cal. Feb. 5, 2013) at *3 (superiority is met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and where "small individual claims of class members" made it "unlikely that individual actions will be filed").

For settlement, a class action is the superior method of adjudicating consumer claims arising from the Data Incident. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Grp., LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual

1
2
class members is too small, the technical issues are too complex, and the required expert testimony
and document review too costly. *See Just Film*, 847 F.3d at 1123.

3
4
5
6
7
8
9
10
11
12
13
14
15
    Additionally, no member of the class has an interest in controlling the prosecution of this
action because the claims of the members of the class, including Plaintiffs, are the same.
Alternatives to class action are either no recourse for thousands of people, or a multiplicity of suits
resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is
the only practical method of addressing the alleged violations at issue in this case. There are
thousands of class members with modest individual claims, most of whom likely lack the resources
necessary to seek individual legal redress. *See Loc. Joint Exec. Bd. of Culinary/ Bartender Tr.
Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple
claims for relatively small individual sums" are well suited to class treatment); *see also Wolin v.
Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an
individual basis would be dwarfed by the cost of litigating on an individual basis, this factor
weighs in favor of class certification."). A class action is therefore superior to other methods for
the fair and efficient adjudication of the claims of Plaintiffs and the Class.

16
    **D.    The Settlement Should Be Finally Approved Pursuant to Rule 23(e).**

17
18
19
20
21
22
23
24
25
26
27
28
    This Circuit has identified nine factors to consider in analyzing the fairness,
reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the
risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class
action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a
governmental participant; (8) the reaction of the class members to the proposed settlement and; (9)
whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods.
Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e)
requires a court to consider several additional factors, including whether the class representative
and class counsel have adequately represented the class, and whether the settlement treats class
members equitably relative to one another. Fed. R. Civ. P. 23(e).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In its analysis this Court should be guided by the principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support finding the Settlement to be fair, reasonable, and adequate; and support final approval.

### 1.   The Strength of Plaintiffs' Case

Plaintiffs have built a strong case for liability. Plaintiffs believe they would be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security, which caused the exposure of Plaintiffs' and Settlement Class Members' PII. Plaintiffs also believe their claims are viable and that they have a reasonably good chance of proving that Defendant's data security was inadequate and, if that central fact is established, that Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiffs have pled in the Amended Consolidated Complaint.

Although Plaintiffs believe they have strong claims and would prevail at trial, success is not guaranteed. Plaintiffs face risks given the comparatively novel nature of data breach class actions. Additionally, Defendant will vigorously defend the reasonableness of its data security measures and contends that there is no evidence that any person's PI was actually compromised or exfiltrated. Given this, it is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-CV-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). In other words, "[h]ere, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Due to the obstacles and inherent risks Plaintiffs face, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides decisively favor granting final approval of the Settlement. Joint Decl., ¶¶ 13-14.

### 2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation

1

2       All cases are subject to substantial risk. This case involves a proposed class of

3  approximately 165,172 people; complex and technical background facts; and a sympathetic and

4  motivated Defendant that already has provided some relief to its potentially affected customers.

5       Although nearly all class actions involve a significant risk, expense, and complexity—

6  undergirding the judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*,

7  151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class due the standing challenges plaintiffs

8  face in data breach litigations. Historically, data breach cases face substantial hurdles in surviving

9  even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060

10  (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases).

11  Cases impacting similarly broad groups and implicating data far more sensitive than that at issue

12  here have been found wanting by district courts. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach

13  Litig*., 266 F.Supp.3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations

14  in the complaints are sufficient to establish . . . standing."), *rev'd in part*, 928 F.3d 42 (D.C. Cir.

15  June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

16       To the extent the law has gradually accepted this relatively new type of litigation, the path

17  to a class-wide judgment remains unforged, particularly in the area of damages. Data breach cases

18  are among the riskiest and most uncertain of all class action litigation, making settlement the

19  prudent course when a reasonable one can be reached. The damages methodologies, while

20  theoretically sound, remain untested in disputed class certifications and unproven in front of a jury.

21  As in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

22       Each risk, by itself, could impede the successful prosecution of these claims at trial and in

23  an eventual appeal—which could result in zero recovery to the class. "Regardless of the risk,

24  litigation is always expensive, and both sides would bear those costs if the litigation continued."

25  *Paz v. AG Adriano Goldschmeid, Inc*., No. 14cv1372 DMS (DHB), 2016 WL 4427439, at *5 (S.D.

26  Cal. Feb. 29, 2016). Thus, this factor favors approval.

      **3.   The Risk of Maintaining Class Action Status Through Trial**

27

28

Plaintiffs' case is still in the pleadings stage, the Court has not yet certified class treatment of this case and Defendant will oppose certification if the case proceeds. If the parties were to litigate through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. Thus, Plaintiffs "necessarily risk[s] losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK (MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Marriott Intn'l Cust. Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023). While certification of additional consumer data breach classes may follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4. The Amount Offered in Settlement

 In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of a non-reversionary fund of $985,000. Each Class Member is eligible to make a claim for reimbursement of Out-of-Pocket Losses up to $5,000 and for a *Pro Rata* cash payment distributing, on a *pro rata* basis all funds remaining in the Settlement Fund following the payment of any attorneys' fees, expenses, and Service awards; the costs of Claims Administration; and all other benefits for the Class; and each California Settlement Subclass Member is eligible to make a claim for a $200 CCPA cash payment. This settlement is a strong result for the Class and is in line with other settlements in cases involving data breaches of similar scope, reflecting that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1266-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face in pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

 The value per Class Member here ($5.94 per Class Member ($985,000 / 165,727 class members) is on par with or exceeds that in other exemplary data breach settlements, particularly

those not involving Social Security numbers. For example, the consideration paid by Home Depot to settle a data breach class action was approximately $0.51 per class member. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement). The Target data breach was resolved with Target paying the equivalent of $0.17 per class member. *See In re Target Corp. Customer Data Sec. Breach Litig*., No. MDL 14-2522 (PAM), ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit). These comparisons are not intended to disparage those settlements, but to show that Plaintiffs have achieved a good resolution for the Class.

### 5.   The Extent of Discovery Completed and the Stage of Proceedings

Before discussing settlement on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered all of the information that was available regarding Defendant and the Data Incident. Joint Decl., ¶ 19. The parties also informally exchanged substantial non-public information concerning the Data Incident and the size of the Class in preparation for a successful mediation. *Id*., ¶ 7.

This information, together with Class Counsel's experience in similar types of privacy and data protection cases, provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and the Class's interests without expending hundreds of hours and substantial money to learn the subject area. Joint Decl., ¶ 12. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP (SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Thus, Plaintiffs are well informed about the strengths and weaknesses of this case.

### 6.   The Experience and Views of Counsel

Class Counsel has substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl., ¶ 11 & Exs. E-H thereto. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the

legal and factual disputes, and dedicated significant time and resources to this litigation, Class Counsel fully endorse the Settlement and believe it will provide all or nearly all Settlement Class Members who make claims the full value or close to the full value of their claims. Declaration of Laura Grace Van Note in Support of Plaintiffs' Motion for Preliminary Approval of class Action Settlement, ¶ 24. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho, April 17, 2017*)*, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

Following this District's guidance, Class Counsel compare this settlement to a recent similar settlement where they (in addition to other attorneys) participated as counsel for plaintiffs. In *Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10272 (E.D. Mich. Nov. 4, 2022), approximately 617,065 individuals had substantially more valuable, and potentially harmful to be disclosed, PI, including Social Security numbers, compromised as compared to the instant matter which primarily involved the disclosure of payment card information. In *Morley*, a common fund of $4,300,000 was created, for a settlement value per class member of $6.96, compared to which the $5.94 made available in the instant matter, for far less valuable data, compares very favorably. Additionally, in *Morley* the settlement benefits made available to class members were substantially less than those afforded here: (1) out-of-pocket expenses reimbursement up to $2,500; (2) only $75 for California statutory damages payment; and (3) no cash payment made to all class members who submit a claim. Preliminary approval of class action settlement was granted in *Morley* on November 4, 2022, and final approval on May 12, 2023. Since the Settlement here provides benefits far greater than those that were preliminarily and finally approved in *Morley*, Plaintiffs and the Settlement Class respectfully request that the Court grant final approval of class action settlement in this case.

### 7. Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8. The Reaction of the Class Members to the Proposed Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Only three (3) Class Members (out of 165,727) have timely requested exclusion, and none have submitted timely objections. Angeion Decl. ¶¶ 16-17. This weighs strongly in favor of granting final approval. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, No. SACV 22-01981-CJC (DFMx), 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (reasoning 1 request for exclusion out of 437,310 class members "indicate[d] strong overall support for the Settlement and weigh[ed] in favor of granting final approval"); *Richards v. Chime Fin., Inc.*, No. 19-cv-06864-HSG, 2021 WL 2075689, at *7 (N.D. Cal. May 24, 2021) (reasoning that 6 requests for exclusion out of 495,006 class members was a "minimal number of objections and opt-outs in comparison to the size of the class indicat[ing] overwhelming support among the Class Members and weigh in favor of approval of the settlement").

### 9. Lack of Collusion Among the Parties

The parties negotiated a multifaceted Settlement as described above. The parties did not negotiate attorneys' fees until all substantive portions of the class resolution had been determined, and both the class portion and the attorneys' fees were negotiated during periodic arm's-length negotiations. Furthermore, Class Counsel and Defendant's counsel are well-versed in handling class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive. Additionally, the parties participated in mediation with an experienced private mediator, Michelle Yoshida of Phillips ADR, which were highly contentious and were only able to reach a settlement after months of subsequent negotiations. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness …. We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

1

2

3    **10. The Settlement Treats Settlement Class Members Equitably**

4         Rule 23(e)(2)(D) requires that the Court confirm that the settlement treats class members as

5    equitably as possible under the circumstances. Courts should consider "whether the apportionment

6    of relief among class members takes appropriate account of differences among their claims, and

7    whether the scope of the release may affect class members in different ways that bear on the

8    apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In determining

9    whether this factor favors of approval, a Court must determine whether the Settlement "improperly

10   grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre*

11   *Tech. Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020), quoting

12   *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

13        Here, the Settlement "does not improperly discriminate between any segments of the class,

14   as all class members are entitled to the same relief. Each and every Class Member (i) has the

15   opportunity to make a claim for up to $5,000 in reimbursements for Out-of-Pocket Losses and (ii)

16   is entitled to receive a cash payment in an amount equal to a *pro rata* share of any funds remaining

17   in the Settlement Fund, while all California Settlement Subclass Members may claim the same

18   $200 CCPA cash benefit. While Plaintiffs have been permitted to seek approval of a service award

19   from this Court, an award of $2,500 for each class representative is "presumptively reasonable".

20   *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015).

     **V.    CONCLUSION**

21        For the foregoing reasons, Plaintiffs respectfully requests that the Court grant the instant

22   motion for entry of an Order approving Class Counsel's request for: (i) final approval of the class

23   action settlement; (2) an award of attorneys' fees totaling 25% of the Settlement Fund, or

24   $246,250.00; (ii) reimbursement of $12,526.35 for Class Counsel's expenses (iii) payment of

25   service awards of $2,500 each ($15,000 total) to Representative Plaintiffs; and (iv) payment from

     the Settlement Fund of the cost of settlement administration expenses.

26

27

28

1

2
Date: March 22, 2024                          Respectfully Submitted,

3
                                               */s/Gregory Haroutunian*
                                               M. Anderson Berry (SBN 262879)
4
                                               Gregory Haroutunian (SBN 330263)
                                               **CLAYEO C. ARNOLD**
5
                                               **A PROFESSIONAL CORPORATION**
                                               865 Howe Avenue
6
                                               Sacramento, CA 95825
                                               Telephone: (916) 239-4778
7
                                               aberry@justice4you.com
                                               gharoutunian@justice4you.com
8
                                               Laura Van Note, Esq.
9
                                               **COLE & VAN NOTE**
                                               555 12th Street, Suite 2100
10
                                               Oakland, California 94607
                                               Telephone: (510) 891-9800
11
                                               lvn@colevannote.com

12
                                               Terence R. Coates
                                               Justin C. Walker
13
                                               Dylan J. Gould
                                               **MARKOVITS, STOCK & DEMARCO, LLC**
14
                                               119 East Court Street, Suite 530
                                               Cincinnati, Ohio 45202
15
                                               Telephone: (513) 651-3700
                                               tcoates@msdlegal.com
16
                                               jwalker@msdlegal.com
                                               dgould@msdlegal.com
17
                                               Marcus J. Bradley
18
                                               Kiley L. Grombacher
                                               Lirit A. King
19
                                               **BRADLEY/GROMBACHER LLP**
                                               31365 Oak Crest Drive, Suite 240
20
                                               Westlake Village, California 91361
                                               Telephone: (805) 270-7100
21
                                               mbradley@bradleygrombacher.com
                                               kgrombacher@bradleygrombacher.com
22
                                               lking@bradleygrombacher.com

23
                                               *Attorneys for Plaintiffs and the Proposed Classes*

24

25

26

27

28

---